**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| CITICORP CREDIT SERVICES, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    C.A. No. 07-649-JJF (LPS) |
| | ) |
| LPL LICENSING, LLC, and | ) |
| PHOENIX LICENSING, L.L.C., | ) |
| | ) |
| Defendants. | ) |

**OPENING BRIEF IN SUPPORT OF**
**CONSOLIDATED MOTIONS TO DISMISS DEFENDANTS**
**LPL LICENSING, L.L.C. AND PHOENIX LICENSING, L.L.C.**

November 15, 2007

THE BAYARD FIRM

Richard D. Kirk (rk0922)
222 Delaware Avenue, Suit 900
Wilmington, Delaware 19899-5130
rkirk@bayardfirm.com
(302) 655-5000
Attorneys for Defendants,
LPL LICENSING, L.L.C. and
PHOENIX LICENSING, L.L.C.

OF COUNSEL:

Gregory Dovel
Sean Luner
Dovel & Luner, LLP
201 Santa Monica, Suite 600
Santa Monica, California 90401
(310) 656-7066

675812-1

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................. ii

I.    INTRODUCTION. ................................................................................................1

      A.    BACKGROUND OF CITICORP'S DECLARATORY
            RELIEF ACTION. ....................................................................................1

      B.    BASIS FOR THESE CONSOLIDATED MOTIONS. ...............................2

II.   CITICORP BEARS THE BURDEN OF PROVING
      JURISDICTION WITH EVIDENCE. ....................................................................3

III.  CITICORP'S COMPLAINT SHOULD BE DISMISSED UNDER
      THE FIRST-FILED RULE. ...................................................................................4

IV.   CITICORP'S COMPLAINT SHOULD BE DISMISSED FOR
      LACK OF SUBJECT MATTER JURISDICTION BECAUSE
      CITICORP'S COMPLAINT DOES NOT SATISFY THE
      REQUIRED "ACTUAL CASE OR CONTROVERSY"
      STANDARD. ..........................................................................................................8

V.    THIS COURT SHOULD EXERCISE ITS DISCRETION TO
      DECLINE JURISDICTION OVER A DECLARATORY RELIEF
      ACTION THAT IS NOT WITHIN THE CORE PURPOSE OF
      THE DECLARATORY JUDGMENT ACT AND TO
      CONSERVE JUDICIAL RESOURCES. .............................................................11

      A.    CITICORP'S DECLARATORY JUDGMENT
            COMPLAINT SHOULD BE DISMISSED BECAUSE IT
            IS OUTSIDE THE PURPOSE OF THE DECLARATORY
            JUDGMENT ACT. ..................................................................................12

      B.    CONSIDERATIONS OF PRACTICALITY AND
            EFFICIENT JUDICIAL ADMINISTRATION WEIGH IN
            FAVOR OF DISMISSAL. ........................................................................16

VI.   CITICORP'S CLAIM AGAINST PHOENIX SHOULD BE
      DISMISSED FOR UNDER RULE 12(B)(2) FOR LACK OF
      PERSONAL JURISDICTION. .............................................................................19

VII.  CONCLUSION. ...................................................................................................25

i

# TABLE OF AUTHORITIES

Page

<u>Cases</u>

*Alcoa Inc. v. Alcan Inc.*,
   2007 U.S. Dist. LEXIS 51565 (D. Del. 2007) ............................................................ 24

*American Auto. Ins. Co. v. Freundt*,
   103 F.2d 613 (7th Cir. 1939) ................................................................................... 18

*Arris Int'l, Inc. v. Hybrid Patents, Inc. (In re Com21, Inc.)*,
   357 B.R. 802 (Bankr. D. Cal. 2006) .......................................................................... 8

*Arrowhead Industrial Water, Inc. v. Ecolochem, Inc.*,
   846 F.2d 731 (Fed. Cir. 1988) ................................................................................. 15

*Benitec Austl., Ltd. v. Nucleonics, Inc.*,
   495 F.3d 1340 (Fed. Cir. 2007) .......................................................................... 12, 14

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985) ............................................................................................... 29

*Capo, Inc. v. Dioptics Med. Prods.*,
   387 F.3d 1352 (Fed. Cir. 2004) ............................................................................... 15

*Cedars-Sinai Mediical Ctr. v. Watkins*,
   11 F.3d 1573 (Fed. Cir. 1993) ................................................................................... 4

*Cingular Wireless LLC v. Freedom Wireless, Inc.*,
   2007 U.S. Dist. LEXIS 47957 (D. Ariz. 2007) .............................................. 21, 22, 23

*Colo. River Water Conservation Dist. v. United States*,
   424 U.S. 800 (1976) ................................................................................................. 6

*Continental Casualty Co. v. Robsac Indus.*,
   947 F.2d 1367 (9th Cir. 1991) ................................................................................ 19

*Crosley Corp. v. Hazeltine Corp.*,
   122 F.2d 925 (3d Cir. 1941) ..................................................................................... 5

*D.H. Blair & Co. v. Gottdiener*,
   462 F.3d 95 (2d Cir. 2006) ....................................................................................... 7

*Davox Corp. v. Digital Systems International, Inc.*,
   846 F. Supp. 144 (D. Mass. 1993) .......................................................................... 17

675812-1

*EEOC v. University of Pennsylvania*,
   850 F.2d 969 (3d Cir. 1988)................................................................. 5

*EMC Corp. v. Norand Corp.*,
   89 F.3d 807 (Fed. Cir. 1996)........................................................ passim

*Factors, Etc. v. Pro Arts, Inc.*,
   579 F.2d 215 (2d Cir. 1989)................................................................. 9

*Ferens v. John Deere Co.*,
   494 U.S. 516 (1990)............................................................................. 6

*First Fishery Dev. Service, Inc. v. Lane Labs USA, Inc.*,
   1997 WL 579165 (S.D. Cal. 1997).................................................. 16, 18

*FMC Corp. v. AMVAC Chem. Corp.*,
   379 F. Supp. 2d 733 (E.D. Pa. 2005) ............................................... 5, 9

*Gehling v. St. George's School of Medicine, Ltd.*,
   773 F.2d 539 (3d Cir. 1985)............................................................... 28

*Genentech, Inc. v. Eli Lilly Co.*,
   998 F.2d 931 (Fed. Cir. 1993)............................................................. 7

*Government Employees Ins. Co. v. Dizol*,
   133 F.3d 1220 (9th Cir. 1998) ........................................................... 19

*Guthy-Renker Fitness, LLC v. Icon Health & Fitness, Inc.*,
   179 F.R.D. 264 (C.D. Cal. 1998) ......................................................... 8

*Honeywell Int'l v. Universal Avionics Sys. Corp.*,
   347 F. Supp. 2d 81 (D. Del. 2004)..................................................... 26

*Int'l Shoe Co. v. Washington*,
   326 U.S. 310 (1945)........................................................................... 27

*Intel Corp. v. Silicon Storage Tech.*,
   20 F. Supp. 2d 690 (D. Del. 1998)................................................. 25, 26

*Jervis B. Webb Co. v. Southern Systems, Inc.*,
   742 F.2d 1388 (Fed. Cir. 1984)........................................................... 4

*Kehr Packages v. Fidelcor, Inc.*,
   926 F.2d 1406 (3d Cir. 1991)............................................................... 3

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
   511 U.S. 375 (1994)............................................................................. 3

iii

*Lonza Inc. v. Rohm and Haas, Inc.*,
  951 F. Supp. 46 (S.D.N.Y. 1997)............................................................... 22

*LSI Indus. Inc., v. Hubbell Lighting, Inc.*,
  232 F.3d 1369 (Fed. Cir. 2000)................................................................. 28

*Marten v. Godwin*,
  499 F.3d 290 (3d Cir. 2007)..................................................................... 24

*Martinez v. U.S. Post Office*,
  875 F. Supp. 1067 (D.N.J. 1995) ................................................................ 4

*MedImmune, Inc. v. Centocor, Inc.*,
  409 F.3d 1376 (Fed. Cir. 2005)................................................................. 11

*MedImmune, Inc. v. Genentech*, Inc.,
  127 S. Ct. 764 (U.S. 2007) ......................................................... 11, 14, 15

*Milliken v. Meyer*,
  311 U.S. 457 (1940)................................................................................. 28

*Monsanto Co. v. Syngenta Seeds, Inc.*,
  2006 U.S. Dist. LEXIS 54534 (D. Del. 2006) .......................................... 27

*Mortensen v. First Fed. Sav. and Loan Ass'n*,
  549 F.2d 884 (3d Cir. 1977)....................................................................... 4

*NSI Corp. v. Showco., Inc.*,
  843 F. Supp. 642 (D. Or. 1994) ................................................................ 16

*Pacesetter Systems, Inc. v. Medtronic, Inc.*,
  678 F.2d 93 (9th Cir. 1982) ..................................................... 5, 6, 7, 20

*Physician Endorsed LLC v. Clark*,
  374 F. Supp. 2d 395 (D. Del. 2005)................................................ 24, 25, 27

*Provident Nat'l Bank v. California Fed. Sav. & Loan Assoc.*,
  819 F.2d 434 (3d Cir. 1987)................................................................. 24, 28

*Reichhold, Inc. v. United States Metals Ref. Co.*,
  2007 U.S. Dist. LEXIS 59274 (D.N.J. 2007) ........................................... 11

*SanDisk Corp. v. STMicroelectronics, Inc.*,
  480 F.3d 1372 (Fed. Cir. 2007)................................................................. 11

*Schwarzenegger v. Fred Martin Motor Co.*,
  374 F.3d 797 (9th Cir. 2004) ................................................................... 29

iv

*Serco Servs. Co., L.P. v. Kelley Co.*,
    51 F.3d 1037 (Fed. Cir. 1995)..................................................................... 14

*Sony Elecs., Inc. v. Guardian Media Techs., Ltd.*,
    497 F.3d 1271 (Fed. Cir. 2007)........................................................... *passim*

*Spectronics Corp. v. H.B. Fuller Co.*,
    940 F.2d 631 (Fed. Cir. 1991)....................................................................... 3

*Tempco Elec. Heater Corp. v. Omega Eng'g*,
    819 F.2d 746 (7th Cir. 1987) ...................................................................... 18

*Time Warner Cable, Inc. v. United States Video Tech. Corp.*,
    2007 U.S. Dist. LEXIS 80582 (D. Del. 2007) ............................................ 9

*Tracinda Corp. v. DaimlerChrysler AG (In re DaimlerChrysler AG Sec. Litig.)*,
    197 F. Supp. 2d 86 (D. Del. 2002)............................................... 24, 28, 29

*West Gulf Maritime Assoc. v. ILA Deep Sea Local 24*,
    751 F.2d 721 (5th Cir. 1985) ....................................................................... 6

*Wilton v. Seven Falls Co.*,
    515 U.S. 277 (1995).............................................................................. 14, 20

Statutes

10 *Del. C.* § 3104(c).................................................................................... 21, 22

28 U.S.C. § 2201 ............................................................................................ 11

28 U.S.C. § 2201(a) ................................................................................. 10, 13

35 U.S.C. § 271(a) ........................................................................................... 9

Rules

Fed. R. Civ. P. 12(b)(1) .................................................................................. 3

Fed. R. Civ. P. 12(b)(2)......................................................................... 2, 19, 20

## I.    Introduction.

### A.    Background of Citicorp's declaratory relief action.

Citicorp Credit Services, Inc. ("Citicorp") is using this declaratory relief lawsuit as part of a coordinated plan to artificially create a multiplicity of lawsuits and misuse the multi-district litigation procedure to work a change of venue that it could not obtain under the proper procedures.  Citicorp's abuse of the judicial system should be rejected and this case should be dismissed based on four independent grounds.

In this action, Citicorp seeks a declaratory judgment relating to three patents[1] owned by LPL Licensing, LLC ("LPL") exclusively licensed to Phoenix Licensing, LLC ("Phoenix"). The defendants in this action, LPL and Phoenix previously brought claims for patent infringement in the Eastern District of Texas against 22 entities, including Citicorp's parent company, Citigroup, Inc. and five other Citigroup affiliates[2] (the "Texas Action").[3]

The defendants in the Texas Action (including the Citi entities) knew that Texas was an appropriate forum for resolving this patent dispute and, that as a result, bringing a motion to transfer the Texas Action to another forum would likely fail.  As a result, certain defendants in the Texas Action responded by artificially un-consolidating the Texas action into various forums, so that they could then move the Panel on

---

[1]    United States Patent Nos. 5,987,434, 6,076,072, and 6,999,938 (the "Patents").  *See* Exh. 4 at 1-2.

[2]    The Citigroup affiliates include (1) Citibank NA, (2) Citibank USA, (3) Citibank (South Dakota), NA, (4) Citimortgage, Inc., (5) Citigroup, Inc., and (6) Citi Assurance Services, Inc.  *See* Exh. 2; Exh. 6.

[3]    *Phoenix Licensing, L.L.C., et al. v. Chase Manhattan Mortgage, et al.*, CA No. 2:07-cv-11387-TJW-CE (Eastern District of Texas).

1

Multi-District Litigation to re-consolidate the actions, but in a forum *other* than Texas. Citigroup had its wholly owned subsidiary, Citicorp, file this lawsuit in Delaware, while three other defendants in the Texas Action had subsidiaries file similar declaratory relief actions in Illinois and Arizona. Luner Decl. ¶ 5. A few days later, the Citi entities moved the Panel on Multi-District Litigation to consolidate these actions in any place but Texas. Exh. 7; Luner Decl. ¶ 6. These tactics do nothing but waste judicial resources.

     **B.**     **Basis for these consolidated motions.**

This motion to dismiss Citicorp's complaint is based on four independent grounds, three that require dismissal of this case against both LPL and Phoenix, and a fourth basis that applies only to Phoenix.

<u>First</u>, this case should be dismissed under the first-to-file rule because Citicorp's claims were filed after the Texas Action and allowing these claims to continue would waste time, effort, and money.

<u>Second</u>, this case should be dismissed for lack of subject matter jurisdiction because Citicorp cannot identify the requisite "actual controversy" between the parties.

<u>Third</u>, this Court should exercise its discretion to decline to hear Citicorp's declaratory judgment claims because this case falls outside the purposes of the Declaratory Judgment Act and dismissal will allow the most efficient resolution of all the disputes between parties in one court: the Eastern District of Texas.

<u>Fourth</u>, this case should be dismissed as to defendant Phoenix under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction because this district has no general or specific jurisdiction over Phoenix.

Each independent basis for dismissing this case is addressed in turn.

**II.    Citicorp bears the burden of proving jurisdiction with evidence.**

Two important principles guide this Court's review of this motion.

First, the burden of proving subject matter jurisdiction rests solely on Citicorp. *Kehr Packages v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991) ("When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff must bear the burden."); *Spectronics Corp. v. H.B. Fuller Co.*, 940 F.2d 631, 633-36 (Fed. Cir. 1991) ("The burden is on [the plaintiff] 'to establish that jurisdiction over its declaratory judgment action'") (internal quotes omitted). The Court must presume the lack of subject matter jurisdiction until Citicorp proves otherwise. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) ("It is to be presumed that a cause lies outside this limited jurisdiction.")

Second, to meet its burden, Citicorp may not rest on the allegations in its Complaint. "If the Rule 12(b)(1) motion denies or controverts the pleader's allegations of jurisdiction, however, the movant is deemed to be challenging the factual basis for the court's subject matter jurisdiction. In such a case, the allegations in the complaint are not controlling, and only uncontroverted factual allegations are accepted as true for purposes of the motion. All other facts underlying the controverted jurisdictional allegations are in dispute and are subject to fact finding by the district court." *Cedars-Sinai Medical Ctr. v. Watkins*, 11 F.3d 1573, 1584 (Fed. Cir. 1993) (internal citations omitted); *Jervis B. Webb Co. v. Southern Systems, Inc.*, 742 F.2d 1388, 1399 (Fed. Cir. 1984) ("where, as here, the declaratory defendant (patentee) has denied the factual allegations that allegedly support the existence of case or controversy, the declaratory plaintiff must prove the existence of facts underlying such allegations"). In ruling upon a Rule 12(b)(1) motion challenging subject matter jurisdiction, "no presumptive truthfulness attaches to a plaintiff's

allegations." *Martinez v. U.S. Post Office*, 875 F. Supp. 1067, 1070 (D.N.J. 1995) (citing *Mortensen v. First Fed. Sav. and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).

Citicorp cannot meet its burden of establishing subject matter jurisdiction.

**III.    Citicorp's complaint should be dismissed under the first-filed rule.**

Under the first-to-file rule, a district court should dismiss a second-filed lawsuit that is duplicative of an action involving similar parties and similar issues previously filed in another district. *EEOC v. University of Pennsylvania*, 850 F.2d 969, 971 (3d Cir. 1988) ("Nearly fifty years ago, this court adopted what has become known as the 'first-filed' rule. We concluded that 'in all cases of federal concurrent jurisdiction, the court which first has possession of the subject must decide it.'") (quoting *Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 929 (3d Cir. 1941)); *FMC Corp. v. AMVAC Chem. Corp.*, 379 F. Supp. 2d 733, 738 (E.D. Pa. 2005) ("the Court of Appeals for the Third Circuit [has] recognized and followed the first-to-file rule where there are two competing district court actions."); *Pacesetter Systems, Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94-95 (9th Cir. 1982) ("There is a generally recognized doctrine of federal comity which permits a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district.").

Federal courts disfavor duplicative litigation. *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) ("the general principle is to avoid duplicative litigation."). The Supreme Court has "made quite clear that to permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money." *Ferens v. John Deere Co.*, 494 U.S. 516, 531 (1990) (citation omitted). "The concern

4

manifestly is to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result." *West Gulf Maritime Assoc. v. ILA Deep Sea Local 24*, 751 F.2d 721, 728 (5th Cir. 1985).

To avoid duplicative litigation, a district court should dismiss a second-filed lawsuit that is duplicative of an action involving similar parties and similar issues already filed in another district.   *Pacesetter*, 678 F.2d at 94-95 (9th Cir. 1982) (affirming dismissal of second-filed declaratory judgment action brought by alleged infringer in favor of first-filed action brought by patent holder).   An action for patent infringement and a declaratory judgment action for non-infringement involving the same patents and similar parties fall squarely within the first-to-file rule. *Genentech, Inc. v. Eli Lilly Co.*, 998 F.2d 931, 937-38 (Fed. Cir. 1993).   This is because a declaratory judgment claim of non-infringement will necessarily be litigated in an action for infringement and a declaratory judgment claim of invalidity, can, should be (and, in the Texas Action has been) asserted as a counterclaim in the action for infringement.

Courts look to three factors, each based in common sense, when applying the first-to-file rule:

> (1)     chronology of the actions;
>
> (2)     the similarity of the parties; and
>
> (3)     the similarity of the issues.

*See Pacesetter*, 678 F.2d at 94-95; *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006).  All three factors demonstrate that the first-to-file rule applies here.

<u>Chronology</u>:   The Texas Action was filed first on August 31, 2007, more than a month and a half before Citicorp filed its duplicative declaratory judgment claim in the District of Delaware on October 17, 2007.  *See* Exhs. 1 and 4.

<u>Similarities of the parties</u>:   <u>First</u>, the defendants in this action, LPL and Phoenix, are identical to the plaintiffs in the Texas Action.  <u>Second</u>, Citicorp, the plaintiff in this action is substantially the same as the six Citicorp "affiliates" in the original Texas Action, including Citicorp's parent, Citigroup.  Exh. 4, Complaint, at ¶ 10; Exh. 7.  Accordingly, "the parties in both actions are similar enough to apply the first to file rule.  Again, strict identity is not needed, only substantial similarity."  *Arris Int'l, Inc. v. Hybrid Patents, Inc. (In re Com21, Inc.)*, 357 B.R. 802, 807 (Bankr. D. Cal. 2006).  <u>Third</u>, because (a) the Texas Action has been amended to include Citicorp (Exh. 2), and the (b) first to file rule applies to the date of the original complaint, the parties in this action will not only be substantially the same, they are identical.  *Guthy-Renker Fitness, LLC v. Icon Health & Fitness, Inc.*, 179 F.R.D. 264, 270 (C.D. Cal. 1998) ("In making this determination, the court should employ the date on which the original, rather than the amended, complaint was filed."); A*rris,* 357 B.R. at 807 ("It makes no difference that Arris had not yet been joined as a party in the Texas litigation when it initiated this adversary proceeding.")

<u>The issues are identical</u>.  The Texas Action involves the infringement and validity of the three Patents.  Exh. 2.  This litigation involves the infringement and validity of the exact same three Patents.  Exh. 4.  Accordingly, the issues in the litigation are not only similar—they are identical.

All three factors demonstrate that this action should be dismissed based on the first-to-file rule.  Permitting this case to go forward would serve no useful purpose. Given this overlap of identical issues and similarity of parties in the Texas Action and the action here, applying the first-to-file rule will conserve judicial resources by avoiding duplicative litigation.  Maintaining these claims would likely waste judicial resources, risk inconsistent rulings involving the same patents and products, and impose an unreasonable and unnecessary burden on the parties to litigate the same issues in multiple forums.  For example, two actions would result in:

- duplicative discovery:  (a) producing the same documents relating to the validity and infringement would be produced in both actions, (b) two depositions of the invalidity witnesses, (c) two depositions of the inventor; and

- two claim construction hearings on the same claim terms which could result in inconsistent constructions.

*See* Section V(B) below demonstrating how considerations of practicality and efficient judicial administration demonstrate that this case should be dismissed; *Time Warner Cable, Inc. v. United States Video Tech. Corp.*, 2007 U.S. Dist. LEXIS 80582, 21-22 (D. Del. 2007) ("it would create economic waste to duplicate this litigation in the District of Delaware.")[4]

Citicorp may assert that an unrelated entity (State Farm) actually filed the first action involving the Patents in the District of Arizona before LPL and Phoenix initiated

---

[4]    Not only does the first-to-file rule demonstrate that this case should be dismissed, this case should also be dismissed because declaratory relief actions should be dismissed in favor of the Texas Action which is coercive.  *Factors, Etc. v. Pro Arts, Inc.*, 579 F.2d 215, 219 (2d Cir. 1989) ("exception to the first-filed rule where declaratory judgment action was triggered by a notice letter and filed in anticipation of a coercive suit") (citing *FMC Corp. v. AMVAC Chem. Corp.*, 379 F. Supp. 2d 733, 744 (E.D. Pa. 2005)).  The present action is the declaratory relief action and the Texas Action is the coercive action.  Accordingly, if the present action had been filed first, is would still be dismissed in favor of the coercive action in Texas.

the Texas Action (the "State Farm Action").[5]  Luner Decl. ¶ 4.  The State Farm Action,

however, has no bearing on this motion.  First, as to this lawsuit and the Texas Action,

the Texas Action was filed first.  This chronology is not affected by the State Farm

Action.  Second, as to the Citi entities, the Texas Action was the first filed action.  The

Citi entities were not part of the earlier State Farm Action.  Third, LPL and Phoenix filed

a motion to dismiss the State Farm Action for lack of jurisdiction which, if granted,

would make the Texas Action the first filed lawsuit among all of the actions.  Exh. 3.  At

best, Citi could make an ineffective argument in the Texas Action that the Texas Action

should be dismissed in light of the State Farm Action.  Such an argument, however, is not

a basis for this Court to maintain this action.

**IV.    Citicorp's complaint should be dismissed for lack of subject matter jurisdiction because Citicorp's complaint does not satisfy the required "actual case or controversy" standard.**

A district court has declaratory judgment jurisdiction only if a case presents an

"actual controversy."  28 U.S.C. § 2201(a); *EMC Corp. v. Norand Corp.*, 89 F.3d 807,

810 (Fed. Cir. 1996) ("The Act, paralleling Article III of the Constitution, requires an

actual controversy between the parties before a federal court may exercise jurisdiction

over an action for a declaratory judgment."); *see also SanDisk Corp. v.

STMicroelectronics, Inc.*, 480 F.3d 1372, 1378 (Fed. Cir. 2007).[6]  Absent an actual

controversy, a complaint solely for declaratory relief under 28 U.S.C. § 2201 must be

---

[5]    *State Farm Mutual Automobile Insurance Company v. LPL Licensing, L.L.C., et al.*, CA No. 2:07-cv-01329-MHM (District of Arizona).

[6]    "Whether an actual case or controversy exists so that a district court may entertain an action for a declaratory judgment of non-infringement and/or invalidity is governed by Federal Circuit law."  *MedImmune, Inc. v. Centocor, Inc.*, 409 F.3d 1376, 1378 (Fed. Cir. 2005).

675812-1

dismissed for lack of subject matter jurisdiction. *See Reichhold, Inc. v. United States Metals Ref. Co.*, 2007 U.S. Dist. LEXIS 59274 (D.N.J. 2007).

To satisfy this requirement, the "actual controversy" must be "<u>definite and concrete</u>, touching the legal relations of parties having adverse legal interests." *SanDisk*, 480 F.3d at 1378 (quoting *MedImmune, Inc. v. Genentech*, Inc., 127 S. Ct. 764, 771 (U.S. 2007)) (emphasis added). In the context of a patent dispute, at a minimum, an "actual controversy" requires "<u>certain identified ongoing or planned activity</u>" that forms the basis of the dispute. *SanDisk*, 480 F.3d at 1381 (emphasis added).[7]

Citicorp has not satisfied this jurisdictional prerequisite because it cannot show that an "actual controversy" existed when it filed its complaint. Citicorp's complaint simply states:

> On August 31, 2007, Defendants filed Case No. 2-07cv-387 in the United States District Court for the Eastern District of Texas, Marshall Division, <u>accusing 22 companies in the financial products and services industry,</u> including certain affiliates of CCSI, of patent infringement with respect to the patents-in-suit. <u>In light of those allegations,</u> CCSI believes that a controversy also exists

---

[7]    Prior to the Supreme Court's decision in *MedImmune*, the Federal Circuit applied a two-part test to determine whether there was an actual controversy in suits requesting a declaration of patent non-infringement (1) whether the declaratory judgment plaintiff actually produced or was prepared to produce an allegedly infringing product, and (2) whether conduct by the patentee had created on the part of the declaratory judgment plaintiff a reasonable apprehension that the patentee would file suit if the allegedly infringing activity continued. *Sony Elecs., Inc. v. Guardian Media Techs., Ltd.*, 497 F.3d 1271, 1284 (Fed. Cir. 2007). In *MedImmune*, the Supreme Court abrogated the "reasonable apprehension of suit" part of the test. *Id.* The first part of the test, requiring the declaratory relief plaintiff to specifically identify the allegedly infringing product, however, remains intact. *Id.* at 1285 (finding subject matter jurisdiction where the parties took "adverse positions regarding whether Sony's sale of products possessing parental rating control technology infringed any valid claims" of the patents at issue); *Benitec Austl., Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1348 (Fed. Cir. 2007) (finding no subject matter jurisdiction where no specific infringing product was identified: "To be liable as an infringer, [the plaintiff] must be one who 'without authority makes, uses, offers to sell, or sells' a product that infringes the [ ] patent. *See* 35 U.S.C. § 271(a). There was no evidence before the district court that [the plaintiff] had made or sold any infringing product.")

> between it and Defendants over whether <u>CCSI's business practices</u> have infringed, and are continuing to infringe, the patent-in-suit and whether the patents-in-suit are valid.

Exh. 4, Complaint at ¶¶ 10-11 (emphasis added).  Stating that LPL and Phoenix filed a lawsuit against one, two, or 22 other companies does not create a dispute as to Citicorp's unidentified "business practices."   Moreover, when LPL and Phoenix requested that Citicorp identify its "business practices" that allegedly formed the basis for its Complaint (Exh. 5), Citicorp refused to identify such activities.  Luner Decl. ¶ 8.

It is Citicorp's burden to prove with evidence that, at the time it filed the complaint, Phoenix and LPL had accused specific conduct by Citicorp of infringement: it is not enough for Citicorp to prove that they were going to engage in potentially infringing activity; they must assert that <u>Phoenix and LPL</u> contended that the activity was infringing.  There has to be controversy, which requires two people with opposing sides.  If only one side is even aware of the dispute, there is no controversy.  Citicorp cannot offer such evidence.   Citicorp's declaratory judgment claims seek resolution of a hypothetical, not actual, controversy and must be dismissed.[8]

---

[8]    After Citicorp brought this declaratory relief action against Phoenix and LPL, Phoenix and LPL added Citicorp to the Texas Action.  Because Phoenix and LPL are not aware of any basis for Citicorp specific alleged infringing services provided by Citicorp, Phoenix and LPL added Citicorp to the Texas Action, upon information and belief, based solely on the allegations in Citicorp's present Complaint, to the extent that Citicorp is ultimately able to identify an actual controversy.  Adding Citicorp to the Texas Action after Citicorp filed this action, however, does not retroactively create standing.  "The burden is on the party claiming declaratory judgment jurisdiction to establish that such jurisdiction existed at the time the claim for declaratory relief was filed and that it has continued since."  *Benitec Austl., Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1344 (Fed. Cir. 2007).

**V.     This Court should exercise its discretion to decline jurisdiction over a declaratory relief action that is not within the core purpose of the declaratory judgment act and to conserve judicial resources.**

Under the Declaratory Judgment Act, a district court has discretion whether to hear a claim for declaratory relief.  *See* 28 U.S.C. § 2201(a) ("[A]ny court . . . <u>may</u> declare the rights and other legal relations of any interested party seeking such declaration" (emphasis added)).  "The Declaratory Judgment Act states that courts 'may' grant relief; it does not require courts to grant relief."  *Sony Elecs., Inc. v. Guardian Media Techs., Ltd.*, 497 F.3d 1271, 1287 (Fed. Cir. 2007).  "[E]ven if a case satisfies the actual controversy requirement, there is no absolute right to a declaratory judgment, for the statute specifically entrusts courts with discretion to hear declaratory suits or not depending on the circumstances."  *Serco Servs. Co., L.P. v. Kelley Co.*, 51 F.3d 1037, 1039 (Fed. Cir. 1995).  "This text has long been understood 'to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants.'"  *MedImmune, Inc. v. Genentech, Inc.*, 127 S. Ct. 764, 776 (2007) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995)).  "[T]he [Supreme] Court explained that 'the statute's textual commitment to discretion, and the breadth of leeway we have always understood it to suggest, distinguish the declaratory judgment context from other areas of the law.'"  *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 813 (Fed. Cir. 1996) (quoting *Wilton*, 515 U.S. at 286).

In determining whether a case is appropriate for declaratory judgment jurisdiction, district courts should consider:

> (1)     how closely this action fits with the core purposes of the Declaratory Judgment Act, and

> (2)     considerations of practicality and judicial economy.

11

*EMC*, 89 F.3d at 814.

Here, the "purposes of the Declaratory Judgment Act and the principles of sound judicial administration" both weigh heavily against this Court accepting subject matter jurisdiction. *Id*. at 813-14. Each factor is discussed in turn below.

A.    **Citicorp's declaratory judgment complaint should be dismissed because it is outside the purpose of the Declaratory Judgment Act.**

This case should be dismissed because it is outside the purpose of the Declaratory Judgment Act.

In deciding whether to use its discretion to hear this matter, the Court should consider whether this is one of the "cases closer to the central objectives of declaratory proceedings." *EMC,* 89 F.3d at 814; *MedImmune,* 127 S. Ct. at 776 (the declaratory judgment act "vest[s] district courts with discretion" to consider "facts bearing on the usefulness of the declaratory judgment remedy").

The Core:  In the patent context, at the core of declaratory judgment jurisdiction are cases where "'the patent owner attempts extra-judicial patent enforcement with scare-the-customer-and-run tactics that infect the competitive environment.'" *EMC*, 89 F.3d at 814 (quoting *Arrowhead Industrial Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 735 (Fed. Cir. 1988)).  In such a case, "a patent owner engaging in 'extra-judicial patent enforcement' tactics rendered its competitors 'helpless and immobile so long as the patent owner refused to grasp the nettle and sue.'"  *Sony*, 497 F.3d at1285 (quoting *Arrowhead*, 846 F.2d at 735); *see Capo, Inc. v. Dioptics Med. Prods.*, 387 F.3d 1352, 1356 (Fed. Cir. 2004) (declaratory judgment jurisdiction appropriate where patent holder's "threats were not aimed at negotiation, but at impeding a competitor's commercial activity").

12

The periphery:   At the opposite end of the spectrum are cases where the declaratory judgment plaintiff files suit while the parties are still engaged in settlement discussions.   *EMC*, 89 F.3d at 814 (stating that the plaintiff's conduct was "inconsistent" with the purposes of the Declaratory Judgment Act where plaintiff "took advantage of the fact that [patentee] had deferred . . . litigation because of its belief that settlement negotiations were under way.") (quoting *NSI Corp. v. Showco., Inc.,* 843 F. Supp. 642, 645-46 (D. Or. 1994)).

Off the chart:  Beyond any relationship with the purpose of the Declaratory Relief Act are cases where a patent owner has already sued a defendant or related entity, thereby eliminating any uncertainty as to whether the patent owner will bring a lawsuit, and the accused party responds with a separate declaratory relief action:   "the Declaratory Judgment Act was intended to fix the problem that arises when the other side <u>does not sue</u>."  *Sony*, 497 F.3d at 1284 (emphasis added); *First Fishery Dev. Service, Inc. v. Lane Labs USA, Inc.*, 1997 WL 579165, *2 (S.D. Cal. 1997) ("Uncertainty that warrants declaratory relief generally relates to whether the Plaintiff might be sued.").  If a lawsuit has already been filed, "'it would be inappropriate to reward—and indeed abet—conduct which is inconsistent with the sound policy . . . conservation of judicial resources.'"  *EMC*, 89 F.3d at 814 (quoting *Davox Corp. v. Digital Systems International, Inc.*, 846 F. Supp. 144, 148 (D. Mass. 1993)).  Where the patent holder has already brought suit against an alleged infringer, a later filed declaratory judgment action serves no useful purpose and should be dismissed.  *Id.*; *First Fishery*, 1997 WL 579165 at *3-4.

Where does the present case fall on the spectrum?  This case is off the chart:

| Center of declaratory judgment jurisdiction. | Suing based on uncertainty as to whether the patent holder will sue while refusing to file suit. *EMC*, 89 F.3d at 814. |
|---|---|
| Peripheral of declaratory relief. | Taking advantage of the fact that the patentee deferred litigation to pursue settlement negotiations. *EMC.*, 89 F.3d at 814. |
| Off the chart. | Filing a lawsuit after the patent owner has already filed a lawsuit. *Sony*, 497 F.3d at 1284.<br><br>Attempting to (a) un-consolidate an action by filing multiple declaratory relief actions, and (b) re-consolidate the action it in more favorable jurisdiction. |

The present circumstances are not at the core of the Declaratory Judgment Act. Phoenix and LPL have not been threatening Citicorp's customers with the Patents, but refusing to "grasp the nettle and sue." Citicorp does not face the type of uncertainty that the Declaratory Judgment Act contemplates. Nor is this a case at the periphery. Citicorp did not merely elect to file suit during settlement discussions. Rather, Citicorp decided it needed declaratory relief only after LPL and Phoenix filed suit against the other Citicorp entities. This case has no relationship to the underlying purpose of the Declaratory Judgment Act.

Moreover, forum shopping, when a declaratory relief plaintiff files a first action to secure its choice forum, is way outside the core of declaratory judgment jurisdiction. Because "[f]orum shopping is a concern . . . as between different federal courts . . . [c]ourts have discretion under the Declaratory Judgment Act, to prevent such 'procedural fencing.'" *First Fishery*, 1997 WL 579165 at *3. As a result, courts have frequently dismissed a duplicate declaratory judgment action that is brought as a means for forum shopping. *See, e.g., id.* at *4 ("This Court will not countenance such preemptive forum shopping. Accordingly, the action will be dismissed."). "The wholesome purpose of declaratory acts would be aborted by its use as an instrument of procedural fencing either

14

to secure delay or to choose a forum." *Tempco Elec. Heater Corp. v. Omega Eng'g*, 819 F.2d 746, 750 (7th Cir. 1987) (citing *American Auto. Ins. Co. v. Freundt*, 103 F.2d 613, 616 (7th Cir. 1939)). "It was not intended by the act to enable a party to obtain a change of tribunal and thus accomplish in a particular case what could not be accomplished under the removal act, and such would be the result in the instant case." *American Auto.*, 103 F.2d at 617. Yet Citicorp is attempting to use the Declaratory Relief Act to transfer the Texas Action to another jurisdiction. Citicorp (and other defendants in the Texas Action) are attempting to inappropriately use the Declaratory Judgment Act as an instrument of "procedural fencing" to secure a different choice of forum that they may not be able to obtain using appropriate methods by attempting to:

- un-consolidate the Texas Action by filing a declaratory relief action, thereby artificially creating duplicative litigation; and

- arguing that their self-created duplicative litigation is inefficient and requesting the MDL panel to consolidated the litigation in any jurisdiction other than Texas.

Luner Decl. ¶ 6; Exh. 7. There was no multiplicity of actions until Citicorp and other certain entities artificially create such actions by filing three declaratory judgment actions in various jurisdiction and then request to consolidate them in an attempt to misuse the multi-district procedure to work a change of venue that could not be obtained under proper procedures. Citicorp cannot provide this court with any valid justification for filing this declaratory relief action rather than addressing its issues in the Texas Action. Its actions are needlessly duplicating litigation, and forcing the parties and this Court to waste substantial time and resources litigating procedural issues instead of moving forward to resolve the parties' patent claims on the merits.

675812-1

Moreover, filing a declaratory relief action in reaction to another lawsuit is clearly outside the purpose of the Declaratory Relief Act.  *See*, *e.g., Continental Casualty Co. v. Robsac Indus.*, 947 F.2d 1367, 1371 (9th Cir. 1991) ("if a declaratory judgment suit is defensive or reactive, that would justify a court's decision not to exercise jurisdiction."); *see also Government Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998) ("federal courts should generally decline to entertain reactive declaratory actions").

> Declaratory relief is intended to serve a unique function in patent disputes, <u>eliminating multiple litigation</u> and protecting competitors from infringement actions that are threatened but not pursued.  In contrast to those policies, <u>Pacesetter's declaratory judgment action multiplies litigation</u>.  It does not shield Pacesetter from an unfair threat of an infringement action, but attempts to remove ongoing litigation from the forum chosen by the plaintiff.

*Pacesetter*, 678 F.2d at 97 (citations omitted) (emphasis added).  In this case, Citicorp was not even the first-to-file but rather filed in reaction to the Texas Action, thereby creating "multiple litigation."

Citicorp's declaratory relief action is not in the core of the Declaratory Relief Act—it is not even at the outermost periphery—is it off the chart and should be rejected. This factor weighs strongly in favor of the Court declining to exercise jurisdiction.

### B.  Considerations of practicality and efficient judicial administration weigh in favor of dismissal.

Considerations of practicality and efficient judicial administration weigh in favor of dismissal.  For suits brought under the Declaratory Judgment Act, "the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration."  *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995).  The comprehensive Texas Action is central to the

16

analysis of the efficient resolution of the dispute between LPL, Phoenix, Citicorp, and the other Citi entities.  Because the Texas Action includes claims for patent infringement by LPL and Phoenix against seven Citicorp entities, including Citicorp, on the exact same three Patents, it includes the exact same claims between the exact same parties as in the present case.  As to these claims and parties, the existence of two lawsuits will necessarily entail complete duplication of efforts by the courts and the parties and the risk of inconsistent judgments.  And, the inefficient judicial administration created by this declaratory judgment action extends beyond the claims against Citicorp and the Citi entities.  The Texas Action also includes claims against other defendants.  The considerations for judicial administration for these are described below.

the risk of inconsistent judgments.  As to the claims against six Citi entities on the Patents, there is an obvious risk of judgments that are inconsistent at every level.  Moreover, there is a risk of inconsistent claim constructions and inconsistent findings of validity or invalidity on the Patents as between this case and the case against other defendants in the Texas Action.  This factor weighs in favor of discretionary dismissal.  *Cingular Wireless LLC v. Freedom Wireless, Inc.*, 2007 U.S. Dist. LEXIS 47957, *16 (D. Ariz. 2007) ("The opportunity for inconsistent judgments between the . . . pending cases weighs on this Court, the risk of which favors discretionary dismissal.")

duplication of judicial resources.  In construing claim terms, a court will have to learn the nuances of the patent specifications and the lengthy prosecution history.  This will require a complete duplication of effort as between this Court and the Texas Court.  Similarly, when considering issues of invalidity based on prior art, both Courts will have to duplicate efforts to understand the prior art, to identify the differences between the

invention and the prior art, and to evaluate the objective indicators of non-obviousness. "The certainty of wasted resources weighs strongly in favor of dismissal. *See Lonza Inc. v. Rohm and Haas, Inc.*, 951 F. Supp. 46, 50 (S.D.N.Y. 1997) ('[T]here is simply no reason why the patent issues in dispute should be litigated in two different Courts.')." *Cingular Wireless*, 2007 U.S. Dist. LEXIS 47957 at *16.

duplicative discovery and trial efforts.  In both the present case and the Texas Action, there will be substantial duplication of discovery.  In particular, it is likely that duplicative depositions would be taken of witnesses such as the inventor, the attorneys who prosecuted the patents, and key prior art witnesses.  Similarly, there would be duplication of testimony and exhibits at trial.  That would be true, again, as to all four categories of claims in Texas.  "Therefore, the other actions in Texas will require the presence of the parties, counsel, witnesses and inventors regardless of this dispute's location, which weighs in favor of discretionary dismissal." *Cingular Wireless*, 2007 U.S. Dist. LEXIS 47957 at *14.

ability of the other forum to handle this case.  Another factor is whether the other forum, in this instance the Eastern District of Texas, has the ability to administer the disputes.  The litigation in Texas involves 23 defendants and three patents.  Moreover, each of the patents contains multiple claims.  The '434 patent has 56 separate claims. The '072 patent has 134 separate claims.  The '938 patent has 312 separate claims.  And, a successful reexamination of the '434 patent has just been completed by the Patent and Trademark Office, in which 104 additional claims were added for a total of 160 claims in that patent.  Relevant here is "the Eastern District of Texas' adoption of special rules for patent infringement actions, which streamline discovery, claim construction and other

18

pre-trial matters.  While any United States District Court, including this one, can afford all parties the timeliness, fairness, justice and competence required to resolve their patent disputes, the Court is persuaded that the Eastern District of Texas' special rules will most efficiently promote sound judicial administration." *Cingular Wireless*, 2007 U.S. Dist. LEXIS 47957, at n.3.

  <u>convenience for parties</u>.  Another factor is the convenience of the forum for the parties.  Arizona and Texas are convenient forums for the patent holder.  Texas is the most convenient forum for several of the defendants in the Texas Action.  Overall, Texas is centrally located and provides as convenient a forum as any for these claims.  This factor slightly favors Texas. *See also Cingular Wireless*, 2007 U.S. Dist. LEXIS 47957 at \*17 (considering that although the patent holder "maintains its principal place of business in Phoenix, Arizona," at least one accused infringer had "its principal place of business in Plano, Texas.").

*  *  *

  In sum, every significant factor for practical and efficient judicial administration weighs in favor of declining to exercise jurisdiction in this case.

## VI. Citicorp's claim against Phoenix should be dismissed for under Rule 12(b)(2) for lack of personal jurisdiction.

  Under Rule 12(b)(2) of the Federal Rules of Civil Procedure, a court must dismiss a suit if the court lacks jurisdiction over the person.  Rule 12(b)(2).

  With respect to such a motion, the party bringing an action (Citicorp) has the burden of establishing a prima facie basis for personal jurisdiction. *Marten v. Godwin*, 499 F.3d 290, 295 (3d Cir. 2007); *Tracinda Corp. v. DaimlerChrysler AG (In re DaimlerChrysler AG Sec. Litig.)*, 197 F. Supp. 2d 86, 94 (D. Del. 2002) ("On a motion to

19

dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant"); *Physician Endorsed LLC v. Clark*, 374 F. Supp. 2d 395, 397 (D. Del. 2005) ("Once a jurisdictional defense has been raised, the plaintiff bears the burden of establishing with reasonable particularity that sufficient minimum contacts have occurred between the defendant and the forum state to support jurisdiction") (citing *Provident Nat'l Bank v. California Fed. Sav. & Loan Assoc.*, 819 F.2d 434, 437 (3d Cir. 1987)).

To meet this burden, a plaintiff must produce admissible evidence, which, if believed, would be sufficient to establish the existence of personal jurisdiction. *Alcoa Inc. v. Alcan Inc.*, 2007 U.S. Dist. LEXIS 51565 (D. Del. 2007) ("plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence").

Determining whether there is personal jurisdiction involves a "two steps of jurisdictional analysis" which includes evaluating whether the jurisdiction satisfies (1) the state's long-arm statute (in this case, Delaware's long arm statute), and (2) constitutional due process. *Intel Corp. v. Silicon Storage Tech.*, 20 F. Supp. 2d 690, 694 (D. Del. 1998); *Physician Endorsed LLC v. Clark*, 374 F. Supp. 2d 395, 397 (D. Del. 2005) ("To establish personal jurisdiction, a party must allege facts sufficient to satisfy two requirements, one statutory and one constitutional.  With regard to the statutory requirement, the Court must determine whether there is a statutory basis for jurisdiction under the forum state's long arm statute.  As for the constitutional basis, the Court must determine whether the exercise of jurisdiction comports with the defendant's right to due

process") (internal citations omitted).  In this case, Citicorp cannot satisfy its burden as to either requirement.

<u>First</u>, Phoenix does not fall within the six categories which permit jurisdiction over the person under Delaware's long-arm statute.  The Delaware long-arm statute states that a court may exercise personal jurisdiction over any nonresident who:

> (1)  Transacts any business or performs any character of work or service in the State;
>
> (2)  Contracts to supply services or things in this State;
>
> (3)  Causes tortuous injury in the State by an act or omission in this State;
>
> (4)  Causes tortuous injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State;
>
> (5)  Has an interest in, uses or possesses real property in the State; or
>
> (6)  Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation or agreement located, executed or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

10 *Del. C.* § 3104(c)(1-6); *Intel*, 20 F. Supp. at 695.  Under the statue, courts have found jurisdiction where the companies are incorporated in Delaware and regularly doing business in Delaware.  *See, e.g.*, *Honeywell Int'l v. Universal Avionics Sys. Corp.*, 347 F. Supp. 2d 81, 83 (D. Del. 2004) ("This court has personal jurisdiction over defendants because defendants are incorporated in Delaware and/or have been doing business in Delaware.")  In contrast, Phoenix is an Arizona, not a Delaware company, that:

> (1)     never transacted or performed any work in Delaware;
>
> (2)     never contracted to supply services in Delaware;
>
> (3)     has not done any act or omission in Delaware to cause tortuous injury;
>
> (4)     does not engage in a persistent course of conduct in Delaware;
>
> (5)     has no interest in real property in Delaware; and
>
> (6)     never insured anyone in Delaware.

Libman Decl. ¶¶ 3-4. Phoenix has its offices in Arizona. *Id.* No representative of Phoenix has ever been to Delaware. *Id.* Citicorp does not and cannot allege that the Phoenix has transacted business in Delaware, had meetings, telephone conferences, e-mail, and letter exchanges with anyone in Delaware. Accordingly, Citicorp cannot satisfy even this first requirement to establish personal jurisdiction over Phoenix. *Physician Endorsed LLC v. Clark*, 374 F. Supp. 2d 395, 398 (D. Del. 2005) ("the Court concludes that section 3104(c)(1) of the Delaware Long-Arm statute is inapplicable in these circumstances because Physician Endorsed has offered no evidence that Mr. Clark transacts any business in Delaware or performs any type of work or service in the state.")

Second, Phoenix cannot establish personal jurisdiction over Phoenix that complies with the constitutional requirements. To establish personal jurisdiction that satisfies the constitutional requirements, the party bringing the action has the burden of establishing either (1) general, or (2) specific personal jurisdiction.[9] For the assertion of personal jurisdiction to not violate due process, Citicorp must have "certain minimum contacts

---

[9]     Sections 1-3 and 5-6 of Section 3104(c), the Delaware long-arm statute, correspond to specific jurisdiction while section 4 corresponds to general jurisdiction discussed below. *Monsanto Co. v. Syngenta Seeds, Inc.*, 2006 U.S. Dist. LEXIS 54534 (D. Del. 2006).

with [the forum State] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).  "Under the minimum contacts test, a defendant may be subject to either specific jurisdiction or general jurisdiction."  *LSI Indus. Inc., v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000).  "Two types of jurisdiction are implicated in the minimum contacts analysis, specific jurisdiction and general jurisdiction."  *Tracinda Corp. v. DaimlerChrysler AG (In re DaimlerChrysler AG Sec. Litig.)*, 197 F. Supp. 2d 86, 93 (D. Del. 2002) (internal citations omitted).[10]

Citicorp cannot establish general jurisdiction.  General jurisdiction attaches when a defendant maintains "continuous and systematic" contacts with the forum state even when the cause of action has no relation to those contacts.  "The continuous and systematic business contacts required for the exercise of general jurisdiction are difficult to establish."  *Tracinda*, 197 F. Supp. at 98.  "This is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world."  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).  Phoenix has no business contacts with Delaware, let alone the continuous and systematic business

---

[10]     *See also Provident Nat'l Bank v. California Federal Sav. & Loan Assoc.*, 819 F.2d 434, 437 (3d Cir. 1987) ("Once a jurisdictional defense has been raised, the plaintiff bears the burden of establishing with reasonable particularity sufficient contacts between the defendant and the forum state to support jurisdiction.  *Gehling v. St. George's School of Medicine, Ltd.*, 773 F.2d 539, 542 (3d Cir. 1985).  To meet this burden, the plaintiff must establish either that the particular cause of action sued upon arose from the defendant's activities within the forum state ('specific jurisdiction') or that the defendant has 'continuous and systematic' contacts with the forum state ('general jurisdiction')").

contacts required to establish general jurisdiction.  Libman Decl. ¶¶ 3-4.  Accordingly, Citicorp does not and cannot allege facts sufficient to establish general jurisdiction.

Citicorp also cannot establish specific jurisdiction.  Specific jurisdiction attaches when (1) a non-resident purposefully directs its activities towards forum residents; (2) the action arises out of or results from the defendant's forum contacts; and (3) the forum's exercise of jurisdiction would not be unreasonable.  *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477-478 (1985).  "Specific jurisdiction exists when the defendant has purposefully directed his activities toward the forum, and the litigation arises out of or is related to the defendant's contacts with the forum."  *Tracinda*, 197 F. Supp. 2d at 93 (D. Del. 2002) (internal citations omitted).  Citicorp does not in its Complaint and cannot allege any basis for personal jurisdiction over Phoenix based on specific jurisdiction.  *See* Exh. 4, Complaint; Limbman Decl. ¶¶ 3-4.  Specifically, Citicorp does not and cannot allege that Phoenix purposefully directed its activities toward Delaware and that this declaratory relief action arises out of or is related to Phoenix's contacts with Delaware.

*    *    *

In it Complaint, Citicorp does not even attempt to allege that Phoenix maintains minimum contacts with Delaware sufficient to render it amenable to personal jurisdiction under either a theory of general jurisdiction or specific jurisdiction.  In fact, Phoenix has no contacts with Delaware, let alone the requisite minimum contacts sufficient to establish personal jurisdiction.  Citicorp has therefore failed to establish a prima facie basis for personal jurisdiction over Phoenix and this case should be dismissed as to Phoenix.

24

## VII.    Conclusion.

For the reasons and based upon the authorities cited herein, the Court should dismiss the action.

November 15, 2007

OF COUNSEL:

Gregory Dovel
Sean Luner
Dovel & Luner LLP
201 Santa Monica, Suite 600
Santa Monica, California 90401
(310) 656-7066

THE BAYARD FIRM

/s/ Richard D. Kirk (rk0922)
Richard D. Kirk (rk0922)
222 Delaware Avenue, Suit 900
Wilmington, Delaware 19899-5130
rkirk@bayardfirm.com
(3020) 655-5000
Attorneys for Defendants,
LPL LICENSING, L.L.C. and
PHOENIX LICENSING, L.L.C.

25

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that, on November 15, 2007, he electronically

filed the foregoing document with the Clerk of the Court using CM/ECF, which will send

automatic notification of the filing to the following:

Rodger D. Smith, II
Morris Nichols Arsht & Tunnell LLP
1201 North Market Street
PO Box 1347
Wilmington, DE  19899-1347


The undersigned counsel further certifies that copies of the foregoing document

were sent by email and by hand on November 15, 2007 to the above counsel.


/s/ Richard D. Kirk (rk0922)
Richard D. Kirk