IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CITICORP CREDIT SERVICES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 07-649-JJF (LPS) |
| | ) | |
| LPL LICENSING, LLC,  and | ) | |
| PHOENIX LICENSING, L.L.C., | ) | |
| | ) | |
| Defendants. | | |

**AFFIDAVIT OF SEAN LUNER IN SUPPORT OF
CONSOLIDATED MOTIONS TO DISMISS OF DEFENDANTS
LPL LICENSING, L.L.C. AND PHOENIX LICENSING, L.L.C.**

November 13, 2007

THE BAYARD FIRM

Richard D. Kirk (rk0922)
222 Delaware Avenue, Suit 900
Wilmington, Delaware 19899-5130
rkirk@bayardfirm.com
(3020) 655-5000
Attorneys for Defendants,
LPL LICENSING, L.L.C. and
PHOENIX LICENSING, L.L.C.

OF COUNSEL:

Gregory Dovel
Sean Luner
Dovel & Luner LLP
201 Santa Monica, Suite 600
Santa Monica California 90401
(310) 656-7066

**Declaration of Sean Luner**

I, Sean Luner, declare:

1.      I am a partner at the law firm of Dovel & Luner, LLP.  I submit this declaration in support of Defendants' motion to dismiss.  I have personal knowledge of all matters referred to and if called upon to do so, could and would testify truthfully to them.

2.      Attached to this declaration as <u>Exhibit 1</u> is a true and correct copy of the complaint filed by LPL Licensing, LLC ("LPL") and Phoenix Licensing, LLC ("Phoenix") in the Eastern District of Texas filed on August 31, 2007 (the "Texas Action").  The complaint in the Texas Action alleges patent infringement against twenty two alleged infringers, including six Citi entities:

   (1) Citibank NA,

   (2) Citibank USA,

   (3) Citibank (South Dakota), NA,

   (4) Citimortgage, Inc.,

   (5) Citigroup, Inc., and

   (6) Citi Assurance Services, Inc.

The complaint in the Texas Action alleges infringement of three United States patents: US Patent Nos. 5,987,434, 6,076,072, and 6,999,938 (the "Patents").

3.      Attached to this declaration as <u>Exhibit 2</u> is a true and correct copy of the Amended Complaint in the Texas Action, dated November 9, 2007.  The Amended Complaint in the Texas Action includes as defendants, in addition to the original six Citi entities, Citicorp Credit Services, Inc. ("Citicorp"), the plaintiff in this action.

4.      A State Farm entity, State Farm Mutual Automobile Insurance Company, originally filed an action against LPL and Phoenix back on July 10, 2007 ("State Farm Action").  LPL and Phoenix believe that filing this action was

1

1  inappropriate and filed a motion pending to dismiss this case for lack of subject
2  matter jurisdiction on two grounds.  Attached to this declaration as <u>Exhibit 3</u> is a
3  true and correct copy of the motion to dismiss the First State Farm Action.

4          5.      After LPL and Phoenix filed their original complaint in the
5  Texas Action, related entities of certain defendants in the Texas Action filed four
6  separate actions in three jurisdictions around the country:

7     •  On October 4, 2007, five weeks after LPL and Phoenix filed the Texas
8        Action, State Farm Bank, a defendant in the Texas Action, field a
9        declaratory relief action in the District of Arizona.

10    •  On October 11, 2007, six weeks after LPL and Phoenix filed the Texas
11       Action, Discover Products, Inc., an entity related to the Discover entities
12       in the Texas Action, file a declaratory relief action in the Northern
13       District of Illinois.

14    •  On October 12, 2007, six weeks after LPL and Phoenix filed the Texas
15       Action, United Services Automobile Association, an entity related to the
16       USAA entities in the Texas Action, filed a declaratory relief action in the
17       District of Arizona.

18    •  On October 17, 2007, seven weeks after LPL and Phoenix filed the Texas
19       Action, Citicorp, an entity related to the Citi entities in the Texas Action,
20       filed this declaratory relief action in the District of Delaware.

21         6.      On October 24, 2007, the Citi entities field a motion under 28
22  U.S.C. § 1407 before the Judicial Panel on Multidistrict Litigation to consolidate
23  the Texas Action and the various declaratory relief actions. In their motion, the Citi
24  entities argue that:

25    •      as a result of the various declaratory relief actions, the case should be
26           consolidated;

27    •      the case should be consolidated in a jurisdiction any jurisdiction other
28           than Texas, the jurisdiction of the original Texas Action.

1  Attached as <u>Exhibit 7</u> is a true and correct copy of the Citi entities motion to

2  consolidate.

3         7.    Attached to this declaration as <u>Exhibit 4</u> it a true and correct

4  copy of the complaint in this action filed by Citicorp against LPL and Phoenix

5  dated October 17, 2007.

6         8.    Attached to this declaration as <u>Exhibit 5</u> is a true and correct

7  copy of an e-mail that I sent to Citicorp's counsel, Robert Smith, on October 26,

8  2007.  In this e-mail, I asked Citicorp's attorney's whether they would provide

9  "more information relating to the factual basis for this controversy."  In response

10  to this e-mail, I received a call from Citicorp's Texas counsel.  During the

11  conversation, I asked whether Citicorp would provide any more information

12  regarding the factual basis for its complaint and, specifically, what Citicorp

13  products or services were allegedly infringing the Patents.  Citicorp's lawyer

14  would not provide such information.

15         9.    Attached to this declaration as <u>Exhibit 6</u> is the Citi Parties'

16  Corporate Disclosure Statement filed in connection with their filings before the

17  Judicial Panel on Multidistrict Litigation, identifying various Citi entities and their

18  relationship.

19  

20         I declare under penalty of perjury under the laws of the United States

21  that the foregoing is true and correct.

22  

23  Date: _November 14, 2007_           _Sean Luner_

24                                    Sean Luner

25  

26  

27  

28

# CERTIFICATE OF SERVICE

The undersigned counsel certifies that, on November 15, 2007, he electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will send automatic notification of the filing to the following:

Rodger D. Smith, II
Morris Nichols Arsht & Tunnell LLP
1201 North Market Street
PO Box 1347
Wilmington, DE  19899-1347

The undersigned counsel further certifies that copies of the foregoing document were sent by email and by hand on November 15, 2007 to the above counsel.

/s/ Richard D. Kirk (rk0922)
Richard D. Kirk

675324-1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

FILED-CLERK
U.S. DISTRICT COURT
2007 AUG 31  PM 4: 42
TX EASTERN-MARSHALL

BY_____

PHOENIX LICENSING, L.L.C., an Arizona
Limited Liability Company, and LPL
LICENSING, L.L.C., a Delaware Limited
Liability Company;

             Plaintiffs,

vs.

CHASE MANHATTAN MORTGAGE
CORPORATION, a New Jersey corporation; JP
MORGAN CHASE BANK, N.A., a Delaware
corporation; CITIBANK, N.A., a national bank
association; CITIBANK USA, N. A., a limited
purpose credit card bank; CITIBANK (SOUTH
DAKOTA), N. A., a limited purpose credit card
bank; CITIMORTGAGE, INC., a New York
corporation; CITIGROUP, INC. a Delaware
corporation; CITI ASSURANCE SERVICES,
INC., a Maryland corporation; COUNTRYWIDE
HOME LOANS, INC., a New York corporation;
COUNTRYWIDE INSURANCE SERVICES,
INC., a California corporation; DISCOVER
FINANCIAL SERVICES, INC., a Delaware
corporation; DISCOVER BANK, a Delaware
corporation; GMAC Mortgage, L.L.C. (f/k/a
GMAC Mortgage Corporation), a Delaware
corporation; GMAC INSURANCE
MARKETING, INC., a Missouri corporation;
GMAC BANK, a Utah industrial loan corporation;
LIBERTY LIFE INSURANCE COMPANY, a
South Carolina corporation; RESPONSE
WORLDWIDE INSURANCE COMPANY, an
Ohio corporation; DIRECT RESPONSE
CORPORATION, a Delaware corporation;
WARNER INSURANCE COMPANY, a Illinois
corporation; STATE FARM MUTUAL
AUTOMOBILE INSURANCE COMPANY, a
Illinois corporation; STATE FARM BANK,
F.S.B., a Federal Savings Association; USAA

CASE NO. 2-07 ᴜ V - 387

**Jury Trial Demanded**

1

Federal Savings Bank, a FEDERAL SAVINGS
BANK; USAA SAVINGS BANK, a Nevada
corporation;

               Defendants.

## COMPLAINT FOR PATENT INFRINGEMENT

Phoenix Licensing, L.L.C. ("Phoenix") and LPL Licensing, L.L.C. ("LPL") sue,

Chase Manhattan Mortgage Corporation, JP Morgan Chase Bank, N.A., Citibank, N.A., Citibank

USA, N.A., Citibank (South Dakota), N.A., Citimortgage, Inc., Citigroup, Inc., Citi Assurance

Services, Inc., Countrywide Home Loans, Inc., Countrywide Insurance Services, Inc., Discover

Financial Services, Inc., Discover Bank, GMAC Mortgage, L.L.C. (f/k/a GMAC Mortgage

Corporation), GMAC Insurance Marketing, Inc., GMAC Bank, Liberty Life Insurance Company,

Response Worldwide Insurance Company, Direct Response Corporation, Warner Insurance

Company, State Farm Mutual Automobile Insurance Company, State Farm Bank, F.S.B., USAA

Federal Savings Bank, and USAA Savings Bank (collectively "Defendants") and, on information

and belief, allege as follows:

### Introduction

1.      Plaintiff Phoenix owns the invention described and claimed in United

States Patent Nos.

      (a) 5,987,434 entitled "Apparatus and Method for Transacting Marketing and

          Sales of Financial Products" (the "'434 patent");

      (b) 6,076,072 entitled "Method and Apparatus For Preparing Client

          Communications Involving Financial Products and Services" (the "'072

patent"); and

    (c) 6,999,938 entitled "Automated Reply Generation Direct Marketing System" (the "'938 patent");

(collectively the "Patents"). Pursuant to a license agreement dated December 1, 2006, Plaintiff LPL is the exclusive licensee of the Patents. Defendants (a) have used, and continue to use, Plaintiff Phoenix's patented technology in products and services that they make, use, import, sell, and offer to sell, without Plaintiffs' permission; and (b) have contributed to or induced, and continue to contribute to or induce, others to infringe the Patents. Plaintiffs seek damages for patent infringement and an injunction preventing Defendants from making, using, selling, or offering to sell, and from contributing to and inducing others to make, use, sell, or offer to sell, the technology claimed by the Patent without Plaintiffs' permission.

## Jurisdiction and Venue

2. This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 271 and 281, *et seq.* The Court has original jurisdiction over this patent infringement action under 28 U.S.C. § 1338(a).

3. Within this judicial district each of the Defendants has committed acts and continues to commit acts that give rise to this action, including making sales of infringing products and offering for sale infringing products. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and § 1400.

## Plaintiffs Phoenix and LPL

4. Phoenix Licensing, L.C.C. is an Arizona limited liability company having a principal place of business in Scottsdale, Arizona.

5. LPL Licensing, L.L.C. is a Delaware limited liability company having a principal place of business in Scottsdale, Arizona.

### Defendants

#### *Chase*

6.      Upon information and belief, Chase Manhattan Mortgage Corporation is a New Jersey corporation having its principal place of business in Edison, New Jersey ("Chase Manhattan").

7.      Upon information and belief, JP Morgan Chase Bank, N. A., is a Delaware corporation having its principal place of business in New York, New York ("JP Morgan Chase").

#### *Citibank*

8.      Upon information and belief, Citibank N A. is a national bank association having its principal place of business in New York, New York ("Citibank NA").

9.      Upon information and belief, Citibank USA, National Association (Citibank USA) is a national bank association having its principal place of business in Sioux Falls, South Dakota ("Citibank").

10.     Upon information and belief, Citibank (South Dakota), N A., is a national bank association having its principal place of business in Sioux Falls, South Dakota ("Citibank SD").

11.     Upon information and belief, Citimortgage, Inc. is a New York corporation having its principal place of business in St. Louis, Missouri ("Citimortgage")

12.     Upon information and belief, Citigroup, Inc. is a Delaware corporation having its principal place of business in New York, New York ("Citigroup")

13.     Upon information and belief, Citi Assurance Services, Inc , is a Maryland corporation having its principal place of business in Fort Worth, Texas ("Citi Assurance").

4

*Countrywide*

14.     Upon information and belief, Countrywide Home Loans, Inc. is a New York corporation having its principal place of business in Calabasas, California ("Countrywide").

15.     Upon information and belief, Countrywide Insurance Services, Inc. is a California corporation having its principal place of business in Calabasas, California ("Countrywide Insurance")

*Discover*

16.     Upon information and belief, Discover Financial Services, Inc. is a Delaware corporation having its principal place of business in Riverwoods, Illinois ("Discover").

17.     Upon information and belief, Discover Bank is a Delaware corporation having its principal place of business in New Castle, Delaware ("Discover Bank")

*GMAC*

18.     Upon information and belief, GMAC Mortgage, L.L.C. is a Delaware limited liability corporation having its principal place of business in Horsham, Pennsylvania ("GMAC Mortgage").

19.     Upon information and belief, GMAC Insurance Marketing, Inc. is a Missouri corporation having its principal place of business in Maryland Heights, Missouri ("GMAC Insurance").

20.     Upon information and belief, GMAC Bank is a Utah industrial loan corporation having its principal place of business in Horsham, Pennsylvania ("GMAC Bank ").

*Liberty Life*

21.    Upon information and belief, Liberty Life Insurance Company is a South Carolina corporation doing business as RBC Insurance Company having its principal place of business in Greenville, South Carolina ("Liberty Life")

*Response Worldwide*

22    Upon information and belief, Response Worldwide Insurance Company is an Ohio corporation having its principal place of business in Meriden, Connecticut ("Response Worldwide")

23.    Upon information and belief, Direct Response Corporation, doing business as Response Group, is a Delaware corporation having its principal place of business in 500 Meriden, Connecticut ("Direct Response").

24.    Upon information and belief, Warner Insurance Company is an Illinois corporation having its principal place of business in Meriden, Connecticut ("Warner")

*State Farm*

25.    Upon information and belief, State Farm Mutual Automobile Insurance Company is an Illinois corporation having its principal place of business in Bloomington, Illinois ("State Farm")

26.    Upon information and belief, State Farm Bank, F.S.B, is a federal savings association chartered under the Home Owner's Loan Act (12 U.S.C. § 1461 et seq.), having its principal place of business in Bloomington, Illinois ("State Farm Bank").

*USAA Bank*

27.    Upon information and belief, USAA Federal Savings Bank is a federal savings bank having its principal place of business in San Antonio, Texas ("USAA Bank").

28.    Upon information and belief, USAA Savings Bank is a Nevada
corporation having its principal place of business in Las Vegas, Nevada ("USAA Savings").

## First Claim for Patent Infringement
### (infringement of the '434 patent)

29.    Plaintiffs incorporate by reference each of the allegations in paragraphs 1
through 28 above and further allege as follows:

30.    The United States Patent and Trademark Office issued the '434 patent on
November 16, 1999  Attached as Exhibit A is what is believed to be a copy of the text of the
'434 patent.  Through assignment, Plaintiff Phoenix is the owner of all right, title, and interest in
the '434 patent, including all rights to pursue and collect damages for past infringements of the
patent

31.    Defendants Chase Manhattan, Citibank, Citibank SD, Citimortgage,
Discover, Discover Bank, GMAC Mortgage, Liberty Life, Response Worldwide, Direct
Response, Warner, State Farm, State Farm Bank, USAA Bank, and USAA Savings, have
infringed, contributed to the infringement, and induced others to infringe the '434 patent and,
unless enjoined, will continue to do so, by manufacturing, importing, using, selling, or offering
for sale products and services that infringe the claims of the '434 patent and by contributing to or
inducing others to infringe the claims of the '434 patent without a license or permission from
Plaintiffs.

32.    Plaintiffs have been damaged by Defendants' infringement of the '434
patent and will suffer additional irreparable damage and impairment of the value of its patent
rights unless Defendants are enjoined from continuing to infringe the '434 patent.

7

33      The Defendants are and have been willfully infringing one or more claims of the '434 patent.

34.     Plaintiffs are entitled to recover damages from the Defendants to compensate them for the infringement.

## Second Claim for Patent Infringement
### (infringement of the '072 patent)

35.     Plaintiffs incorporate by reference each of the allegations in paragraphs 1 through 28 above and further allege as follows:

36      The United States Patent and Trademark Office issued the '072 patent on June 13, 2000. Attached as Exhibit B is what is believed to be a copy of the text of the '072 patent  Through assignment, Plaintiff Phoenix the owner of all right, title, and interest in the '072 patent, including all rights to pursue and collect damages for past infringements of the patent.

37.     Defendants Chase Manhattan, Citimortgage, Citigroup, Countrywide, Discover, Discover Bank, GMAC Mortgage, and Liberty Life have infringed, contributed to the infringement, and induced others to infringe the '072 patent and, unless enjoined, will continue to do so, by manufacturing, importing, using, selling, or offering for sale products and services that infringe the claims of the '072 patent and by contributing to or inducing others to infringe the claims of the '072 patent without a license or permission from Plaintiffs.

38.     Plaintiff has been damaged by Defendants' infringement of the '072 patent and will suffer additional irreparable damage and impairment of the value of its patent rights unless Defendants are enjoined from continuing to infringe the '072 patent.

39.     The Defendants are and have been willfully infringing one or more claims of the '072 patent.

40.     Plaintiffs are entitled to recover damages from the Defendants to compensate them for the infringement.

### Third Claim for Patent Infringement
### (infringement of the '938 patent)

41.     Plaintiffs incorporate by reference each of the allegations in paragraphs 1 through 28 above and further alleges as follows:

42.     The United States Patent and Trademark Office issued the '938 patent on February 14, 2006. Attached as Exhibit C is what is believed to be a copy of the text of the '938 patent. Through assignment, Plaintiff Phoenix is the owner of all right, title, and interest in the '938 patent, including all rights to pursue and collect damages for past infringements of the patent

43.     Defendants JP Morgan Chase, Citibank NA, Citibank SD, Citimortgage, Citi Assurance, Countrywide Insurance, Discover, Discover Bank, GMAC Insurance, GMAC Bank, GMAC Mortgage, Liberty Life, Response Worldwide, Direct Response, Warner State Farm, State Farm Bank, USAA Bank, and USAA Savings have infringed, contributed to the infringement, and induced others to infringe the '938 patent and, unless enjoined, will continue to do so, by manufacturing, importing, using, selling, or offering for sale products and services that infringe the claims of the '938 patent and by contributing to or inducing others to infringe the claims of the '938 patent without a license or permission from Plaintiffs.

44.    Plaintiffs have been damaged by Defendants' infringement of the '938 patent and will suffer additional irreparable damage and impairment of the value of its patent rights unless Defendants are enjoined from continuing to infringe the '938 patent.

45.    The Defendants are and have been willfully infringing one or more claims of the '072 patent.

46.    Plaintiffs are entitled to recover damages from the Defendants to compensate them for the infringement.

47.    Plaintiffs demand trial by jury of all issues relating to this claim

WHEREFORE, Plaintiffs prays for judgment as follows:

A.    A decree preliminarily and permanently enjoining Defendants, their officers, directors, employees, agents, and all persons in active concert with them, from infringing, and contributing to or inducing others to infringe, the '434, '072, and '938 Patents;

B.    Compensatory damages for Defendants' infringement of the '434, '072, and '938 Patents;

C.    Treble the compensatory damages as consequence of Defendants' willful infringement;

D.    Costs of suit and attorneys' fees on the basis that this patent infringement case is exceptional;

E.    Pre-judgment interest; and

F.    For such other relief as justice requires.

10

Dated:  August 31, 2007

Respectfully submitted,


By: _____

     Gregory S. Dovel
     CA State Bar No  135387
     E-mail: greg@dovellaw.com
     Sean A  Luner
     CA State Bar No  165443
     E-mail: sean@dovellaw.com
     Dovel & Luner, LLP
     201 Santa Monica Blvd., Suite 600
     Santa Monica, CA 90401
     Telephone: (310) 656-7066
     Facsimile: (310) 657-7069


     ATTORNEYS FOR PLAINTIFFS
     PHOENIX LICENSING, L C C , and
     LPL LICENSING, L L C

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

|  |  |
|---|---|
| PHOENIX LICENSING, L.L.C., an Arizona Limited Liability Company, and LPL LICENSING, L.L.C., a Delaware Limited Liability Company; | CASE NO. 2:07-cv-387 (TJW/CE) |
| Plaintiffs, | **Jury Trial Demanded** |
| vs. | |
| CHASE MANHATTAN MORTGAGE CORPORATION, a New Jersey corporation; JP MORGAN CHASE BANK, N.A., a Delaware corporation; CITIBANK., N.A., a national bank association; CITIBANK USA, N. A., a limited purpose credit card bank; CITIBANK (SOUTH DAKOTA), N. A., a limited purpose credit card bank; CITIMORTGAGE, INC., a New York corporation; CITIGROUP, INC. a Delaware corporation; CITI ASSURANCE SERVICES, INC., a Maryland corporation; CITICORP CREDIT SERVICES, INC., a Delaware corporation, COUNTRYWIDE HOME LOANS, INC., a New York corporation; COUNTRYWIDE INSURANCE SERVICES, INC., a California corporation; DISCOVER FINANCIAL SERVICES,, a Delaware corporation; DISCOVER BANK, a Delaware corporation; DFS SERVICES L.L.C., a Delaware corporation; DISCOVER PRODUCTS, INC, a Utah corporation; GMAC Mortgage, L.L.C. (f/k/a GMAC Mortgage Corporation), a Delaware corporation; GMAC INSURANCE MARKETING, INC., a Missouri corporation; GMAC BANK, a Utah industrial loan corporation; LIBERTY LIFE INSURANCE COMPANY, a South Carolina corporation; RESPONSE WORLDWIDE INSURANCE COMPANY, an Ohio corporation; DIRECT RESPONSE CORPORATION, a Delaware corporation; WARNER INSURANCE COMPANY, a Illinois corporation; STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a Illinois corporation; STATE | |

1

FARM BANK, F.S.B., a Federal Savings
Association; USAA Federal Savings Bank, a
FEDERAL SAVINGS BANK; USAA SAVINGS
BANK, a Nevada corporation; UNITED
SERVICES AUTOMOBILE ASSOCIATION, a
reciprocal inter insurance exchange.

                Defendants.

## FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT

Phoenix Licensing, L.L.C. ("Phoenix") and LPL Licensing, L.L.C. ("LPL") sue

Chase Manhattan Mortgage Corporation, JP Morgan Chase Bank, N.A., Citibank, N.A., Citibank

USA, N.A., Citibank (South Dakota), N. A., Citimortgage, Inc., Citigroup, Inc., Citi Assurance

Services, Inc., Citicorp Credit Services, Inc., Countrywide Home Loans, Inc., Countrywide

Insurance Services, Inc., Discover Financial Services, Discover Bank, DFS Services, L.L.C.,

Discover Products, Inc., GMAC Mortgage, L.L.C. (f/k/a GMAC Mortgage Corporation), GMAC

Insurance Marketing, Inc., GMAC Bank, Liberty Life Insurance Company, Response Worldwide

Insurance Company, Direct Response Corporation, Warner Insurance Company, State Farm

Mutual Automobile Insurance Company, State Farm Bank, F.S.B., USAA Federal Savings Bank,

USAA Savings Bank, and United Services Automobile Association  (collectively "Defendants")

and, on information and belief, allege as follows:

### Introduction

1.      Plaintiff Phoenix owns the invention described and claimed in United

States Patent Nos.:

      (a) 5,987,434 entitled "Apparatus and Method for Transacting Marketing and

          Sales of Financial Products" (the "'434 patent");

      (b) 6,076,072 entitled "Method and Apparatus For Preparing Client

          Communications Involving Financial Products and Services" (the "'072

2

patent"); and

      (c)  6,999,938 entitled "Automated Reply Generation Direct Marketing System"
(the "'938 patent");

(collectively the "Patents").  Pursuant to a license agreement dated December 1, 2006, Plaintiff
LPL is the exclusive licensee of the Patents.  Defendants (a) have used, and continue to use,
Plaintiff Phoenix's patented technology in products and services that they make, use, import,
sell, and offer to sell, without Plaintiffs' permission; and (b) have contributed to or induced, and
continue to contribute to or induce, others to infringe the Patents.  Plaintiffs seek damages for
patent infringement and an injunction preventing Defendants from making, using, selling, or
offering to sell, and from contributing to and inducing others to make, use, sell, or offer to sell,
the technology claimed by the Patent without Plaintiffs' permission.

### Jurisdiction and Venue

      2.     This is an action for patent infringement arising under the patent laws of
the United States, 35 U.S.C. §§ 271 and 281, *et seq.*  The Court has original jurisdiction over this
patent infringement action under 28 U.S.C. § 1338(a).

      3.     Within this judicial district each of the Defendants has committed acts and
continues to commit acts that give rise to this action, including making sales of infringing
products and offering for sale infringing products.  Venue is proper in this district pursuant to 28
U.S.C. § 1391(b) and § 1400.

### Plaintiffs Phoenix and LPL

      4.     Phoenix Licensing, L.L.C. is an Arizona limited liability company having
a principal place of business in Scottsdale, Arizona.

      5.     LPL Licensing, L.L.C. is a Delaware limited liability company having a
principal place of business in Scottsdale, Arizona.

**Defendants**

*Chase*

6.      Upon information and belief, Chase Manhattan Mortgage Corporation is a New Jersey corporation having its principal place of business in Edison, New Jersey ("Chase Manhattan").

7.      Upon information and belief, JP Morgan Chase Bank, N. A., is a Delaware corporation having its principal place of business in New York, New York ("JP Morgan Chase").

*Citibank*

8.      Upon information and belief, Citibank N.A. is a national bank association having its principal place of business in New York, New York ("Citibank NA").

9.      Upon information and belief, Citibank USA, National Association (Citibank USA) is a national bank association having its principal place of business in Sioux Falls, South Dakota ("Citibank").

10.      Upon information and belief, Citibank (South Dakota), N.A., is a national bank association having its principal place of business in Sioux Falls, South Dakota ("Citibank SD").

11.      Upon information and belief, Citimortgage, Inc. is a New York corporation having its principal place of business in St. Louis, Missouri ("Citimortgage").

12.      Upon information and belief, Citigroup, Inc. is a Delaware corporation having its principal place of business in New York, New York ("Citigroup").

13.      Upon information and belief, Citi Assurance Services, Inc., is a Maryland corporation having its principal place of business in Fort Worth, Texas ("Citi Assurance").

14.      Upon information and belief, Citicorp Credit Services, Inc. is a Delaware

4

corporation having its principal place of business in Long Island City, New York ("Citicorp").

On October 17, 2007 Citicorp filed a complaint for Declaratory Judgment, alleging that the three

Patents are invalid and that Citicorp does not infringe any valid claims of the Patents (the

"Citicorp Complaint").  In the Citicorp Complaint, the only basis that Citicorp provides to

support its declaratory relief claims are the allegations in the present case:

> "On August 31, 2007, [Phoenix and LPL] filed Case No. 2-07cv-387 in the
>
> United States District Court fro the Eastern District of Texas, Marshall Division,
>
> accusing 22 companies in the financial products and services industry, including
>
> certain affiliates of [Citicorp] of patent infringement with respect to the patents-
>
> in-suit.  In light of those allegations, [Citicorp] believes that a controversy also
>
> exists between it and [Phoenix and LPL] over whether [Citicorp's] business
>
> practices have infringed, and are continuing to infringe, the patents-in-suit and
>
> whether the patents-in-suit are valid.  This controversy is continuing and ongoing,
>
> and is ripe for resolution by the Court."

Citicorp Complaint at 10-11.  Plaintiffs have requested additional information from Citicorp but

Citicorp has refused to provide any additional information regarding the bases for its claims.

Accordingly, Plaintiffs' allegations against Citicorp in this Amended Compliant are solely based

on the Citicorp Complaint.

### Countrywide

15.     Upon information and belief, Countrywide Home Loans, Inc. is a New

York corporation having its principal place of business in Calabasas, California

("Countrywide").

5

16.     Upon information and belief, Countrywide Insurance Services, Inc. is a California corporation having its principal place of business in Calabasas, California ("Countrywide Insurance").

*Discover*

17.     Upon information and belief, Discover Financial Services is a Delaware corporation having its principal place of business in Riverwoods, Illinois ("Discover").

18.     Upon information and belief, Discover Bank is a Delaware corporation having its principal place of business in New Castle, Delaware ("Discover Bank").

19.     Upon information and belief, DFS Services L.L.C., (the successor in interest to Discover Financial Services, Inc.) is a Delaware corporation having its principal place of business in Riverwoods, Illinois ("DFS").

20.     Upon information and belief, Discover Products, Inc. ("Discover Products") is a wholly owned subsidiary of Discover Bank, and is a Utah corporation with its principal place of business in Riverwoods, Illinois.  On October 11, 2007 Discover Products filed a complaint for Declaratory Judgment, alleging that the three Patents are invalid and that Discover Products does not infringe any valid claims of the Patent ("Discover Products Complaint").  Plaintiff's allegations against Discover Products in this Amended Compliant are solely based on the Discover Products Complaint.

*GMAC*

21.     Upon information and belief, GMAC Mortgage, L.L.C. is a Delaware limited liability corporation having its principal place of business in Horsham, Pennsylvania ("GMAC Mortgage").

6

22. Upon information and belief, GMAC Insurance Marketing, Inc. is a Missouri corporation having its principal place of business in Maryland Heights, Missouri ("GMAC Insurance").

23. Upon information and belief, GMAC Bank is a Utah industrial loan corporation having its principal place of business in Horsham, Pennsylvania ("GMAC Bank.").

### Liberty Life

24. Upon information and belief, Liberty Life Insurance Company is a South Carolina corporation doing business as RBC Insurance Company having its principal place of business in Greenville, South Carolina ("Liberty Life").

### Response Worldwide

25. Upon information and belief, Response Worldwide Insurance Company is an Ohio corporation having its principal place of business in Meriden, Connecticut ("Response Worldwide").

26. Upon information and belief, Direct Response Corporation, doing business as Response Group, is a Delaware corporation having its principal place of business in 500 Meriden, Connecticut ("Direct Response").

27. Upon information and belief, Warner Insurance Company is an Illinois corporation having its principal place of business in Meriden, Connecticut ("Warner").

### State Farm

28. Upon information and belief, State Farm Mutual Automobile Insurance Company is an Illinois corporation having its principal place of business in Bloomington, Illinois ("State Farm").

29.     Upon information and belief, State Farm Bank, F.S.B, is a federal savings association chartered under the Home Owner's Loan Act (12 U.S.C. § 1461 et seq.), having its principal place of business in Bloomington, Illinois ("State Farm Bank").

*USAA Bank*

30.     Upon information and belief, USAA Federal Savings Bank is a federal savings bank having its principal place of business in San Antonio, Texas ("USAA Bank").

31.     Upon information and belief, USAA Savings Bank is a Nevada corporation having its principal place of business in Las Vegas, Nevada ("USAA Savings").

32.     Upon information and belief, USAA is a reciprocal inter insurance exchange organized and existing under the laws of Texas with its principal place of business in San Antonio, Texas ("USAA").  On October 17, 2007 USAA filed a complaint for Declaratory Judgment, alleging that the three Patents are invalid and that USAA does not infringe any valid claims of the Patent ("USAA Complaint").  Plaintiff's allegations against USAA in this Amended Compliant are solely based on the USAA Complaint.

**First Claim for Patent Infringement
(infringement of the '434 patent)**

33.     Plaintiffs incorporate by reference each of the allegations in paragraphs 1 through 28 above and further allege as follows:

34.     The United States Patent and Trademark Office issued the '434 patent on November 16, 1999.  Attached as Exhibit A is what is believed to be a copy of the text of the '434 patent.  Through assignment, Plaintiff Phoenix is the owner of all right, title, and interest in the '434 patent, including all rights to pursue and collect damages for past infringements of the patent.

8

35.     Defendants Chase Manhattan, Citibank, Citibank SD, Citimortgage, Citicorp, Discover, Discover Bank, Discover Products, DFS, GMAC Mortgage, Liberty Life, Response Worldwide, Direct Response, Warner, State Farm, State Farm Bank, USAA Bank, USAA Savings, and USAA have infringed, contributed to the infringement, and induced others to infringe the '434 patent and, unless enjoined, will continue to do so, by manufacturing, importing, using, selling, or offering for sale products and services that infringe the claims of the '434 patent and by contributing to or inducing others to infringe the claims of the '434 patent without a license or permission from Plaintiffs.

36.     Plaintiffs have been damaged by Defendants' infringement of the '434 patent and will suffer additional irreparable damage and impairment of the value of its patent rights unless Defendants are enjoined from continuing to infringe the '434 patent.

37.     The Defendants are and have been willfully infringing one or more claims of the '434 patent.

38.     Plaintiffs are entitled to recover damages from the Defendants to compensate them for the infringement.

### Second Claim for Patent Infringement
### (infringement of the '072 patent)

39.     Plaintiffs incorporate by reference each of the allegations in paragraphs 1 through 28 above and further allege as follows:

40.     The United States Patent and Trademark Office issued the '072 patent on June 13, 2000.  Attached as Exhibit B is what is believed to be a copy of the text of the '072 patent.  Through assignment, Plaintiff Phoenix the owner of all right, title, and interest in the

'072 patent, including all rights to pursue and collect damages for past infringements of the patent.

41.     Defendants Chase Manhattan, Citimortgage, Citigroup, Citicorp, Countrywide, Discover, Discover Bank, Discover Products, DFS, GMAC Mortgage, Liberty Life, and USAA have infringed, contributed to the infringement, and induced others to infringe the '072 patent and, unless enjoined, will continue to do so, by manufacturing, importing, using, selling, or offering for sale products and services that infringe the claims of the '072 patent and by contributing to or inducing others to infringe the claims of the '072 patent without a license or permission from Plaintiffs.

42.     Plaintiff has been damaged by Defendants' infringement of the '072 patent and will suffer additional irreparable damage and impairment of the value of its patent rights unless Defendants are enjoined from continuing to infringe the '072 patent.

43.     The Defendants are and have been willfully infringing one or more claims of the '072 patent.

44.     Plaintiffs are entitled to recover damages from the Defendants to compensate them for the infringement.

## Third Claim for Patent Infringement
### (infringement of the '938 patent)

45.     Plaintiffs incorporate by reference each of the allegations in paragraphs 1 through 28 above and further alleges as follows:

46.     The United States Patent and Trademark Office issued the '938 patent on February 14, 2006.  Attached as Exhibit C is what is believed to be a copy of the text of the '938 patent.  Through assignment, Plaintiff Phoenix is the owner of all right, title, and interest in the

10

'938 patent, including all rights to pursue and collect damages for past infringements of the patent.

47.     Defendants JP Morgan Chase, Citibank NA, Citibank SD, Citimortgage, Citi Assurance, Citicorp, Countrywide Insurance, Discover, Discover Bank, Discover Products, DFS, GMAC Insurance, GMAC Bank, GMAC Mortgage, Liberty Life, Response Worldwide, Direct Response, Warner, State Farm, State Farm Bank, USAA Bank, USAA Savings, and USAA have infringed, contributed to the infringement, and induced others to infringe the '938 patent and, unless enjoined, will continue to do so, by manufacturing, importing, using, selling, or offering for sale products and services that infringe the claims of the '938 patent and by contributing to or inducing others to infringe the claims of the '938 patent without a license or permission from Plaintiffs.

48.     Plaintiffs have been damaged by Defendants' infringement of the '938 patent and will suffer additional irreparable damage and impairment of the value of its patent rights unless Defendants are enjoined from continuing to infringe the '938 patent.

49.     The Defendants are and have been willfully infringing one or more claims of the '938 patent.

50.     Plaintiffs are entitled to recover damages from the Defendants to compensate them for the infringement.

51.     Plaintiffs demand trial by jury of all issues relating to all claims.

WHEREFORE, Plaintiffs prays for judgment as follows:

    A.     A decree preliminarily and permanently enjoining Defendants, their officers, directors, employees, agents, and all persons in active concert with them, from infringing, and contributing to or inducing others to infringe, the '434, '072, and '938 Patents;

    B.     Compensatory damages for Defendants' infringement of the '434, '072, and '938 Patents;

    C.     Treble the compensatory damages as consequence of Defendants' willful infringement;

    D.     Costs of suit and attorneys' fees on the basis that this patent infringement case is exceptional;

    E.     Pre-judgment interest; and

    F.     For such other relief as justice requires.

| | |
|---|---|
| Date: November 9, 2007 | Respectfully Submitted,<br><br>/s/ Elizabeth L. DeRieux<br>S. Calvin Capshaw<br>State Bar No. 03783900<br>Elizabeth L. DeRieux<br>State Bar No. 05770585<br>Brown McCarroll LLP<br>1127 Judson Road, Suite 220<br>P.O. Box 3999<br>Longview, Texas 75601-5157<br>Telephone: (903) 236-9800<br>Facsimile: (903) 236-8787<br>E-mail: ccapshaw@mailbmc.com<br>E-mail: ederieux@mailbmc.com<br><br>Charles Ainsworth<br>State Bar No. 00783521<br>Robert Christopher Bunt<br>State Bar No. 00787165<br>Robert M. Parker<br>State Bar No. 15498000<br>Parker, Bunt & Ainsworth<br>100 E. Ferguson, Suite 1114<br>Tyler, Texas 75702<br>Telephone: (903) 531-3535<br>Facsimile: (903) 533-9687<br>E-mail: charley@pbatyler.com<br>E-mail: rcbunt@pbatyler.com<br>E-mail: rmparker@pbatyler.com |

|  | Gregory Scott Dovel |
|  | CA State Bar No. 135387 |
|  | Sean A. Luner |
|  | CA State Bar No. 165443 |
|  | Dovel & Luner, LLP |
|  | 201 Santa Monica Blvd., Suite 600 |
|  | Santa Monica, CA 90401 |
|  | Telephone: (310) 656-7066 |
|  | Facsimile: (310) 656-7069 |
|  | E-mail: greg@dovellaw.com |
|  | E-mail: sean@dovellaw.com |
|  |  |
|  | ATTORNEYS FOR PLAINTIFFS |
|  | PHOENIX LICENSING, L.L.C. and |
|  | LPL LICENSING, L.L.C. |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served this 9th day of November, 2007, with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).  Any other counsel of record will be served by electronic mail, facsimile transmission and/or first class mail on this same date.

/s/ Elizabeth L. DeRieux___
Elizabeth L. DeRieux

14

1  Mark Deatherage (010208)
2  mmd@gknet.com
   GALLAGHER & KENNEDY, P.A.
3  2575 East Camelback Road
   Phoenix, Arizona  85016-9225
4  (602) 530-8000
5  (602) 530-8500 fax
   Attorneys for Defendants
6

7            IN THE UNITED STATES DISTRICT COURT

8            FOR THE DISTRICT OF ARIZONA

9   State Farm Mutual Automobile Insurance
    Company,                                      No. CV07-1329 PHX-MHM
10
                      Plaintiff,                  **Motion to Dismiss for Lack of Subject**
11                                                **Matter Jurisdiction**
              vs.
12
    LPL Licensing, L.L.C.; and Phoenix
13  Licensing, L.L.C.,

14                    Defendants.

15

16          Defendants LPL Licensing, LLC ("LPL") and Phoenix Licensing LLC

17  ("Phoenix") hereby move to dismiss this action under Rule 12(b)(1) for lack of subject

18  matter jurisdiction.  This motion is based on the following memorandum of points and

19  authorities and the accompanying declarations and exhibits.

20          **Memorandum of Points and Authorities.**

21  **I.       Introduction.**

22          This is a declaratory judgment action brought against the exclusive

23  licensor of three patents (Defendant LPL Licensing, LLC) and the owner of the patents

24  (Defendant Phoenix Licensing, LLC) by plaintiff State Farm Mutual Automobile

25  Insurance Company ("State Farm Mutual").  Defendants now move to dismiss for lack

26  of subject matter jurisdiction on two grounds.

27          *First ground*: The exercise of declaratory judgment subject matter

28  jurisdiction is discretionary.  *MedImmune, Inc. v. Genentech, Inc.*, 127 S. Ct. 764, 776

GALLAGHER & KENNEDY, P.A.
2575 EAST CAMELBACK ROAD
PHOENIX, ARIZONA 85016-9225
(602) 530-8000

1 (2007) (the Declaratory Judgment Act grants a district court "unique and substantial

2 discretion" in deciding whether to exercise subject matter jurisdiction) (quoting *Wilton*

3 *v. Seven Falls Co*., 515 U.S. 277, 286 (1995)).  In determining whether to exercise

4 jurisdiction, district courts consider how closely the action fits with the core purposes of

5 the declaratory judgment act, as well as matters of practical judicial administration.

6          When a patent holder defers filing suit because an accused infringer

7 asserts that it wants to engage in settlement discussions rather than litigation, and then

8 the infringer files a declaratory judgment action to preempt the patentee's choice of

9 forum, such an action is far from the core purposes of declaratory judgment jurisdiction.

10 *EMC Corp. v. Norand Corp*., 89 F.3d 807, 814 (Fed. Cir. 1996).  In such a case, "it

11 would be inappropriate to reward -- and indeed abet -- conduct which is inconsistent

12 with the sound policy of promoting extrajudicial dispute resolution."  *EMC*, 89 F.3d at

13 814 (internal quotes omitted).  That is exactly the situation here.

14          State Farm Mutual expressly represented to LPL, in writing, that it "will

15 continue to be State Farm's intent to discuss this matter and LPL's allegations in good

16 faith."  Exh. 8.  Then, State Farm Mutual strung LPL along.  Tache decl. (exh. 14) ¶¶ 6-

17 23; Exhs. 2-11.  In response to LPL's most recent licensing offer, on June 25, 2007,

18 State Farm Mutual's lawyer wrote that "the State Farm decision makers . . .  are away

19 from the office on vacation . . . . and I have every expectation that we will get to an

20 answer very quickly when we are all at work."  Exh. 11.  Two weeks later, without

21 warning, State Farm Mutual filed this declaratory judgment action to preempt LPL's

22 choice of forum.

23          Moreover, now apprised of State Farm Mutual's hostile intentions, LPL

24 and Phoenix filed a patent infringement action on August 31, 2007 against State Farm

25 Mutual in the Eastern District of Texas.  Exh. 12.  The action has been assigned to the

26 Hon. T. John Ward, and is styled Phoenix Licensing, LLC et al. v. Chase Manhattan

27 Mortgage Corp. et al., No. 2:07-cv-00387-TJW-CE (E.D. Tex.).  *Id*.  In that same

28 action, LPL and Phoenix also sued 23 other infringers.  Two of the defendants in the

2

Texas litigation have their principal places of business in Texas, and 19 are based in cities closer to Texas than Arizona (even State Farm Mutual's lawyers are based in Texas). Exh. 12 ¶¶ 6-28. The center of gravity of these patent infringement cases resides with Judge Ward in the Eastern District of Texas. To avoid duplication of effort and the risk of inconsistent verdicts, the Eastern District of Texas should handle all the patent infringement disputes among all the parties.

*Second ground*: In addition, as to one of the three patents in this case, patent No. 6,076,072 (the "'072 patent"), this Court has no jurisdiction because there is no actual controversy. Neither LPL nor Phoenix asserted that State Farm Mutual infringed that patent and, even today, they are not aware of any conduct by State Farm Mutual that infringes that patent. Libman decl. (exh. 13) ¶ 12. Accordingly, there is no actual controversy and no subject matter jurisdiction as to the '072 patent.

## II.    State Farm Mutual bears the burden of proving jurisdiction with evidence.

Two important principles guide this Court's review of this motion.

First, the burden of proving subject matter jurisdiction rests solely on State Farm Mutual. "The burden of establishing jurisdiction in the district court lies with the party seeking to invoke the court's jurisdiction." *Cedars-Sinai Medical Ctr. v. Watkins*, 11 F.3d 1573, 1584 (Fed. Cir. 1993).

Second, to meet its burden, State Farm Mutual may not rest on the allegations in the complaint. "If the Rule 12(b)(1) motion denies or controverts the pleader's allegations of jurisdiction, however, the movant is deemed to be challenging the factual basis for the court's subject matter jurisdiction. In such a case, the allegations in the complaint are not controlling, and only uncontroverted factual allegations are accepted as true for purposes of the motion. All other facts underlying the controverted jurisdictional allegations are in dispute and are subject to factfinding by the district court." *Cedars-Sinai*, 11 F.3d at 1584 (internal citations omitted); *Jervis B. Webb Co. v. Southern Systems, Inc.*, 742 F.2d 1388, 1399 (Fed. Cir. 1984) ("where, as

1   here, the declaratory defendant (patentee) has denied the factual allegations that

2   allegedly support the existence of case or controversy, the declaratory plaintiff must

3   prove the existence of facts underlying such allegations"); *Bridgelux, Inc. v. Cree, Inc*.,

4   2007 U.S. Dist. LEXIS 14472, *10 (N.D. Cal. 2007).

5          State Farm Mutual cannot meet that burden here.

6   **III.    The Court should decline to exercise discretionary jurisdiction in this case.**

7          "The Declaratory Judgment Act states that courts 'may' grant relief; it

8   does not require courts to grant relief."  *Sony Elecs., Inc. v. Guardian Media Techs.,*

9   *Ltd.*, 2007 U.S. App. LEXIS 18465 (Fed. Cir. Aug. 7, 2007).  "This text has long been

10  understood 'to confer on federal courts unique and substantial discretion in deciding

11  whether to declare the rights of litigants.'"  *MedImmune, Inc. v. Genentech, Inc.*, 127 S.

12  Ct. 764, 776 (2007) (emphasis added) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277,

13  286 (1995)).

14          "[T]he [Supreme] Court explained that 'the statute's textual commitment

15  to discretion, and the breadth of leeway we have always understood it to suggest,

16  distinguish the declaratory judgment context from other areas of the law.'"  *EMC Corp.*

17  *v. Norand Corp.*, 89 F.3d 807, 813 (Fed. Cir. 1996) (quoting *Wilton v. Seven Falls Co.*,

18  515 U.S. 277, 286 (1995)).  However, a district court does not enjoy unlimited

19  discretion regarding jurisdiction in declaratory judgment actions.  *Wilton*, 515 U.S. at

20  289.  For example, a court cannot decline declaratory judgment jurisdiction solely as "a

21  matter of whim or personal disinclination."  *EMC*, 89 F.3d at 813 (citation omitted).

22  Nor can a court decline jurisdiction, without any other reasons, "merely because a

23  parallel patent infringement suit was subsequently filed in another district."  *Id*.

24          In determining whether a case is appropriate for declaratory judgment

25  jurisdiction, district courts should consider:

26      (1) how closely this action fits with the core purposes of the Declaratory

27      Judgment Act, and

28      (2) considerations of practicality and judicial economy.

1    *EMC*, 89 F.3d at 814.  Each of these factors is discussed in turn below.

2    **A.     This case is at the periphery, not the core, of declaratory judgment**
3    **jurisdiction.**

4    The Court should consider whether this is one of the "cases closer to the

5    central objectives of declaratory proceedings." *EMC Corp. v. Norand Corp.*, 89 F.3d

6    807, 814 (Fed. Cir. 1996); *MedImmune, Inc. v. Genentech, Inc.*, 127 S. Ct. 764, 776

7    (2007) (the declaratory judgment act "vest[s] district courts with discretion" to consider

8    "facts bearing on the usefulness of the declaratory judgment remedy").

9    In the patent context, at the core of declaratory judgment jurisdiction are

10   cases where "'the patent owner attempts extra-judicial patent enforcement with scare-

11   the-customer-and-run tactics that infect the competitive environment.'" *EMC*, 89 F.3d

12   at 814 (quoting *Arrowhead Industrial Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 735

13   (Fed. Cir. 1988)).  In such a case, "a patent owner engaging in 'extra-judicial patent

14   enforcement' tactics rendered its competitors 'helpless and immobile so long as the

15   patent owner refused to grasp the nettle and sue.'" *Sony Elecs., Inc. v. Guardian Media*

16   *Techs.*, Ltd., 2007 U.S. App. LEXIS 18465, *34-*35 (Fed. Cir. Aug. 3, 2007) (quoting

17   *Arrowhead*, 846 F.2d at 735); *see Capo, Inc. v. Dioptics Med. Prods.*, 387 F.3d 1352,

18   1356 (Fed. Cir. 2004) (declaratory judgment jurisdiction appropriate where patent

19   holder's "threats were not aimed at negotiation, but at impeding a competitor's

20   commercial activity").

21   At the opposite end of the spectrum are cases where the "declaratory

22   judgment plaintiff 'took advantage of the fact that [patentee] had deferred the filing of

23   expensive and probably protracted litigation because of its belief that settlement

24   negotiations were under way.'" *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 814 (Fed.

25   Cir. 1996) (quoting *NSI Corp. v. Showco, Inc.*, 843 F. Supp. 642, 645-46(D. Or. 1994).

26   In such a case, "'it would be inappropriate to reward -- and indeed abet -- conduct

27   which is inconsistent with the sound policy of promoting extrajudicial dispute

28   resolution, and conservation of judicial resources." *EMC*, 89 F.3d at 814 (quoting

1  *Davox Corp. v. Digital Systems International, Inc*., 846 F. Supp. 144, 148 (D. Mass.

2  1993)).  In such a case, allowing a declaratory judgment "'action to proceed would be to

3  discourage such good faith effort to negotiate.'"  *EMC*, 89 F.3d at 814 (quoting *Bausch*

4  *& Lomb Inc. v. Alcide Corp*., 684 F. Supp. 1155, 1160 (W.D.N.Y. 1987)).  As a result,

5  "a court may take into account the pendency of serious negotiations to sell or license a

6  patent in determining to exercise jurisdiction over a declaratory judgment action."

7  *EMC*, 89 F.3d at 814; s*ee Sage Prods. v. Am. Nonwovens Corp*., 2004 U.S. Dist. LEXIS

8  8511 *6 (N.D. Ill. 2004) ("This pursuit of an extrajudicial resolution of the issues

9  should be encouraged. . . . Thus, the court would decline to exercise jurisdiction even if

10  an actual controversy existed.")

11        Moreover, a patentee's good faith participation in settlement negotiations

12  may be a basis for dismissing a declaratory judgment action even where it is "clear that

13  [the patent holder] intended to resort to litigation if it were not satisfied with the results

14  of the parties' negotiations."  *EMC Corp. v. Norand Corp*., 89 F.3d 807, 812-13 (Fed.

15  Cir. 1996).  "There is no evidence that [patent holder] in any way delayed or intended to

16  avoid filing suit if an amicable resolution could not be achieved.  Exercising jurisdiction

17  over declaratory-relief actions under such circumstances would create a strong

18  disincentive for patentees to communicate with potential infringers before filing suit, for

19  fear of being sued first and thus forced to litigate in the defendant's forum of choice."

20  *Fresenius United States v. Transonic Sys*., 207 F. Supp. 2d 1009, 1012-13 (N.D. Cal.

21  2001).

22        Where does the present case fall on the spectrum between a patent-holder

23  improperly using a patent to threaten a competitor's customers and a patent holder

24  delaying filing suit against an infringer who says that it is interested in good faith

25  settlement discussions?

26        *First*, there is no evidence that LPL was using its patents to threaten State

27  Farm Mutual's customers or was engaged in any similar conduct.  Libman decl. (exh.

28  13) ¶¶ 9-11.

1          *Second*, LPL engaged in settlement discussions, and refrained from suing

2  State Farm Mutual, only after receiving an express representation from State Farm as to

3  its intentions.  LPL asked State Farm to "confirm that it is your client's intention to

4  promptly engage in good faith and meaningful discussions regarding a license

5  agreement for at least the '434 and '938 patents."  Tache decl. (exh. 14) ¶ 6; Exh. 8.  In

6  response, State Farm represented: "It has and will continue to be State Farm's intent to

7  discuss this matter and LPL's allegations in good faith."  *Id*.  Right up through (and

8  past) the date it filed suit, State Farm never withdrew that representation,

9          *Third*, LPL actively engaged in good faith settlement negotiations with

10  State Farm.  In particular, LPL:

11        &bull;   provided detailed information and analysis of infringement, validity, and

12             royalties to State Farm Mutual;

13        &bull;   promptly responded to State Farm Mutual's questions;

14        &bull;   flew two representatives to Texas to meet personally with representatives

15             of State Farm Mutual;

16        &bull;   discussed detailed licensing terms; and

17        &bull;   had used the same approach to settle successfully with four other major

18             financial and/or insurance entities.

19  Libman decl. ¶¶ 2-11; Tache decl. ¶¶ 2-23; Exhs. 1-11.

20          *Fourth*, the record shows no effort by LPL to delay or prolong the

21  discussions unreasonably.  LPL consistently and aggressively pushed the settlement

22  discussions forward with State Farm Mutual.  Libman decl. ¶¶ 2-11; Tache decl. ¶¶ 2-

23  23; Exhs. 1-11.  By contrast, the records shows that State Farm Mutual delayed and

24  stalled.  *Id*.

25          *Fifth*, there is no evidence that, if the settlement discussions failed, LPL

26  intended to delay filing suit against State Farm Mutual.  State Farm Mutual admits that,

27  on June 19, 2007, LPL stated:

28

1
2
3

>If State Farm's answer is that State Farm is not interested in a license, then
>LPL will investigate its options.  There is simply too much money on the
>table for LPL to walk away. . . . I can tell you that LPL is talking to
>litigation counsel in Texas about its litigation options.

4   Complaint ¶ 13.  State Farm Mutual further admitted that, at the time State Farm Mutual

5   filed its lawsuit, "LPL is preparing to file a complaint against State Farm alleging that

6   State Farm infringes."  Complaint ¶ 13.  Because "[t]here is no evidence that [LPL] in

7   any way delayed or intended to avoid filing suit if an amicable resolution could not be

8   achieved," for the Court to "[e]xercis[e] jurisdiction over declaratory-relief actions

9   under such circumstances would create a strong disincentive for patentees to

10  communicate with potential infringers before filing suit, for fear of being sued first and

11  thus forced to litigate in the defendant's forum of choice."  *Fresenius United States v.*

12  *Transonic Sys.*, 207 F. Supp. 2d 1009, 1012-13 (N.D. Cal. 2001).

13          *Sixth*, based on State Farm Mutual's admissions that it understood that

14  LPL was preparing to file suit "if State Farm's answer is that State Farm is not

15  interested in a license," Complaint ¶ 13 and that LPL had consulted "litigation counsel

16  in Texas," *id.*, and also on the fact that State Farm Mutual filed this suit without first

17  notifying LPL of its intentions, it is reasonable to conclude that State Farm Mutual filed

18  suit to preempt LPL's choice of forum in Texas.  It is proper "to consider that [the

19  declaratory relief plaintiff] intended to preempt [patentee's] infringement suit . . . as one

20  factor in the decision whether to dismiss the declaratory suit in favor of [patentee's]

21  subsequent infringement action."  *Serco Servs. Co., L.P. v. Kelley Co.*, 51 F.3d 1037,

22  1039-40 (Fed. Cir. 1995).

23          *Seventh*, State Farm Mutual made statements that actively concealed its

24  true intentions.  Even up through the date State Farm Mutual filed suit, LPL believed it

25  was engaged in good faith negotiations and was anticipating a response from State Farm

26  regarding LPL's most recent proposal.  Just a few days before filing suit, State Farm's

27  representative wrote that "the State Farm decision makers . . .  are away from the office

28  on vacation . . . and I have every expectation that we will get to an answer very quickly

1   when we are all at work." Exh. 11. Two weeks later, without warning, State Farm

2   Mutual filed this declaratory judgment action to preempt LPL's choice of forum. A

3   declaratory judgment plaintiff's "procedural fencing and inequitable if not outright

4   deceptive conduct do present sound reasons, in the court's view, not to retain

5   [jurisdiction]." *Lyons Indus. v. American Std.*, 993 F. Supp. 609, 615 (W.D. Mich.

6   1997).

7         In sum, LPL deferred filing suit based on State Farm Mutual's written

8   representation that it would engage in good faith settlement negotiations, LPL

9   demonstrated its good faith by devoting substantial time and money to that process,

10   State Farm Mutual understood that LPL was prepared to initiate suit in Texas if

11   settlement talks failed, and State Farm Mutual surreptitiously filed a preemptive suit

12   while settlement discussions were still under way. This is not a case at the core of

13   declaratory judgment jurisdiction; it lies at the outermost periphery. This factor weighs

14   strongly in favor of the Court declining to exercise jurisdiction.

15      **B.**    **Considerations of practicality and efficient judicial administration**

16             **weigh in favor of dismissal.**

17         For suits brought under the Declaratory Judgment Act, "the normal

18   principle that federal courts should adjudicate claims within their jurisdiction yields to

19   considerations of practicality and wise judicial administration." *Wilton v. Seven Falls*

20   *Co*., 515 U.S. 277, 288 (1995). "Although courts generally favor the forum of the first

21   filed action, 'considerations of judicial and litigant economy, and the just and effective

22   disposition of disputes' may require otherwise." *Cingular Wireless LLC v. Freedom*

23   *Wireless, Inc*., 2007 U.S. Dist. LEXIS 47957, 13-14 (D. Ariz. 2007 (quoting *Genetech,*

24   *Inc. v. Eli Lilly and Co*., 998 F.2d 931, 937 (Fed. Cir. 1993)). The first-filed action is

25   not preferred if "considerations of judicial and litigant economy, and the just and

26   effective disposition of disputes, require otherwise." *Serco Servs. Co., L.P. v. Kelley*

27   *C*o., 51 F.3d 1037, 1039 (Fed. Cir. 1995) (internal quotes omitted); *see Genetech, Inc. v.*

28   *Eli Lilly and Co*., 998 F.2d 931, 938 (Fed. Cir. 1993) (court should exercise discretion

1   to dismiss if exercising jurisdiction would be "inefficient").

2          The comprehensive Texas litigation is central to the analysis of the

3   efficient resolution of the dispute between LPL, Phoenix, and State Farm Mutual.

4   Because the Texas litigation includes claims for patent infringement by LPL and

5   Phoenix against State Farm Mutual on U.S. Patent No. 5,987,434 ("the '434 patent")

6   and U.S. Patent No. 6,999,938 ("the '938 patent"), it includes the exact same claims

7   between the exact same parties as in the present case.[1]  As to these claims and parties,

8   the existence of two lawsuits will necessarily entail complete duplication of efforts by

9   the courts and the parties and the risk of inconsistent judgments.  But here, the

10   inefficient judicial administration created by this declaratory judgment action extends

11   beyond the claims against State Farm Mutual.

12          The Texas litigation also includes three other categories of claims that

13   give rise to inefficiencies and duplication:

14        •  claims against State Farm <u>Bank</u> (a related, but different, entity than State

15           Farm Mutual) on the '434 and '938 patents;

16        •  claims against 21 other defendants, on the '434 and '938 patents; and

17        •  claims against 8 other defendants on the '072 patent.

18   The considerations for judicial administration for all of these are described below.

19         <u>*the risk of inconsistent judgments*</u>

20          As to the claims against State Farm Mutual on the '434 and '938 patents,

21   there is an obvious risk of judgments that are inconsistent at every level.  In addition,

22   there is the additional risk of an inconsistent judgment in the claims against two

23

24         [1]    As explained below, although State Farm Mutual asserts a claim for
declaratory relief as to the '072 patent as well, this Court has no subject matter

25   jurisdiction over such a claim because there is no actual controversy as to the '072

26   patent.  Likewise, in the Texas Litigation, State Farm Mutual is not accused of
infringing the '072 patent.  Exh. 12.

27

28

1    affiliated companies -- State Farm Mutual in the Arizona case and State Farm Bank in
2    the Texas litigation.  Moreover, there is a risk of inconsistent claim constructions and
3    inconsistent findings of validity or invalidity on the '434 and '938 patents as between
4    the Arizona case and the case against 21 other defendants in the Texas litigation.

5    Finally, there is the risk of inconsistent claim constructions as between the
6    '072 patent and the '434 and '938 patents.  The Texas Court will be construing terms
7    for the '072 patent (a patent over which this Court does not have jurisdiction because, as
8    discussed below, there is no actual controversy with State Farm Mutual).  Because the
9    three patents are related, circumstances can arise where the same terms used in each
10   patent should be given the same construction.  *E.g., Elkay Mfg. Co. v. Ebco Mfg. Co*,
11   192 F.3d 973, 980 (Fed. Cir. 1999) ("When multiple patents derive from the same initial
12   application, the prosecution history regarding a claim limitation in any patent that has
13   issued applies with equal force to subsequently issued patents that contain the same
14   claim limitation.").  This gives rise to the risk of inconsistent constructions as between
15   this Court's construction of terms for the '434 and '938 patents, and the Texas Court's
16   construction of the '072 patent.

17   This factor weighs in favor of discretionary dismissal.  *Cingular Wireless*
18   *LLC v. Freedom Wireless, Inc*., 2007 U.S. Dist. LEXIS 47957 *16 (D. Ariz. 2007)
19   ("The opportunity for inconsistent judgments between the . . . pending cases weighs on
20   this Court, the risk of which favors discretionary dismissal.")

21   *duplication of judicial resources*

22   In construing claim terms, a court will have to learn the nuances of the
23   patent specifications and the lengthy prosecution history.  This will require a complete
24   duplication of effort as between this Court and the Texas Court.  This is true for (i) the
25   duplicate claims in Texas involving State Farm Mutual, (ii) the claims in Texas against
26   State Farm Bank, (iii) the claims in Texas against the other Defendants on the '434 and
27   '938 patents, and (iv) the claims in Texas against the other Defendants on the '072
28   patents.

11

1    Similarly, when considering issues of invalidity based on prior art, both

2  Courts will have to duplicate efforts to understand the prior art, to identify the

3  differences between the invention and the prior art, and to evaluate the objective

4  indicators of non-obviousness.  "The certainty of wasted resources weighs strongly in

5  favor of dismissal.  *See Lonza Inc. v. Rohm and Haas, Inc.*, 951 F. Supp. 46, 50

6  (S.D.N.Y. 1997) ('[T]here is simply no reason why the patent issues in dispute should

7  be litigated in two different fora.')."  *Cingular Wireless LLC v. Freedom Wireless, Inc.*,

8  2007 U.S. Dist. LEXIS 47957 *16 (D. Ariz. 2007).

9    *duplicate discovery and trial efforts*

10    In both the present case and the Texas case, there will be substantial

11  duplication of discovery.  In particular, it is likely that duplicate depositions would be

12  taken of witnesses such as the inventor, the attorneys who prosecuted the patents, and

13  key prior art witnesses.  Similarly, there would be duplication of testimony and exhibits

14  at trial.  That would be true, again, as to all four categories of claims in Texas.

15    "Therefore, the other actions in Texas will require the presence of the

16  parties, counsel, witnesses and inventors regardless of this dispute's location, which

17  weighs in favor of discretionary dismissal."  *Cingular Wireless*, 2007 U.S. Dist. LEXIS

18  47957.

19    *ability of the other forum to handle this case*

20    Another factor is whether the other forum, in this instance the Eastern

21  District of Texas, has the ability to administer the disputes.  The litigation in Texas

22  involves 23 defendants and three patents.  Moreover, each of the patents contains

23  multiple claims.  The '434 patent has 56 separate claims.  The '072 patent has 134

24  separate claims.  The '938 patent has 312 separate claims.  And, a successful

25  reexamination of the '434 patent has just been completed by the Patent and Trademark

26  Office in which 104 additional claims were added for a total of 160 claims in that

27  patent.

28

1      Relevant here is "the Eastern District of Texas' adoption of special rules

2  for patent infringement actions, which streamline discovery, claim construction and

3  other pre-trial matters.  While any United States District Court, including this one, can

4  afford all parties the timeliness, fairness, justice and competence required to resolve

5  their patent disputes, the Court is persuaded that the Eastern District of Texas' special

6  rules will most efficiently promote sound judicial administration." *Cingular Wireless*

7  *LLC v. Freedom Wireless, Inc.*, 2007 U.S. Dist. LEXIS 47957, n.3 (D. Ariz. 2007).

8      *convenience for parties*

9      Another factor is the convenience of the forum for the parties.  Arizona is

10  a convenient forum for the patent holder.  Texas is the most convenient forum for

11  several of the defendants in the Texas litigation.  For example, USAA Federal Savings

12  Bank has its offices in San Antonio, and Citi Assurance Services, Inc. has its offices in

13  Fort Worth.  Exh. 12 at ¶¶ 13, 28.  State Farm Mutual and State Farm Bank use counsel

14  based in Texas.  Tache decl. (exh. 14) ¶ 14; Exh. 2.  Many of the defendants have their

15  principal business operations on the East Coast, for example in New York (*e.g.* J.P.

16  Morgan Chase), or South Carolina (e.g. Liberty Life).  Exh. 12 at ¶¶ 6-28.  Overall

17  Texas is centrally located and provides as convenient a forum as any for these claims.

18  This factor slightly favors Texas.  *See also Cingular Wireless LLC v. Freedom Wireless,*

19  *Inc.*, 2007 U.S. Dist. LEXIS 47957 *17 (D. Ariz. 2007) (considering that although the

20  patent holder "maintains its principal place of business in Phoenix, Arizona" at least one

21  accused infringer had "its principal place of business in Plano, Texas.").

22      In sum, every significant factor for practical and efficient judicial

23  administration weighs in favor of declining to exercise jurisdiction in this case.

24  **IV.    There is no "actual controversy" as to the '072 patent.**

25      **A.    An "actual controversy" requires a dispute that is concrete and based**

26      **upon an assertion of actual infringement.**

27      The Declaratory Judgment Act provides, in relevant part, that "[i]n a case

28  of actual controversy within its jurisdiction . . . any court of the United States, upon the

1  filing of an appropriate pleading, may declare the rights and other legal relations of any

2  interested party seeking such declaration."  28 U.S.C. § 2201(a) (emphasis added).

3          The "actual controversy" requirement of the Declaratory Judgment Act is

4  satisfied only if "there is a substantial controversy, between parties having adverse legal

5  interests, of sufficient immediacy and reality."  *SanDisk Corp. v. STMicroelectronics,*

6  *Inc.*, 480 F.3d 1372, 1378 (Fed. Cir. 2007) (emphasis added) (quoting *MedImmune, Inc.*

7  *v. Genentech, Inc.*, 127 S. Ct. 764, 771 (2007) (internal quote omitted)).  In its recent

8  *MedImmune* case, "[t]he Supreme Court emphasized that Article III requires that the

9  dispute at issue be 'definite and concrete, touching the legal relations of parties having

10  adverse legal interests'; and that it be 'real and substantial' and 'admi[t] of specific

11  relief through a decree of a conclusive character, as distinguished from an opinion

12  advising what the law would be upon a hypothetical state of facts.'"  *SanDisk Corp.*,

13  480 F.3d at 1378 (emphasis added) (quoting *MedImmune*, 127 S. Ct. at 771 (internal

14  quotes omitted)).

15          What does that mean in the context of a patent?

16          "[D]eclaratory judgment jurisdiction generally will not arise merely on the

17  basis that a party learns of the existence of a patent owned by another or even perceives

18  such a patent to pose a risk of infringement, without some affirmative act by the

19  patentee."  *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1380-81 (Fed.

20  Cir. 2007).  By contrast, jurisdiction exists "where a patentee asserts rights under a

21  patent based on certain identified ongoing or planned activity of another party."  *Id.*,

22  480 F.3d at 1381 (emphasis added).  A case or controversy exists where the patent

23  holder "has explicitly identified the patents it believes that [the accused infringer]

24  infringes, the relevant claims of those patents, and the relevant . . . products that it

25  alleges infringe those patents."  *Sony Elecs., Inc. v. Guardian Media Techs., Ltd.*, 2007

26  U.S. App. LEXIS 18465, 37-38 (Fed. Cir. 2007) (emphasis added).

27

28

1
2

**B.    There is no actual controversy with State Farm Mutual over the '072 patent.**

3          For the '434 patent and the '938 patent, LPL provided claim charts
4   showing how specific State Farm Mutual marketing campaigns infringed the patents.
5   This created a case or controversy between LPL and State Farm Mutual as to those two
6   patents.  By contrast, LPL did not accuse State Farm Mutual of infringing the '072
7   patent, and never identified an example of a marketing campaign or any other conduct
8   that infringed the '072 patent.  The subject of potential infringement of the '072 patent
9   came up only once during the two-years of discussions between LPL and State Farm --
10  at the very beginning.  On June 24, 2005, LPL sent a letter to State Farm Bank accusing
11  it of infringing the '434 patent in its credit card marketing.  Exh. 1 at 2.  LPL attached
12  two examples of infringement of the '434 patent.  Exh. 1 at attachments 1 and 2.  In that
13  same letter, LPL said, "We <u>suspect</u> State Farm Bank and its affiliate companies in the
14  State Farm Group <u>may</u> also be infringing claims of the '072 Patent."  *Id*. at 2 (emphasis
15  added).

16         This suspicion created no actual controversy.  On its face, this statement
17  does not identify a dispute "of sufficient immediacy and reality" or that is "definite and
18  concrete."  *SanDisk Corp. v. STMicroelectronics, Inc*., 480 F.3d 1372, 1378 (Fed. Cir.
19  2007) (quoting *MedImmune, Inc. v. Genentech, Inc*., 127 S. Ct. 764, 771 (2007)
20  (internal quote omitted)).  LPL had not "explicitly identified . . . the relevant . . .
21  products that it alleges infringe."  *Sony Elecs., Inc. v. Guardian Media Techs., Ltd*.,
22  2007 U.S. App. LEXIS 18465, 37-38 (Fed. Cir. 2007).

23         Moreover, when considered in context, the totality of the circumstances
24  makes clear that there was no case or controversy as to the '072 patent on the day that
25  State Farm Mutual filed suit.  For two years after June 24, 2005, LPL and
26  representatives of State Farm exchanged dozens of communications concerning the
27  infringement of LPL patents, and never once mentioned the '072 patent.  Tache decl.
28  (exh. 14); Exhs. 2-11.  For example, on July 7, 2006, LPL sent to State Farm's lawyer

15

1  information about specific claims of the '938 patent.  Exh. 7.  On September 27, 2006,

2  LPL provided State Farm's lawyer, with "detailed information regarding infringement

3  of the '938 patent and the '434 patent."  Tache decl (exh. 14) at ¶ 5.  On October 23,

4  2006, LPL asked State Farm to confirm that they were engaged in "meaningful

5  discussions regarding a license agreement for at least the '434 and '938 patent."  Exh. 8.

6  On April 24, 2007, LPL attended an in person meeting with representatives of State

7  Farm in Austin, Texas.  Tache decl (exh. 14) ¶¶ 14-17.  At that meeting, LPL presented

8  detailed claim charts regarding infringement of the '434 and '938 patent.  *Id.*

9          Although there were dozens of communication on the subject of

10  infringement, LPL never accused State Farm Mutual of infringing the '072 patent.

11  Moreover, State Farm represented that it did not yet do any on-statement marketing

12  (marketing on a billing statement or other communication of the sort covered by the

13  '072 patent) and did not plan to do so for the foreseeable future.  Tache decl. (exh. 14)

14  ¶¶ 11.

15          In addition, not only was there no actual controversy as to the '072 patent

16  on the date State Farm Mutual filed suit, even as of today no case or controversy exists.

17  "[A]n actual controversy must be extant at all stages of review, not merely at the time

18  the complaint is filed."  *Spectronics Corp. v. H.B. Fuller Co.*, 940 F.2d 631, 635 (Fed.

19  Cir. 1991) (quoting *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975)).  The burden is on

20  State Farm Mutual "to establish that jurisdiction over its declaratory judgment action

21  existed at, and has continued since, the time the complaint was filed."  *Id.*  Even as of

22  today, LPL is not aware of any conduct of State Farm Mutual that infringes the '072

23  patent.  Libman decl. (exh. 13) ¶ 12.

24          As to the '072 patent, State Farm Mutual asks the Court to "advis[e] what

25  the law would be upon a hypothetical state of facts."  *SanDisk Corp.*, 480 F.3d at 1378

26  (internal quotes omitted).  There is no case regarding the '072 that is "definite and

27  concrete" or "real and substantial."  *SanDisk Corp.*, 480 F.3d at 1378.

28

**C.     That there is jurisdiction over two patents does not give the Court jurisdiction over the third.**

The existence of subject matter jurisdiction over the '434 patent and the '938 patent does not give rise to jurisdiction to declare a judgment as to the '072 patent. "By statutory and common law, each patent establishes an independent and distinct property right.  Each patent asserted raises an independent and distinct cause of action." *Kearns v. GMC*, 94 F.3d 1553, 1555 (Fed. Cir. 1996) (internal citations omitted).  If an actual controversy exists over one patent this would not support declaratory judgment jurisdiction over a related patent (or even over unasserted claims of the same patent). *See Spectronics Corp. v. H.B. Fuller Co.*, 940 F.2d 631, 635-36 (Fed. Cir. 1991) ("no actual controversy existed to support declaratory judgment with respect to certain patent claims, where patent holder abandoned allegation of infringement of those claims prior to trial and there was no threat of future suit").

Because there is no actual controversy between State Farm Mutual and LPL or Phoenix as to the '072 patent, there is no subject matter jurisdiction as to that patent.

**V.     Conclusion.**

For the foregoing reasons, the Court should dismiss the action for lack of subject matter jurisdiction.

Dated:  September 4, 2007                    Respectfully submitted,


                                             **GALLAGHER & KENNEDY, P.A.**

                                             By:    s/Mark Deatherage
                                                  Mark Deatherage
                                                  2575 East Camelback Road
                                                  Phoenix, Arizona 85016-9225
                                                  Attorneys for Defendants

1

2  Copy of the foregoing electronically filed
   with the Clerk of District Court
3  this 4th day of September, 2007, and
   electronically copied to:
4

5  R. William Beard, Jr., Esq.
   Baker Botts LLP
6  98 San Jacinto Blvd.
7  Ste 1500
   Austin, TX 78701-4078
8      and
9  Ray Kendall Harris, Esq.
   Fennemore Craig PC
10 3003 N. Central Ave., Ste 2600
11 Phoenix, AZ 85012-2913
   Attorneys for Plaintiff
12

13
   Copy of the foregoing mailed
14 this 4th day of September, 2007 to:

15
   Gregory S. Dovel, Esq.
16 Sean A. Luner, Esq.
   Dovel & Luner, LLP
17 201 Santa Monica Blvd., Suite 600
18 Santa Monica, CA 90401
   Co-Counsels for Defendants
19

20 s/Susan Bailey
   99-8228/1630619
21

22

23

24

25

26

27

28

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CITICORP CREDIT SERVICES, INC.,<br><br>        Plaintiff,<br><br>     v.<br><br>LPL LICENSING, LLC and PHOENIX<br>LICENSING, L.L.C.,<br><br>        Defendants. | C.A. No. _____<br><br>**DEMAND FOR JURY TRIAL** |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Citicorp Credit Services, Inc. ("CCSI") files this Complaint for Declaratory Judgment against Defendants LPL Licensing, LLC ("LPL") and Phoenix Licensing, L.L.C. ("Phoenix") (collectively, "Defendants") and alleges as follows:

### Parties

1.      Plaintiff CCSI is a Delaware corporation having its principal place of business in Long Island City, New York.

2.      Defendant LPL is a Delaware limited liability company having a principal place of business at 10947 East Lillian Lane, Scottsdale, Arizona 85255.

3.      Defendant Phoenix is an Arizona limited liability company having a principal place of business at 10947 East Lillian Lane, Scottsdale, Arizona 85255.

### Jurisdiction and Venue

4.      CCSI brings this civil action under the Patent Laws, Title 35 of the United States Code, and under 28 U.S.C. § 2201 to obtain a declaration of noninfringement and/or

invalidity with respect to U.S. Patent Nos. 5,987,434, 6,076,072, and 6,999,938 ("the patents-in-suit").

5.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

6.    Venue is proper under 28 U.S.C. §§ 1391(b) and 1391(c).

## Background

7.    On information and belief, Phoenix is the owner by assignment of the patents-in-suit and has granted LPL the exclusive right to license the patents-in-suit.  At all relevant times, LPL and Phoenix have acted in concert with one another in connection with the patents-in-suit.

8.    The patents-in-suit relate generally to apparatuses and methods of transacting, marketing, and selling financial products; preparing client communications involving financial products and services; and replying to inquiries regarding financial products and services.

9.    CCSI is a credit card servicing company.  Among other things, it prepares and mails solicitations to prospective customers relating to financial products, including credit cards.

10.    On August 31, 2007, Defendants filed Case No. 2-07cv-387 in the United States District Court for the Eastern District of Texas, Marshall Division, accusing 22 companies in the financial products and services industry, including certain affiliates of CCSI, of patent infringement with respect to the patents-in-suit.

11.    In light of those allegations, CCSI believes that a controversy also exists between it and Defendants over whether CCSI's business practices have infringed, and are

2

continuing to infringe, the patents-in-suit and whether the patents-in-suit are valid.    This

controversy is continuing and ongoing, and is ripe for resolution by the Court.

### First Count:  Declaratory Judgment of Noninfringement and Invalidity of U.S. Patent No. 5,987,434

12.    CCSI hereby restates and realleges the allegations set forth in

paragraphs 1-11 and incorporates them by reference.

13.    On information and belief, Phoenix is the owner by assignment of U.S.

Patent No. 5,987,434, entitled "Apparatus and Method for Transacting Marketing and Sales of

Financial Products," and LPL has the exclusive right to license such patent.  A copy of U.S.

Patent No. 5,987,434 is attached as Exhibit A.

14.    CCSI requests a declaration that it has not infringed, and is not infringing,

directly, indirectly, contributorily, or otherwise, any valid claim of U.S. Patent No. 5,987,434.

15.    CCSI also requests a declaration that the claims of U.S. Patent

No. 5,987,434 are invalid under one or more provisions of 35 U.S.C. §§ 102, 103, and/or 112.

### Second Count:  Declaratory Judgment of Noninfringement and Invalidity of U.S. Patent No. 6,076,072

16.    CCSI hereby restates and realleges the allegations set forth in

paragraphs 1-15 and incorporates them by reference.

17.    On information and belief, Phoenix is the owner by assignment of

U.S. Patent No. 6,076,072, entitled "Method and Apparatus for Preparing Client

Communications Involving Financial Products and Services," and LPL has the exclusive right to

license such patent.  A copy of U.S. Patent No. 6,076,072 is attached as Exhibit B.

18.    CCSI requests a declaration that it has not infringed, and is not infringing,

directly, indirectly, contributorily, or otherwise, any valid claim of U.S. Patent No. 6,076,072.

19.    CCSI also requests a declaration that the claims of U.S. Patent No. 6,076,072 are invalid under one or more provisions of 35 U.S.C. §§ 102, 103, and/or 112.

### Third Count: Declaratory Judgment of Noninfringement and Invalidity of U.S. Patent No. 6,999,938

20.    CCSI hereby restates and realleges the allegations set forth in paragraphs 1-19 and incorporates them by reference.

21.    On information and belief, Phoenix is the owner by assignment of U.S. Patent No. 6,999,938, entitled "Automated Reply Generation Direct Marketing System," and LPL has the exclusive right to license such patent. A copy of U.S. Patent No. 6,999,938 is attached as Exhibit C.

22.    CCSI requests a court declaration that it has not infringed, and is not infringing, directly, indirectly, contributorily, or otherwise, any valid claim of U.S. Patent No. 6,999,938.

23.    CCSI also requests a declaration that the claims of U.S. Patent No. 6,999,938 are invalid under one or more provisions of 35 U.S.C. §§ 102, 103, and/or 112.

### Prayer for Relief

WHEREFORE, CCSI prays that this Court:

A.    Declare that CCSI has not infringed and is not infringing any valid claim of U.S. Patent Nos. 5,987,434, 6,076,072, and 6,999,938.

B.    Declare that all claims of U.S. Patent Nos. 5,9887,434, 6,076,072, and 6,999,938 are invalid.

C.    Declare this case exceptional under 35 U.S.C. § 285 and award CCSI its costs, disbursements, and attorneys' fees in connection with this action; and

D.    Award CCSI such other and further relief as this Court may deem just and proper.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

_____
Rodger D. Smith II (#3778)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
    *Attorneys for Plaintiff*
    *Citicorp Credit Services, Inc.*

October 17, 2007

1269329

5

## Sean Luner

**From:**    Sean Luner [luner@dovellaw.com]
**Sent:**    Friday, October 26, 2007 10:08 AM
**To:**      'rsmith@mnat.com'
**Subject:** Citicorp Credit Services v. LPL Licensing

Thank you for taking my call today.

As I mentioned during our conversation, our client was hoping that your client would be willing to provide us with more information concerning the basis for your complaint.   The complaint states that:

> "On August 31, 2007, Defendants filed Case No. 2-07cv-387 in the United States District Court for the Eastern District of Texas, Marshall Division, accusing 22 companies in the financial products and services industry, including certain affiliates of CCSI, of patent infringement with respect to the patents-in-suit.  In light of those allegations, CCSI believes that a controversy also exists between it and Defendants over whether CCSI's business practices have infringed."

Other than the fact that the Defendants filed a case accusing 22 companies in Texas (including some related entities), we were hoping that you would provide more information relating to the factual basis for this controversy?

My contact information is below.

Thank you for cooperation in this matter.

Sean


**Dovel & Luner**, LLP

Sean Luner
201 Santa Monica, Suite 600
Santa Monica, California 90401
(310) 656-7066
www.dovellaw.com

11/8/2007

**BEFORE THE JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

| | | |
|---|---|---|
| **In re LPL AND PHOENIX LICENSING** | § | |
| **PATENTS LITIGATION** | § | **MDL-1910** |
| | § | |
| | § | |

## CITI PARTIES' CORPORATE DISCLOSURE STATEMENT

Citibank, N.A., Citibank USA, National Association, Citibank (South Dakota), N.A.,

CitiMortgage, Inc., Citigroup, Inc., Citi Assurance Services, Inc., and Citicorp Credit Services,

Inc. (collectively, the "Citi Parties") file this Corporate Disclosure Statement pursuant to

J.P.M.L. Rule 5.3.

    1.    Citibank, N.A., Citibank (South Dakota), N.A., CitiMortgage, Inc., Citi Assurance

Services, Inc., and Citicorp Credit Services, Inc. are wholly-owned subsidiaries of Citigroup, Inc.

Citibank USA, National Association has been merged into Citibank (South Dakota), N.A. and no

longer exists as a separate entity.

    2.    None of the Citi Parties other than Citigroup, Inc. are publicly traded.  Citigroup,

Inc. does not have any stockholders with an ownership interest of greater than 10%.

Respectfully submitted,


EDWIN R. DEYOUNG
  Texas State Bar No. 05673000
LOCKE LORD BISSELL & LIDDELL LLP
2200 Ross Avenue, Suite 2200
Dallas, Texas 75201
(214) 740-8000 Telephone
(214) 740-8800 Facsimile

**ATTORNEYS FOR CITIBANK, N.A.,
CITIBANK USA, N.A., CITIBANK (SOUTH
DAKOTA), N.A., CITIMORTGAGE, INC.,
CITIGROUP, INC., CITI ASSURANCE
SERVICES, INC., AND CITICORP CREDIT
SERVICES, INC.**

2

**BEFORE THE**
**JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

| | | |
|---|---|---|
| **In re LPL AND PHOENIX LICENSING** | § | |
| **PATENTS LITIGATION** | § | **MDL - _____** |
| | § | |

**CITI PARTIES' MOTION**
**TO CONSOLIDATE AND TRANSFER UNDER 28 U.S.C. § 1407**

Pursuant to 28 U.S.C. § 1407, Citibank, N.A., Citibank USA, N.A., Citibank (South Dakota), N.A., CitiMortgage, Inc., Citigroup, Inc., Citi Assurance Services, Inc., and Citicorp Credit Services, Inc. respectfully request the Panel transfer the actions identified on the accompanying Schedule of Actions to the United States District Court for the District of Delaware for consolidated pretrial proceedings. Alternatively, Citi requests that the cases be transferred to the Northern District of Illinios, Eastern Division or the District of Arizona, Phoenix Division for consolidated pretrial proceedings. The factual and legal bases for this Motion are set forth in the accompanying Brief in Support.

Dated: October 24, 2007.

Respectfully submitted,


EDWIN R. DEYOUNG
 Texas State Bar No. 05673000
LOCKE LORD BISSELL & LIDDELL LLP
2200 Ross Avenue, Suite 2200
Dallas, Texas 75201
(214) 740-8000 Telephone
(214) 740-8800 Facsimile

**ATTORNEYS FOR CITIBANK, N.A.,
CITIBANK USA, N.A., CITIBANK (SOUTH
DAKOTA), N.A., CITIMORTGAGE, INC.,
CITIGROUP, INC., CITI ASSURANCE
SERVICES, INC., AND CITICORP CREDIT
SERVICES, INC.**

# BEFORE THE JUDICIAL PANEL ON
# MULTIDISTRICT LITIGATION

In re LPL AND PHOENIX LICENSING    §
PATENTS LITIGATION               §    MDL - _____
                                   §

## CITI PARTIES' BRIEF IN SUPPORT OF
## THEIR MOTION TO CONSOLIDATE AND TRANSFER UNDER 28 U.S.C. § 1407

Respectfully submitted,


EDWIN R. DEYOUNG
  Texas State Bar No. 05673000
LOCKE LORD BISSELL & LIDDELL LLP
2200 Ross Avenue, Suite 2200
Dallas, Texas 75201
(214) 740-8000 Telephone
(214) 740-8800 Facsimile

**ATTORNEYS FOR CITIBANK, N.A.,
CITIBANK USA, N.A., CITIBANK (SOUTH
DAKOTA), N.A., CITIMORTGAGE, INC.,
CITIGROUP, INC., CITI ASSURANCE
SERVICES, INC., AND CITICORP CREDIT
SERVICES, INC.**

# TABLE OF CONTENTS

Page

I.      SUMMARY ..................................................................................................................1

II.     FACTS .......................................................................................................................3

III.    ARGUMENT ...............................................................................................................4

        A.    The Patent Cases involve common issues of fact. ....................................................5

        B.    Consolidation will serve the convenience of the parties and witnesses...................8

        C.    Consolidation will promote the just and efficient conduct of the actions...............9

        D.    The District of Delaware provides the most convenient forum. ...........................9

IV.     CONCLUSION ...........................................................................................................11

**BEFORE THE**
**JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

In re LPL AND PHOENIX LICENSING        §
PATENTS LITIGATION                     §    MDL - _____
                                       §

**CITI PARTIES' BRIEF IN SUPPORT OF**
**THEIR MOTION TO CONSOLIDATE AND TRANSFER UNDER 28 U.S.C. § 1407**

Citibank, N.A., Citibank USA, N.A., Citibank (South Dakota), N.A., CitiMortgage, Inc.,

Citigroup, Inc., Citi Assurance Services, Inc., and Citicorp Credit Services, Inc. (collectively,

"Citi") file this Brief in Support of their Motion to Consolidate and Transfer under 28 U.S.C.

§ 1407 (the "Motion"), and would respectfully show as follows:

**I.**
**SUMMARY**

Six related patent lawsuits (the "Patent Cases") have been recently filed in four different

district courts in four different states: (1) one case in the District of Delaware; (2) one case in the

Northern District of Illinois (Eastern Division); (3) three cases in the District of Arizona

(Phoenix Division); and (4) one case in the Eastern District of Texas (Marshall Division). The

Patent Cases involve similar factual issues and causes of action arising from three U.S. Patents

that involve apparatuses and methods for transacting, marketing, and selling financial products

(the "Patents"). Discovery has not yet commenced in any of the Patent Cases, nor have any

rulings been made regarding any of the common legal and factual issues.

As this Panel has repeatedly held, related patent cases such as those at issue here are appropriate for consolidation and transfer under 28 U.S.C. § 1407 because of the overlapping issues involving claim construction, patent validity, and infringement.   *See, e.g., In re Desloratadine Patent Litig.*, MDL No. 1851; *In re Rembrandt Technologies, LP, Patent Litig.*, MDL No. 1848; *In re Katz Interactive Call Processing Patent Litig.*, MDL No. 1816; *In re Acacia Media Technologies Corp. Patent Litig.*, MDL No. 1665; *In re Rivastigmine Patent Litig.*, MDL No. 1661; *In re PharmaStem Therapeutics, Inc., Patent Litig.*, MDL No. 1660; *In re Compression Labs, Inc., Patent Litig.*, MDL No. 1654; *In re Cygnus Telecommunications Technology, LLC, Patent Litig.,* MDL No. 1423; and *In re Gabapentin Patent Litig.*, MDL No. 1384.

With respect to the venue of the MDL proceeding, Citi believes that the District Court of Delaware would be the most appropriate transferee district.   This Panel has repeatedly recognized that court as being well suited to handle multi-party patent litigation of this nature due to the experience, resources and location of the court.   *See, e.g., In re Pharmastem Therapeutics, Inc. Patent Litig.*, MDL No. 1660; *In re Rembrandt Technologies, LP, Patent Litig.*, MDL No. 1848.  Moreover, many of the principal parties involved in the Patent Cases are Delaware corporations or LLCs (including the entity that purports to own the exclusive licensing rights to the Patents, LPL Licensing L.L.C.), and many of the parties also have major offices located along the East Coast.

Alternatively, as discussed more fully below, the district courts in the Northern District of Illinois and the District of Arizona would be the second and third most appropriate transferee districts, respectively, but the Eastern District of Texas would not be appropriate.  While at least some of the parties and transactions that are the subject of the Patent Cases have a significant

nexus with Chicago and Phoenix, none of them have a nexus with Marshall, which is located in an inconvenient venue and which is backlogged due to a flood of patent cases that have been recently filed there.

## II.
## FACTS

1.     The six Patent Cases identified in the accompanying Schedule of Actions are pending in federal courts located in the District of Delaware, the Northern District of Illinois, the District of Arizona, and the Eastern District of Texas.  Each of these cases alleges claims related to the validity and/or infringement of the Patents.    Phoenix Licensing L.L.C. ("Phoenix Licensing") purports to own the Patents, and LPL Licensing, L.L.C. ("LPL Licensing") purports to be the exclusive licensee of the Patents.

2.     The Patent Cases all contain allegations related to the validity of the Patents and/or to whether any parties have infringed the Patents.  Citi and others strenuously deny the validity of the Patents and that they have infringed the Patents.

3.     Although each of the cases at issue involves some important individualized issues, each case also involves several common issues that will inevitably be the subject of duplicative discovery and which could result in inconsistent pretrial rulings. These common questions include:

a.     the validity of the Patents, including secondary considerations of obviousness, the level of ordinary skill in the art, and possible activities by the patentee or its predecessors that may have barred the Patents;

b.     whether similar alleged devices infringe on the Patents;

c.     the identification of the relevant prior art for each of the Patents, including other U.S. patent references, foreign patent references, publications and public uses of accused and related systems prior to the filing date;

3

d.     the construction of the total 502 claims that have been asserted by
Phoenix Licensing and LPL Licensing, which must be construed
by the court;

e.     whether potential inequitable conduct may have occurred during
prosecution of the patents, including common facts regarding what
prior art was known to the patentee and it attorneys at the time of
prosecution, whether it was disclosed to the United States Patent
and Trademark Office, and how the patentee/attorneys
characterized the prior art, if disclosed;

f.     common issues related to laches, estoppel and acquiescence; and

g.     common evidence and factors relevant to the determination of
reasonable royalties.

4.     Seven of the parties involved in the Patent Cases are companies organized in
Delaware.  These companies include:  LPL Licensing; Citigroup, Inc.; Citicorp Credit Services,
Inc.; Discover Financial Services, Inc.; Discover Bank; GMAC Mortgage, L.L.C.; and Direct
Response Corporation.

5.     Five of the parties involved in the Patent Cases have their principal place of
business in Illinois or are organized under Illinois law.  These parties include:  State Farm
Mutual Automobile Insurance Company; State Farm Bank, F.S.B.; Discover Products, Inc.; DFS
Services LLC; and Warner Insurance Corporation.

6.     The purported owner of the Patents, Phoenix Licensing, and the purported
exclusive licensee, LPL Licensing, have their principal place of business in Arizona.

7.     None of the parties have their principal place of business in the Eastern District of
Texas or anywhere near Marshall, Texas.

### III.
### ARGUMENT

It is well settled that this Panel may transfer civil actions pending in different districts to a
single court for consolidated pretrial proceedings when:  (i) the actions involve "one or more

4

common questions of fact;" (ii) consolidation and transfer of the actions "will be for the convenience of the parties and witnesses;" and (iii) consolidation and transfer of the actions "will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407. As set forth below, each of these criteria is satisfied in the instant case, and the United States District Court for the District of Delaware would be the most appropriate transferee forum. Alternatively, the district courts in Chicago, Illinois and Phoenix, Arizona would be the second and third most appropriate transferee forums, respectively.

## A.    <u>The Patent Cases involve common issues of fact.</u>

The first prerequisite, that there be one or more common issues of fact, is satisfied in this case. All of the cases commonly complain about the validity and/or invalidity of the Patents, and about whether certain parties have infringed the Patents. The Panel has regularly consolidated such allegations for pre-trial handling and consideration in similar cases. *See supra* p. 2 (citing examples); *see also In re FMC Corp. Patent Litig.*, 422 F. Supp. 1163, at 1165 (J.P.M.L. 1976) (holding that litigation concerning the validity of a single patent involved common questions of fact with other litigation involving the validity of that same patent); *In re Joseph F. Smith Patent Litig.*, 407 F. Supp. 1403, 1404 (J.P.M.L. 1976) (common questions of fact sufficient for 1407 transfer arose in different cases where the issues were the validity of a patent and alleged infringing devices that were similar in the various cases); *In re Triax Company Patent Litig.*, 385 F. Supp. 590, 591-92 (J.P.M.L. 1974) (same).

While Citi strenuously denies any infringement of the Patents, the claims of infringement and claims against the validity of the Patents do give rise to a common factual issues, which will undoubtedly be the subject of common discovery and pretrial rulings.

For example, the parties will need to identify the relevant prior art for each of the Patents, including other US patent references, foreign patent references, publications, and public uses of

accused and related systems prior to filing date. The universe of relevant prior art is determined by the filing date and content of each patent and is identical across the Patent Cases and accused infringers. Many prior art issues and disputes will overlap among the Patent Cases.

Additionally, the Patents include a total of 502 claims, all of which have been asserted by Phoenix Licensing and LPL Licensing against the other parties in the Patent Cases. Therefore all 502 claims will need to be construed. While the Patents themselves and the prosecution histories will be relevant to these determinations, extrinsic evidence may also be considered, which will require significant discovery regarding the proper meaning of claim terms. Such evidence may include publications contemporaneous with the patent applications discussing or using terminology appearing in the claims; relevant technical treatises; and any public position on claim meaning taken by the patentee (including in related foreign patent prosecution).

The claims are to be interpreted as they would be understood by one of "ordinary skill in the art" at the time of the applications. This generally involves expert testimony and discovery regarding such understanding. After this discovery, the disputed claim construction issues will have to be briefed by the parties and decided by the courts. Since claim construction is to be determined without reference to the accused products, the issues will be identical across the Patent Cases.

Discovery regarding other invalidity issues will likely be conducted, including: secondary considerations of obviousness (such as commercial success and long-felt need), the level of ordinary skill in the art, and possible activities by LPL and Phoenix Licensing or their predecessors (such as offers for sale or public disclosures more than one year before filing the patent applications) that may have barred the Patents.

Many of the allegedly infringing products and services are likely similar with respect to the patent claims. The parties in each of the Patent Cases expect to each receive similar discovery requests from LPL and Phoenix Licensing and, accordingly, will be involved in similar disputes regarding burden, confidentiality and privilege.

Moreover, the parties in each of the Patent Cases will likely seek similar discovery from LPL and Phoenix Licensing. The parties will also likely advance similar arguments regarding potential inequitable conduct that may have occurred during prosecution of the Patents. This will involve discovery regarding what prior art was known to LPL and Phoenix Licensing and their attorneys at the time of prosecution, whether it was disclosed to the United States Patent and Trademark Office and how the prior art was characterized, if disclosed.

Because the earliest of the Patents was issued in 1999, yet LPL and Phoenix Licensing only recently filed suit, such delay also presents significant laches, estoppel and acquiescence issues which must be explored and argued in each of the Patent Cases. These issues are expected to be common in all the Patent Cases.

Finally, if LPL and Phoenix Licensing survive invalidity and unenforceability challenges, the courts may be called upon to determine a reasonable royalty. Therefore, discovery regarding the evidence and factors relevant to that determination will be the same across all the Patent Cases.

The claims alleged here are analogous to those in *In re Triax Company Patent Litig.*, 385 F. Supp. 590, 591-92 (J.P.M.L. 1974). Notwithstanding that the claims involved "unique infringement issues," the Panel recognized that all the actions shared "significant common factual questions . . . regarding the validity of these patents." *Id.* at 591. The Panel further recognized that "[i]f pretrial proceedings in each action are neither coordinated nor consolidated,

7

inconsistent pretrial rulings and unnecessary duplication of discovery might result." *Id.* Based
on these facts, the Panel consolidated and transferred the various actions under Section 1407.

Similarly, as demonstrated by the significant number of common factual questions in this
case, the Panel should also consolidate and transfer the Patent Cases as requested herein.

**B.    Consolidation will serve the convenience of the parties and witnesses.**

Consolidation of the Patent Cases will serve the convenience of the parties and the
witnesses by eliminating duplicative discovery. *See In re Cenco Inc. Securities Litigation*, 434
F. Supp. 1237, 1239 (J.P.M.L. 1977) (stating that consolidation would "ensure the prevention of
duplicative discovery . . . and thereby best promote the just and expeditious termination of this
litigation"). Due to the large number of common factual and legal issues, a tremendous amount
of overlap and duplicative discovery is likely to occur in the Patent Cases.

For example, as described in Part III.A., *supra*, the parties in the various Patent Cases
will likely attempt multiple depositions of the same witnesses on essentially the same topics.
However, it would be wasteful and unduly harassing to allow witness after witness to be deposed
in case after case on substantially the same issues. Similarly, repetitive and overlapping written
discovery will be required absent consolidation.

Considering the nature of the claims in the Patent Cases, potentially thousands of the
same documents will likely be requested in all the cases, and several similar discovery disputes
are likely to arise. It would be extremely inconvenient and wasteful to repeatedly relitigate the
same discovery issues and objections before different judges in different districts across the
country. Consolidation of the cases would virtually eliminate this duplicative discovery (and the
duplicative discovery disputes), thus serving the convenience of the parties and witnesses.

## C.    Consolidation will promote the just and efficient conduct of the actions.

Consolidation of the Patent Cases is appropriate because it will also promote the efficient and consistent conduct of the actions. It will: enable an efficient and consistent resolution of the many pretrial issues that these cases have in common with each other; avoid having multiple courts resolve many of the same legal issues based upon similar factual backgrounds; eliminate the need for multiple courts to resolve the same discovery disputes; and prevent duplicative discovery and depositions of the same witnesses. In short, consolidation and coordination pursuant to 28 U.S.C. § 1407 will provide the most feasible means of managing all the Patent Cases. Hence, it will be in the interests of judicial economy and efficiency to have the Patent Cases resolved in a single MDL proceeding.

These cases are likely to involve many similar legal and dispositive issues that can be better addressed by a single judge in a consolidated MDL proceeding. It is probable that Citi will file motions for summary judgment involving similar issues in the cases in the two Patent Cases in which it is involved. Similarly, it is likely that other issues and non-dispositive motions will be common to these cases. Thus, rather than having four separate courts become familiar with the same or similar sets of facts and corporate background, it would be more efficient to consolidate this matter before one court. Furthermore, it will prevent the possibility of inconsistent rulings on the same issues. *See In re First National Bank, Heavner, Oklahoma Sec. Litig.*, 451 F. Supp. 995, 997 (J.P.M.L. 1978) (consolidation ordered to "eliminate the possibility of inconsistent pretrial rulings").

## D.    The District of Delaware provides the most convenient forum.

Citi believes that the District Court of Delaware would be the most appropriate transferee court to handle the Patent Cases. This litigation involves a commercial patent dispute among

corporate entities. Many of the primary litigants are Delaware corporations or other commercial

entities organized under Delaware law, including:

    a.    LPL Licensing, which purports to own the exclusive rights to license the Patents;

    b.    Citigroup, Inc.;

    c.    Citicorp Credit Services, Inc.;

    d.    Discover Financial Services, Inc.;

    e.    Discover Bank;

    f.    GMAC Mortgage, LLC; and

    g.    Direct Response Corporation.

This Panel has previously recognized, and Citi agrees, that the District Court of Delaware is

well-suited to handle litigation of this nature and is conveniently located near major metropolitan

airports and business centers. *See supra* p. 2 (citing cases).

Alternatively, the district courts in Chicago and Phoenix would also be appropriate

transferee courts. Chicago has the advantage of being centrally located in a major metropolitan

area and financial center. Moreover, several of the parties have their principal places of business

in Illinois or are otherwise organized under Illinois law. These companies include:

    a.    State Farm Mutual Automobile Insurance Company;

    b.    State Farm Bank, F.S.B.

    c.    Warner Insurance Corporation;

    d.    Discover Products, Inc.; and

    e.    Discover Financial Services, Inc.

Phoenix, Arizona would also be a potential transferee venue because the alleged owner of

the Patents, Phoenix Licensing, and the alleged exclusive licensee of the Patents, LPL Licensing,

both have their principal place of business there. Additionally, three of the six Patent Cases are already pending there, including the first filed Patent Case.

The district court in Marshall, Texas, in contrast, would not be an appropriate transferee court because it does not have a significant nexus to any of the parties or the common issues in the Patent Cases. None of the parties have their principal offices in the Eastern District of Texas, and some have no office at all in the state of Texas. To the extent any of the parties do have a corporate office in the state, the closest such office is in the Dallas/Fort Worth area, which is a 150-mile drive from Marshall. Moreover, the court in Marshall is currently backlogged with a flood of patent cases that have been recently filed in the Eastern District of Texas, and Marshall is not located in a major metropolitan area. On the contrary, Marshall is a small town in eastern Texas that is over 150 miles from the nearest major airport in Dallas/Fort Worth. Although LPL and Phoenix Licensing have chosen to file a lawsuit there for apparent tactical reasons, none of the parties has a significant presence there, and LPL and Phoenix Licensing only filed suit there after first being sued in their own home state of Arizona by State Farm Mutual.

## IV.
## CONCLUSION

The six Patent Cases that are currently pending in four different jurisdictions across the country involve common and complex issues of fact. Principles of efficiency and convenience dictate that they be consolidated for pretrial proceedings. The United States District Court for the District of Delaware would provide the most appropriate forum for such pretrial proceedings, and the district courts in Chicago and Phoenix would provide the second and third most appropriate alternatives, respectively. The Eastern District of Texas has no significant nexus to the parties or the common issues, so it would not provide an appropriate forum.

WHEREFORE, PREMISES CONSIDERED, Citi respectfully requests that its Motion to

Consolidate and Transfer under 28 U.S.C. § 1407 be granted, and that it be awarded such other

and further relief to which it may be justly entitled.

Dated:  October 24, 2007.

Respectfully submitted,

EDWIN R. DEYOUNG
  Texas State Bar No. 05673000
LOCKE LORD BISSELL & LIDDELL LLP
2200 Ross Avenue, Suite 2200
Dallas, Texas  75201
(214) 740-8000 Telephone
(214) 740-8800 Facsimile

**ATTORNEYS   FOR   CITIBANK,   N.A.,
CITIBANK USA, N.A., CITIBANK (SOUTH
DAKOTA), N.A., CITIMORTGAGE, INC.,
CITIGROUP,   INC.,   CITI   ASSURANCE
SERVICES, INC., AND CITICORP CREDIT
SERVICES, INC.**