# THE BAYARD FIRM
### A T T O R N E Y S

222 DELAWARE AVENUE, SUITE 900
P.O. BOX 25130
WILMINGTON, DE 19899
ZIP CODE FOR DELIVERIES: 19801

ᵐ MERITAS LAW FIRMS WORLDWIDE
www.bayardfirm.com
302-655-5000
(FAX) 302-658-6395
WRITER'S DIRECT ACCESS

ORIGINAL BY HAND

(302) 429-4208
rkirk@bayardfirm.com

December 7, 2007

Dr. Peter T. Dalleo, Clerk of District Court
U.S. District Court for the District of Delaware
844 North King Street, Room 4209
Wilmington, DE 19801

> **Re:** **Citicorp Credit Services, Inc. v. LPL Licensing, LLC
> and Phoenix Licensing, L.L.C.
> C.A. No. 07-649(JJF)**

Dear Dr. Dalleo:

Attached please find a copy of a letter from my colleague Sean A. Luner to the Clerk of the Judicial Panel on Multidistrict Litigation in MDL Docket No. 1910. It relates to the action Citicorp Credit Services, Inc. v. LPL Licensing, L.L.C., et al., C.A. N. 07-649-JJF.

Please contact me if you have any questions.

Respectfully submitted,

Richard D. Kirk (rk0922)

RDK/tn
Enclosure
cc: Rodger Smith, Esquire

{00705728;v1}

# DOVEL & LUNER
LLP

201 Santa Monica Blvd.
Suite 600
Santa Monica,
California 90401
TEL 310.656.7066
FAX 310.656.7069

December 3, 2007

**Via Hand Delivery**

Jeffrey N. Lüthi
Clerk of the Panel
Judicial Panel on Multidistrict Litigation
Thurgood Marshall Federal Judiciary Building
One Columbus Circle, NE, Room G-255, North Lobby
Washington, DC 20002-8004

Re: MDL Docket No. 1910 – In Re: Phoenix Licensing, L.L.C., Patent Litigation.

Dear Mr. Lüthi:

Enclosed please find an original and five copies of the following:

1. LPL Licensing, L.L.C. and Phoenix Licensing, L.L.C.'s Response to Citi Parties' Motion to Consolidate and Transfer;

2. LPL Licensing, L.L.C. and Phoenix Licensing, L.L.C.'s Reasons Why Oral Argument Should Be Heard;

3. Proof of Service; and

4. A disk containing PDFs of the above documents pursuant to JPML Rule 5.13(b).

Please file the above with the MDL Panel and return the extra file-stamped copy to me in the enclosed, self-addressed return envelope.

If you have any questions or concerns, please do not hesitate to contact me.

Regards,

Sean A. Luner



# DOVEL & LUNER
LLP

cc:     **<u>Via First Class Mail</u>**

Clerk, District of Arizona (Phoenix)
Sandra Day O'Connor US Court
401 W. Washington Street, Suite 130, SPC 1
Phoenix, AZ 85003-2118

Clerk, District of Delaware (Wilmington)
844 N. King Street, LB 18
Wilmington, DE 19801

Clerk, Northern District of Illinois (Chicago)
Everett McKinley Dirksen Building
219 S. Dearborn Street
Chicago, IL 60604

Clerk, Eastern District of Texas (Marshall)
100 E. Houston Street, Room 125
Marshall, TX 75670

R. William Beard, Jr.
BAKER & BOTTS LLP
1500 San Jacinto Center
98 San Jacinto Blvd.
Austin, TX 78701-4287

David S. Bloch
WINSTON & STRAWN LLP
101 California Street
39th Floor
San Francisco, CA 94111

Edwin R. DeYoung
LOCKE LORD BISSELL & LIDDELL LLP
2200 Ross Avenue
Suite 2200
Dallas, TX 75201

William R. Hansen
LATHROP & GAGE LC
230 Park Avenue
Suite 1847
New York, NY 10169



# DOVEL & LUNER
LLP

Gregory K. Haynes
WYATT TARRANT & COMBS LLP
PNC Plaza, Suite 2800
500 W. Jefferson Street
Louisville, KY 40202-2898

Rachel Krevans
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105

William C. Rooklidge
HOWREY LLP
2020 Main Street
Suite 1000

Chase Manhattan Mortgage Corporation
C/O CT Corporation System
350 N. St. Paul St.
Dallas, TX 75201

GMAC Mortgage, L.L.C.
C/O Corporation Service Company
701 Brazos St., Suite 1050
Austin, TX 78701

GMAC Insurance Marketing, Inc.
C/O CT Corporation System
350 N. St. Paul St.
Dallas, TX 75201

GMAC Bank
C/O Corporation Service Company
701 Brazos St., Suite 1050
Austin, TX 78701

JP Morgan Chase Bank
C/O CT Corporation System
350 North St. Paul Street
Dallas, TX 75201

**BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| IN RE: Phoenix Licensing, L.L.C., Patent Litigation | MDL Docket No. <u>1910</u> |
|---|---|

**LPL Licensing, L.L.C. and Phoenix Licensing, L.L.C.'S
<u>Response to Motion to Consolidate and Transfer</u>**

**I.    Introduction.**

     The patent infringement action and declaratory relief actions addressed in this motion involve three patents[1] owned by Phoenix Licensing, LLC ("Phoenix") and exclusively licensed to LPL Licensing, LLC ("LPL").

     LPL and Phoenix ("Plaintiffs") brought infringement claims against 26 entities ("Defendants") in the Eastern District of Texas (the "Texas Action").  Exh. 1.  The Defendants knew that this district was an appropriate forum for resolving the patent disputes and that bringing a motion to transfer the Texas Action to another forum would likely fail.  As a result, certain Defendants artificially un-consolidated this action into various forums by filing, what they describe as, "numerous declaratory judgment actions across the nation" (Exh. 2. at 3), so

---

[1]    United States Patent Nos. 5,987,434, 6,076,072, and 6,999,938 (the "Patents").  *See* Exh. 1 at 2 -3.  The Patents relate to technologies that allow companies, such as financial and insurance institutions, to perform customer-centric marketing by automatically providing individualized products to appropriate customers selected from a group of customers.

that they could then move this Panel to re-consolidate the action, but in a forum other than Texas.

Specifically, after the Plaintiffs filed the Texas Action, Movant Defendant Citigroup's wholly-owned subsidiary, Citicorp, filed a declaratory judgment lawsuit in Delaware as to the Patents, while related entities of three other Defendants in the Texas Action filed similar declaratory relief actions in Illinois and Arizona. *See* Luner decl. ¶5. A few days later, the Citi entities moved this Panel to consolidate the Texas Action and the various declaratory relief actions in any place but Texas. *See* Luner decl. ¶6.

Citi and certain other Defendants are attempting to use their declaratory relief lawsuits as part of a coordinated plan to artificially create a multiplicity of lawsuits and misuse the multi-district litigation procedure to attempt to work a change of venue (to a jurisdiction they perceive as more favorable) that they could not obtain using proper procedures. In doing so, Defendants are wasting judicial resources in three different districts and of this Panel. The multi-district statute was designed to consolidate actions filed by plaintiffs across the country, resulting in a multiplicity of lawsuits, to promote efficient justice. S. Rep. No. 454, 90th Cong., 1st Sess. 2 (1967) ("the main purpose of transfer for consolidation or coordination of pretrial proceedings is to promote the ends of efficient justice").[2] The statute was not designed to address artificially created lawsuits where (1) each action is *duplicative* (that is, each declaratory relief action was filed when the Defendants knew that the subject of the declaration was already being addressed

---

[2] Under the statute, patent cases are generally consolidated when a plaintiff patent holder files various patent actions across the country. *See, e.g., In re Triax Co. Patent Litigation*, 385 F. Supp. 590, 591 (J.P.M.L. 1974) (the plaintiff patent holder "commenced three patent infringement actions" against three defendants in different districts). No declaratory relief cases have been consolidated when all of the parties are already part of a single lawsuit and where defendants had their affiliated companies file declaratory relief actions across the country and request the Panel to consolidate them in a jurisdiction other than the plaintiff's choice.

in the Texas Action or, in one case, was imminent); and (2) each declaratory relief action should be dismissed for lack of subject matter jurisdiction. *See* Luner decl. ¶8. The Texas Action already includes all parties and issues. Any multiplicity is a mirage.

Defendants' abuse of the judicial system should be rejected and this motion should be denied because:

- Defendants are misusing Section 1407 for an ulterior motive – to transfer the Texas Action out of Texas to what they perceive as a more favorable jurisdiction;

- granting the motion would create a precedent for parties to waste party and judicial resources – exactly what Section 1407 was designed to prevent; and

- consolidating would not (1) promote the just and efficient conduct of the actions, or (2) serve the convenience of the parties and witness.

Alternatively, if the Panel is not inclined to deny this motion, it should stay its decision pending the Plaintiffs' motions to dismiss the various declaratory relief actions on jurisdictional grounds.

Finally, if the Panel were to consolidate the Texas Action and declaratory relief actions at this time, the actions should be consolidated in the Eastern District of Texas.

## II.    This motion should be denied because Defendants are attempting to misuse Section 1407 for an ulterior motive – a change in venue.

A 1407 motion should be denied if the moving party is not using the statute to promote efficiency and consistency but rather for an ulterior motive, such as changing venue. *In re Highway Accident Near Rockville, Conn., On Dec. 30, 1972*, 388 F. Supp. 574, 576 (J.P.M.L. 1975) ("There is an additional and equally compelling reason for denying the requested transfer. In our view, plaintiff's request for transfer is not motivated by a desire to achieve the purposes

for which Section 1407 was designed, but rather, by a desire to circumvent obstacles of personal

jurisdiction which necessitated her institution of two separate actions. . . . it appears that in this

particular litigation plaintiff's ulterior motive for seeking transfer amounts to an attempted

misuse of the statute." (emphasis added)); *In re Truck Accident Near Alomongordo, New Meis,*

*on June 18, 1969*, 387 F. Supp. 732, 734 (J.P.M.L. 1975) ("Furthermore, in light of the history of

this litigation we suspect that plaintiffs' dominant reason for seeking transfer of the Texas

actions under Section 1407 is to accomplish, at least for pretrial purposes, what is not otherwise

possible . . . plaintiffs' ulterior motive for seeking transfer amounts to an attempted misuse of the

statute. (emphasis added)).  In particular, a Section 1407 motion should be denied if a moving

party is misusing the multi-district litigation procedures in an attempt to obtain a change of

venue. *In re "East of the Rockies" Concrete Pipe Antitrust Cases*, 302 F. Supp. 244, 255-256

(J.P.M.L. 1969) (Weigel, J., concurring) (a factor for denying a motion is whether the "transfer

serve any ulterior motive of any party or parties, such as forum-shopping").

       That Defendants filed their declaratory relief actions not to promote efficiency but

rather for an ulterior motive – to transfer the Texas Action out of Texas – is demonstrated by the

following:

       First, we know that Defendants have an ulterior motive for un-consolidating the

Texas Action and then requesting that this Panel re-consolidate the action in any forum other

than Texas because Defendants' actions are inconsistent with their stated motive.  While a

party's true motive and stated motive may differ, a party's true motive will be consistent with,

and therefore apparent from, its actions.  Accordingly, when a party's actions are inconsistent

with its stated motive, we know that the party's stated motive is fabricated and that the party has

an ulterior motive.  Indeed, because a defendant is unlikely to admit to an ulterior motive, the

defendant's actions are the best evidence of its true motive.

Defendants state that their motives for bringing multiple declaratory relief actions and then requesting that these actions be consolidated and transferred for pre-trial purposes are: to promote the "efficient and consistent conduct of the actions," to "avoid having multiple courts" involved, and to promote "the interests of judicial economy." Mot. at 9. Defendants' actions, however, are totally inconsistent with these goals, as illustrated by considering which of the two alternatives Defendants chose to pursue:

| Choice 1 | Choice 2 |
|---|---|
| Litigate all pre-trial matters and have trial in a single action – the Texas Action (which already includes all parties and issues). | Un-consolidate the Texas Action by filing multiple declaratory relief actions and moving to re-consolidate the actions for pre-trial only in another forum. |
| One judge involved – Judge Ward. | Seven judges involved (judges in Texas, Delaware, Arizona, Illinois, and three on this Panel). |
| One trial. | Six trials. |
| No resources involved in consolidating, transferring, and remanding any actions. | Significant resources in consolidating, transferring, and remanding the various actions.[3] |

- Which choice would "promote the interest of judicial economy" – having one judge handle the entire case or having seven judges involved in six separate trials; wasting no judicial resources on venue issues or using significant judicial resources to un-consolidate and then attempting to re-consolidate?

- Which choice would "avoid having multiple courts" involved – having one judge handle the entire case or having seven judges involved and six different trials in four different

---

[3] "Considerable time and trouble are involved in the sheer mechanics of transferring and remanding." *In re Concrete Pipe*, 302 F. Supp. 244, 254 (J.P.M.L. 1969) (Weigel, J. concurring).

districts?

- And which choice would avoid inconsistent rulings – having one judge handle the entire case or having six separate trials?

What possible valid rationale, consistent with their stated objectives of efficiency and consistency, could the Defendants have for un-consolidating the action, then requesting to consolidate and transfer for pretrial activities but have six separate trials?  There is none.

Because Defendants' actions are completely opposed to their stated motives, we know that they have an ulterior motive.

Second, Defendants' actions further tell us what that ulterior motive is – to change venue out of Texas.  If Defendants, in response to the Texas Action, filed various declaratory relief actions and proposed that they be consolidated and transferred to any jurisdiction (*i.e.* including Texas), Defendants' actions would not demonstrate that Defendants had an ulterior motive to transfer venue (although one would still question the logic of engaging in such a waste of resources).  If, on the other hand, Defendants proposed to transfer and consolidate the cases in any jurisdiction other than where Plaintiffs filed their action, this would demonstrate the Defendants' ulterior motive to transfer the case to a preferred venue, especially when the district where the Plaintiffs' action pending (a) already includes all of the parties, and (b) is just as appropriate if not more appropriate than the alternative proposed districts.[4]  Here, according to Defendants, "the District Court of Delaware would be the most appropriate transferee district . . . the district courts in Northern District to Illinois and the District of Arizona would be the second and third most appropriate transferee districts," but, "the Eastern District of Texas would not be appropriate."  Mot. at 2-3.  Stating that all districts, other than the Plaintiffs' chosen

---

[4]     As demonstrated below in Section VI, the Eastern District of Texas is not only an appropriate form, it is the most appropriate.

forum, are appropriate demonstrates that Defendants are bringing this motion for an ulterior

motive –to transfer this case out of Texas.

Transferring multiple related actions to a single district for consolidated pretrial

proceedings serves an important purpose – to resolve cases where numerous actions are filed in

multiple districts by victims of a common alleged wrong, and where coordinated discovery will

facilitate the just and expeditious resolution of all actions to the overall benefit of all parties.

This is not such a case. Here, there was no multiplicity of actions until Defendants artificially

created such actions by filing their declaratory judgment actions to facilitate their true goal of

obtaining a change of venue. This, without more, is a "compelling reason for denying the

requested transfer." *In re Highway Accident Near Rockville, Conn., On Dec. 30, 1972*, 388 F.

Supp. 574, 576 (J.P.M.L. 1975).

### III.    These cases should not be consolidated and transferred because doing so would create a strong incentive to waste party and judicial resources.

A motion under Section 1407 should be granted if doing so will "conserve the

resources of the parties, their counsel and the judiciary." *In re Am. Investors Life Ins. Co.*

*Annuity Mktg. & Sales Practices Litig.*, 398 F. Supp. 2d 1361, 1362 (J.P.M.L. 2005).

Conversely, a motion should not be granted if it creates strong incentives for defendants to waste

resources of the parties, their counsel, and the judiciary.

If patent defendants are sued in a jurisdiction that they perceive as unfavorable

and believe that (a) they could not lawfully change venue using proper procedures, but (b) an

opportunity exists to achieve a transfer by un-consolidating the action and then attempting to re-

consolidate it in another forum, then they have a strong incentive to pursue this tactic. This is

particularly true when procedural maneuvering will also add months of delay to the process. As

demonstrated above, this tactic will result in exactly what the statute is designed to prevent – an enormous waste of party and judicial resources on procedural maneuvering, coupled with potential inconsistent rulings at multiple trials.

Consequently, consolidating and transferring this case would create a strong incentive for other patent defendants to employ the same tactic in every multi-defendant case. This would only multiply the waste of "resources of the parties, their counsel and the judiciary," in direct contravention of Section 1407. *In re Am. Investors Life Ins. Co. Annuity Mktg. & Sales Practices Litig.*, 398 F. Supp. 2d 1361, 1362 (J.P.M.L. 2005). Accordingly, this motion should be denied.

**IV.    Transfer should be denied because it will not (1) promote the just and efficient conduct of the actions, or (2) serve the convenience of the parties and witnesses.**

To consolidate and transfer, Citi must establish:

- the existence of common questions of facts that predominate and that are complex, unresolved, and numerous;

- that transfer will serve the convenience of parties and witnesses; and

- transfer will promote the just and efficient conduct of such actions.

28 U.S.C. 1407; *In re Georgegeson Shareholder Communications, Inc. Share Exchange Litig.*, 277 F.Supp. 2d 1372 (J.P.M.L. 2003).[5] The Panel should deny transfer if movants fail to meet any one of these criteria, or if it determines that the disadvantages of centralization outweigh the advantages. *In re G.D. Searle & Co. "Copper7" IUD Prod. Liability Litigl*, 483 F. Supp. 1343,

---

[5]    The cases at issue here involve common questions of fact because there were all un-consolidated from the same action – the Texas Action. Finding common questions is a prerequisite but is not determinative of whether there should be transfer. *In re Cessna Aircraft Distriburship Antitrust Litigation*, 460 F. Supp. 159, 161-62 (J.P.M.L. 1978) ("While we recognize the existence of common questions of fact . . . a mere showing that such questions exist is not sufficient, in and of itself, to warrant transfer by the Panel.")

1345 (J.P.M.L. 1980). The movants have the burden of establishing these criteria. *In re 21st Century Productions, Inc. "Thrilsphere" Contract Litigation*, 448 F. Supp. 271, 273 (J.P.M.L. 1978) ("the movants are under a heavy burden. . . . We rule that movants have not met that burden."). Citi's motion fails to establish two of these criteria.

First, a motion should be denied where "Section 1407 centralization would [not] further the just and efficient conduct of this litigation." *In re Solaia Technology LLC Patent & Antitrust Litigation*, 346 F. Supp. 2d 1373 (J.P.M.L. 2004). The greatest efficiency results from a single trial, not from merely consolidating pre-trial proceedings. Under the multi-district litigation statute, cases consolidated by the Panel for coordinated pretrial proceedings are remanded to their original district for trial on the merits. 28 U.S.C. § 1407(a); *In re Great Western Ranches Litigation*, 369 F. Supp. 1406 (J.P.M.L. 1974) ("Transfer under Section 1407 is only for coordinated or consolidated pretrial proceedings."). Accordingly, if the district courts in this case are permitted to hear and grant the pending motions to dismiss the declaratory relief actions based on (1) lack of subject matter jurisdiction, and (2) the first-to-file rule, this will leave a single proceeding with all parties and issues in the Texas Action. *See* Section V below. Allowing the district courts to dismiss the various declaratory relief actions is the best way to "spare the parties the burden of litigating the same facts twice and . . . promote judicial economy." *In re Highway Acci. near Rockville,* 388 F. Supp. 574, 575 (J.P.M.L. 1975). By contrast, consolidating these actions for pre-trial and then conducting up to six separate trials would not.

Second, a motion to transfer should be denied where "Section 1407 centralization would [not] serve the convenience of the parties and witnesses." *In re Solaia Technology LLC Patent & Antitrust Litigation*, 346 F. Supp. 2d 1373 (J.P.M.L. 2004). Here, consolidating and

transferring the case for pre-trial purposes only would not convenience the parties and the witnesses. If the cases were consolidated and transferred, the parties and witnesses would still have to travel to Texas, Delaware, Illinois, and Arizona to participate in as many as six different trials. Alternatively, if the district courts dismiss the declaratory relief actions based on (1) lack of subject matter jurisdiction, and (2) the first-to-file rule, the parties and witnesses would only need to participate in one trial in the Texas Action, maximizing the convenience to the parties and witnesses.

Because the exact same issues and parties are already consolidated in the Texas Action and transfer will result in up to six separate trials, this is not a case where "the objectives of the statute are sufficiently served to justify the necessary inconveniences of transfer and remand." *In re Concrete Pipe*, 302 F. Supp. 244, 255 (J.P.M.L. 1969) (Weigel, J., concurring).

## V.     This transfer motion should be stayed pending the motions to dismiss the declaratory relief actions.

A motion to consolidate and transfer should be stayed to allow the underlying court to decide pending motions to dismiss, especially when such motions are based on lack of subject matter jurisdiction. *In re Kaehni Patent*, 311 F. Supp. 1342, 1344 (J.P.M.L. 1970) ("A motion to dismiss . . .the defendant in an action pending in the Northern District of Ohio, is presently pending before that court. Transfer of that action to the District of Maryland will be stayed; if the motion is granted, there of course will be no transfer."); *In re L. E. Lay & Co. Antitrust Litigation*, 391 F. Supp. 1054, 1056 (J.P.M.L. 1975) ("on principles of comity, we are reluctant to transfer any action that has an important motion under submission with a court"). This is because:

(a) if the motions to dismiss are granted, there will not be the requisite numerous

10

actions to transfer (*see* 28 U.S.C. § 1407, requiring "civil actions . . . pending in different districts); and

(b) if the district courts do not have subject matter jurisdiction over the declaratory relief actions, the Panel may not even have the ability to consolidate and transfer. *Ill. Mun. Ret. Fund v. Citigroup, Inc.*, 391 F.3d 844, 852 (7th Cir. 2004) ("We will not require a district court that believes that it lacks subject matter jurisdiction over a case to facilitate a transfer under § 1407, a statute that does not itself confer jurisdiction."); *see also Integrated Health Servs. of Cliff Manor, Inc. v. THCI Co.*, LLC, 417 F.3d 953, 957 (8th Cir. 2005) ("a court without subject matter jurisdiction cannot transfer a case to another court").

Each declaratory relief action has (or will have) a pending motion to dismiss:

- Plaintiffs filed a motion to dismiss the first Arizona action on September 4, 2007, based on lack of subject matter jurisdiction.  Exh. 3; Luner decl. ¶8.

- Plaintiffs filed a motion to dismiss the second Arizona action on October 31, 2007, based on lack of subject matter jurisdiction.  Luner decl. ¶8.

- Plaintiffs filed a motion to dismiss the Illinois declaratory relief action on November 14, 2007 based on (1) lack of subject matter jurisdiction, and (2) the first-to-file rule.  Exh. 4; Luner decl. ¶8.

- Plaintiffs filed a motion to dismiss the Delaware declaratory relief action on November 15, 2007 based on (1) lack of subject matter jurisdiction, (2) the first-to-file rule, and (3) personal jurisdiction.  Luner decl. ¶8.

- The third Arizona declaratory relief action was just served last Wednesday, November 28, 2007.   In response to this declaratory relief action, Plaintiffs will file a motion to dismiss based on (1) subject matter jurisdiction, and (2) the first-to-file rule. *Id.*

11

As demonstrated in each motion to dismiss (*see* Exh. 3 and 4), there is a very good likelihood that the motions to dismiss will be granted because subject matter jurisdiction over a declaratory relief action is discretionary, and must be denied when the action is peripheral to the purposes of the Declaratory Judgment Act. *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 814 (Fed. Cir. 1996); *MedImmune, Inc. v. Genentech, Inc.*, 127 S. Ct. 764, 776 (2007) (the declaratory judgment act "vest[s] district courts with discretion" to consider "facts bearing on the usefulness of the declaratory judgment remedy").

As to the four declaratory relief actions that were filed after the Texas Action, these actions should be dismissed based on:

- lack of subject matter jurisdiction (*Sony Elecs., Inc. v. Guardian Media Techs., Ltd.*, 497 F.3d 1271, 1284 (Fed. Cir. 2007) ("the Declaratory Judgment Act was intended to fix the problem that arises when the other side <u>does not sue</u>" not after a party has already sued (emphasis added));

- the first-to-file rule (*Pacesetter Systems, Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94-95 (9th Cir. 1982) (a district court should dismiss a second-filed lawsuit that is duplicative of an action involving similar parties and similar issues previously filed in another district); and

- forum shopping (*First Fishery Dev. Serv. v. Lane Labs USA*, 1997 U.S. Dist. LEXIS 11231 at *8-12 (S.D. Cal. 1997) ("[f]orum shopping is a concern . . . as between different federal courts . . . [c]ourts have discretion under the Declaratory Judgment Act, to prevent such 'procedural fencing. . . . This Court will not countenance such preemptive forum shopping.  Accordingly, the action will be dismissed.")).

12

The one declaratory relief action filed before the Texas Action should be dismissed because the "declaratory judgment plaintiff took advantage of the fact that [patentee] had deferred the filing of expensive and probably protracted litigation because of its belief that settlement negotiations were under way." *EMC*, 89 F.3d at 814 (internal quotes omitted); *Pacific Employers Ins. Co. v. M/V Capt. W.D. Cargill*, 751 F.2d 801, 804 (5th Cir. 1985) ("a proper factor to consider in dismissing a declaratory judgment suit is whether the suit was filed in anticipation of another and therefore was being used for the purpose of forum-shopping."); *see* Exh. 3.

Accordingly, if the Panel is not inclined to deny this motion, the Panel should stay its ruling on this motion so that each district court can dismiss its declaratory relief action.

**VI.    If the actions are consolidated, they should be consolidated in the Eastern District of Texas.**

Factors that the Panel should look to in selecting a transferee district include:

- which court would promote the most "efficient conduct of such actions" (28 U.S.C. § 1407);

- the plaintiff's choice of forum (*see In re Horseshoe Entm't*, 337 F.3d 429, 434 (5th Cir. 2003));

- the ability of the proposed forums to effectively conduct the consolidated action (*In re Compression Labs, Inc., Patent Litig.*, 360 F. Supp. 2d 1367, 1369 (J.P.M.L. 2005) (transferring docket to district that was "equipped with the resources" to effective conduct the litigation)); and

- the center of gravity of the litigation (*In re Wireless Tel. 911 Calls Litig.*, 259 F. Supp. 2d 1372, 1374 (J.P.M.L. 2003)).

These factors demonstrate that the Eastern District of Texas is the most appropriate forum for a

consolidated action.[6]

**A.      The Eastern District of Texas is appropriate because it is most efficient to have the pre-trial proceedings conducted in the one court that already includes all parties and issues.**

A fundamental goal of the multidistrict process is to "promote the just and efficient conduct of such actions." 28 U.S.C. § 1407; *In re Am. Investors Life Ins. Co. Annuity Mktg. & Sales Practices Litig.*, 398 F. Supp. 2d 1361, 1362 (J.P.M.L. 2005). Where a single case already includes all of the parties and issues, it is most just and efficient to consolidate the cases in that jurisdiction to promote just and efficient conduct. This is because, pursuant to Section 1407, after cases are consolidated for pretrial purposes, they are remanded to the various courts for trial. *Id.* It is most just and efficient for a court that will be trying the remanded case involving all of the parties to conduct the pretrial proceedings because that court will need to become familiar with all of the parties and issues for trial. On the other hand, it is not efficient for a court who will only be trying a case with three of 29 parties, to become familiar with all issues involving all 29 parties. *See In re Regents of Univ. of Cal.*, 964 F.2d 1128, 1136 (Fed. Cir. 1992) (transferring to the court with "the broader-based of these actions.")

Here, the Texas Action is the only action that already includes all 29 parties and the issues – no other case comes close. Exh. 1; Luner decl. ¶7. Each declaratory relief action includes only three parties – the Plaintiffs and the declaratory relief entity. Luner decl. ¶7.[7]

---

[6]     While the stage of the pretrial proceedings in the various courts is generally a factor to consider (*In re Cutter Laboratories, Inc. etc.*, 465 F. Supp. 1295, 1297 (J.P.M.L. 1979)) this factor does not apply in the analysis here because all of the actions are in their preliminary stages. Luner decl. ¶7.

[7]     Even if the District Court in Arizona consolidates the cases pending in Arizona, the consolidated case would still include only 6 of the 29 parties.

Accordingly, because it is most just and efficient to have the pretrial proceedings in the jurisdiction where the trial involving all of the parties will take place, the Eastern District of Texas is the appropriate forum.

**B.    The Eastern District of Texas is appropriate because it was the Plaintiffs' chosen forum.**

When considering where to transfer the cases, the Panel should consider the Plaintiffs' choice of forum. When choosing among venue options, a coercive plaintiff's choice is given deference:

Third Circuit: "[C]ourts generally defer to a plaintiff's choice of forum." *Telcordia Tech, Inc. v. Telkom SA Ltd*, 458 F.3d 172, 180 (3d Cir. 2006).

Fifth Circuit: "[I]t is clear under Fifth Circuit precedent that the plaintiff's choice of forum is clearly a factor to be considered." *In re Horseshoe Entm't,* 337 F.3d 429, 434 (5th Cir. 2003). "[T]his Court is extremely reluctant to disturb a plaintiff's venue choice." *Logan v. Hormel Foods Corp.*, 2004 U.S. Dist. LEXIS 30327 at *8 (E.D. Tex. 2004).

Ninth Circuit: "[T]he plaintiff's choice of forum is entitled to deference." *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1177 (9th Cir. 2006).

Seventh Circuit: "Unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *In re Bridgestone/Firestone, Inc.*, 420 F.3d 702, 704 (7th Cir. 2005) (internal quotations omitted).[8]

---

[8]    While a coercive plaintiff's preference applies to a patent holder who brings an infringing action, the preference does not apply to an alleged infringer who brings a declaratory relief action either in anticipation of an infringement lawsuit or after the coercive plaintiff files the infringement action. *Pertuit v. Youthspan, Inc.*, 2003 U.S. Dist. LEXIS 2316, *9-12 (E.D. La. 2003) (the 5th Circuit "recognizes an exception to the rule in cases where a plaintiff files suit for declaratory relief in anticipation of a lawsuit to be filed by the defendant."); *Texas Instruments*

It would be inappropriate to allow Defendants to circumvent this law by un-consolidating an action filed in the Plaintiffs' chosen venue and re-consolidating them in a different venue.

In this case, the Plaintiffs brought their coercive action in the Eastern District of Texas. Exh. 1. Accordingly, to avoid circumventing the law giving deference to Plaintiffs' choice of forum, this case should be consolidated in the Eastern District of Texas.

### C.    The Eastern District of Texas is appropriate because it can most efficiently handle the cases.

Cases should be consolidated in the Court that can best and most efficiently address the cases. 28 U.S.C. § 1407 (the statute is designed to "promote the just and efficient conduct of such actions."). Where one jurisdiction (a) has rules and procedures specifically designed to efficiently address the types of cases at issue, and (b) handles a large number of such cases, thereby becoming familiar with the issues associated with such cases, transfer the cases to that court will promote efficiency. *See In re Compression Labs, Inc., Patent Litig.*, 360 F. Supp. 2d 1367, 1369 (J.P.M.L. 2005) (transferring docket to district that was "equipped with the resources" to effectively conduct the litigation). Because the Eastern District of Texas (a) has rules and procedures specifically designed to efficiently address patent cases, and (b) has handled a large number of patent cases (especially Judge Ward who is presiding over the Texas Action), the cases should be consolidated in the Eastern District of Texas.

First, the Eastern District of Texas has local rules specifically addressing a patent

---

*Inc. v. Micron Semiconductor, Inc.*, 815 F. Supp. 994, 997 (E.D. Tex. 1999)) ("TI argues that actions for infringement traditionally take precedence over declaratory judgment actions, even where later-filed, based on the general policy that a party whose rights are being infringed should have the privilege of electing where to enforce its rights. Numerous cases support this conclusion."); *Tape & Techs. v. Davlyn Mfg. Co.*, 2005 U.S. Dist. LEXIS 8291 at *7 (W.D. Tex. 2005) ("[T]here is a general policy that a party whose rights are [apparently] being infringed should have the privilege of electing where to enforce its rights." (internal quotations omitted)).

infringement lawsuit.   The District of Arizona, Northern District of Illinois, and District of

Delaware do not.  "[T]his Court's Patent Rules . . . are designed to manage patent cases swiftly

and efficiently." *Network-1 Sec. Solutions, Inc. v. D-Link Corp.*, 433 F. Supp. 2d 795, 800 (E.D.

Tex. 2006) (emphasis added).  "The Court's Patent Rules are . . . enacted to effectuate an orderly

and efficient pretrial process." *STMicroelectronics, Inc. v. Motorola, Inc.*, 307 F. Supp. 2d 845,

849 (E.D. Tex. 2004) (emphasis added).  As a result of these Patent Rules, the Eastern District of

Texas has become an exceptionally sophisticated and efficient patent court.

Second, the Eastern District of Texas has effectively handled a large number of

patent cases and, as a result, judges in this district have become experts in litigating patent cases,

such as handling claim conduction procedures and issuing claim construction orders. *Network-1*,

433 F. Supp. 2d at 801 ("this Court does have extensive experience with patent litigation.").

Based on (a) the Patent Rules, and (b) the District's experience handling patent

cases, both the District of Arizona and the Eastern District of Texas recognize that the Eastern

District of Texas is a preferred venue for addressing a patent dispute:

District of Arizona: "[We consider] the Eastern District of Texas' adoption of special

rules for patent infringement actions, which streamline discovery, claim construction and other

pre-trial matters.  While any United States District Court, including this one, can afford all

parties the timeliness, fairness, justice and competence required to resolve their patent disputes,

the Court is persuaded that the Eastern District of Texas' special rules will most efficiently

promote sound judicial administration." *Cingular Wireless LLC v. Freedom Wireless, Inc.*, 2007

U.S. Dist. LEXIS 47957 at n.3 (D. Ariz. 2007) (emphasis added).

Eastern District of Texas: *Network-1*, 433 F. Supp. 2d at 801 ("this Court does have

extensive experience with patent litigation.  As already discussed, this Court has adopted special

<u>rules and procedures</u> to <u>efficiently manage these cases,</u> allowing it to move patent cases to a <u>relatively prompt and efficient resolution.</u>" (emphasis added)).

Accordingly, if these cases are consolidated, they should be consolidated in the court that can handle them with the rules and "extensive experience" to handle them most efficiently – the Eastern District of Texas.[9]

Citi argues that the Eastern District of Texas would be inappropriate because it is "backlogged." Mot. at 11. Citi is wrong, as the Eastern District of Texas has itself recently and repeatedly found. *Network-1*, 433 F. Supp. 2d at 800-801 ("this Court is rarely beset with issues of congestion"); *VCode Holdings, Inc. v. Cognex Corp.*, 2007 U.S. Dist. LEXIS 56672 at *10 (E.D. Tex. 2007) ("Neither party has shown that either Court is so congested as to affect this analysis"); *Weinstein v. UGS Corp*, 2007 U.S. Dist. LEXIS 78239 at * 11 (E.D. Tex. 2007) ("Neither party is aware of any administrative difficulties flowing from the Eastern District of Michigan and not the Marshall Division of the Eastern District of Texas.").

### D.    The Eastern District is appropriate because it is centrally located.

In general, a case should be consolidated in a centrally located district. *In re Library Editions of Children's Books*, 297 F. Supp. 385, 387 (J.P.M.L. 1968) ("the litigation's center of gravity was Chicago."); *In re Wireless Tel. 911 Calls Litig.*, 259 F. Supp. 1372, 1374 (J.P.M.L. 2003) (transferring to "this geographically central location"). In a patent case,

---

[9]    Moreover, while all judges in the Eastern District of Texas are well versed in patent cases, Judge Ward, who is handling the Texas Action, has experience in handing both MDL and patent cases. *See In re Fleming Cos. Inc. Secs. & Derivative Litig.*, 370 F. Supp. 2d 1352, 1353 (J.P.M.L. 2005) ("assigned to the Honorable T. John Ward"); *In re Educ. Testing Serv. Plt 7-12 Test Scoring Litig.*, 350 F. Supp. 2d 1363, 1365 (J.P.M.L. 2004) ("Panel to assign this litigation to an available transferee judge with prior, successful experience in the management of Section 1407 litigation.").

where infringement takes place nationwide and the defendants are located across the country, the center of gravity is a central location in the country. *See In re "Factor VIII or IX Concentrate Blood Prods." Prods. Liab. Litig.*, 853 F. Supp. 454, 455 (J.P.M.L. 1993) (transferring to the "geographically central location for this nationwide litigation"); *In re Rio Hair Naturalizer Prods. Liab. Litig.*, 904 F. Supp. 1407, 1408 (J.P.M.L. 1995) (the selected district "provides a geographically central location for this nationwide litigation").

Here, because the parties and the infringements are scattered throughout the country, the geographic center of the claims is the Eastern District of Texas:



*See* exh. 1 at 3-8; Luner decl. ¶9. Accordingly, Texas is the most geographically central location and is most appropriate. *In re Library Editions of Children's Books*, 297 F. Supp. 385, 387 (J.P.M.L. 1968) ("although air travel renders both California and New York readily accessible, there is still something to be said for the convenience of a geographically central forum in coast-to-coast litigation."); *In re Regents of Univ. of Cal.*, 964 F.2d 1128, 1136 (Fed. Cir. 1992)

("centrally located forum for witnesses located throughout the world and for counsel located on both coasts of the United States").

   *   *   *

   All of the relevant factors demonstrate that the Eastern District of Texas is the most appropriate forum for a consolidated action.

## VII. Conclusion.

   This motion should not be granted.  If the cases are consolidated and transferred, it should be in the Eastern District of Texas.


Dated: December 3, 2007     Respectfully submitted,


             Sean A. Luner
             Cal State Bar No. 165443
             Dovel & Luner, LLP
             201 Santa Monica Blvd., Suite 600
             Santa Monica, CA 90401
             Telephone: (310) 656–7066
             Facsimile: (310) 656–7069
             Email:  sean@dovellaw.com
             ATTORNEY FOR LPL LICENSING, L.L.C.
             AND PHOENIX LICENSING, L.L.C.

**BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: Phoenix Licensing, L.L.C., Patent Litigation | MDL Docket No. 1910 |

**<u>Declaration of Sean Luner</u> in support of LPL Licensing, L.L.C. and Phoenix
Licensing, L.L.C.'S
<u>Response to Motion to Consolidate and Transfer</u>**

I, Sean Luner, hereby declare:

       1.    I am a partner at the law firm of Dovel & Luner, LLP.  I submit this declaration in support of Plaintiffs' Response to the Citi Parties' motion to Consolidate and Transfer Under 28 U.S.C. § 1407.  I represent LPL Licensing, LLC ("LPL") and Phoenix Licensing, LLC ("Phoenix") (collectively "Plaintiffs") in the patent lawsuit filed by Plaintiffs in the Eastern District of Texas (the "Texas Action") as well as the various declaratory relief cases that have been filed by the defendants in the Texas Action against Plaintiffs.  I have personal knowledge of all matters referred to and if called upon to do so, could and would testify truthfully to them.

2.      Attached to this declaration as <u>Exhibit 1</u> is a true and correct copy of the First Amended Complaint in the Texas Action, filed by LPL and Phoenix in the Eastern District of Texas on November 8, 2007.

3.      Attached to this declaration as <u>Exhibit 2</u> is a true and correct copy of relevant pages from Defendant Discover's Motion In Lieu of Answer to Compliant for Patent Infringement, filed in the Texas Action, dated November 9, 2007.

4.      State Farm Mutual Automobile Insurance Company ("State Farm Mutual") originally filed an action against LPL and Phoenix back on July 10, 2007. LPL and Phoenix believe that filing this action was inappropriate and filed a motion to dismiss this case for lack of subject matter jurisdiction. This motion has not yet been ruled on but rather is currently pending. Attached to this declaration as <u>Exhibit 3</u> is a true and correct copy of the Motion to Dismiss for Lack of Subject Matter Jurisdiction filed by LPL and Phoenix in the District of Arizona on September 4, 2007.

5.      After LPL and Phoenix filed their original complaint in the Texas Action, related entities of certain defendants filed four separate actions in three jurisdictions around the country:

- On October 4, 2007, six weeks after LPL and Phoenix filed the Texas Action, State Farm Bank, a defendant in the Texas Action, filed a declaratory relief action in the District of Arizona.

- On October 11, 2007, six weeks after LPL and Phoenix filed the Texas Action, Discover Products, Inc., an entity related to the Discover entities in the Texas Action action, filed a declaratory relief action in the Northern District of Illinois.

- On October 12, 2007, over six weeks after LPL and Phoenix filed the Texas Action, United Services Automobile Association, an entity related to the USAA entities in the Texas Action, filed a declaratory relief action in the District of Arizona.

- On October 17, 2007, six weeks after LPL and Phoenix field the Texas Action, Citicorp, an entity related to the Citi entities in the Texas Action, filed a declaratory relief action in the District of Delaware.

6.     On October 24, 2007, the Citi entities field a motion under 28 U.S.C. § 1407 before the Judicial Panel on Multidistrict Litigation to consolidate the Texas Action and the various declaratory relief actions.  In their motion, the Citi entities argue that (a) as a result of the various declaratory relief actions, the cases should be consolidated, and (b) the cases should be consolidated in any jurisdiction other than Texas where the Texas Action was filed.

7.     The chronology for and parties involved in the various lawsuits is:

- **July 10, 2007**: *State Farm Mutual Automobile Insurance Company v. LPL Licensing, L.L.C., et al.*; District of Arizona (Phoenix), CA No. 2:07-cv-1329-MHM (includes 3 of the 29 parties – the Plaintiffs and one State Farm entity);

- **August 31, 2007**: *Phoenix Licensing, L.L.C., et al. v. Chase Manhattan Mortgage, et al.*; Eastern District of Texas (Marshall), CA No. 2:07-cv-11387-TJW-CE (this action includes all 29 parties);

- **October 4, 2007**: *State Farm Bank, F.S.B. v. LPL Licensing, L.L.C., et al.*; District of Arizona (Phoenix), CA No. 2:07-cv-1895-HRH (includes 3 of the 29 parties – the Plaintiffs and one State Farm entity);

- **October 11, 2007**: *Discover Products, Inc. v. Phoenix Licensing, L.L.C., et al.*; Northern District of Illinois (Chicago), CA No. 1:07-cv-5776-JBM (includes 3 of the 29 parties – the Plaintiffs and one Discover entity);

- **October 12, 2007**: *United States Automobile Association v. LPL Licensing, L.L.C., et al.*; District of Arizona (Phoenix), CA No. 2:07-cv-1968-FJM (includes 3 of the 29 parties – the Plaintiffs and one USAA entity);

3

- **October 17, 2007**: *Citicorp Credit Services, Inc. v. LPL Licensing, L.L.C., et al.*; District of Delaware (Wilmington), CA No. 1:07-cv-649-JJF (includes 3 of the 29 parties – the Plaintiffs and one Citi entity).

None of these actions is yet at issue. Answers have only been filed in the Texas Action.

       8.      LPL and Phoenix filed motions to dismiss each of the various declaratory relief actions based on lack of subject matter jurisdiction, lack of personal jurisdiction, the first-to-file rule:

- Plaintiffs filed a motion to dismiss the first Arizona declaratory judgment action on September 4, 2007, based on lack subject matter jurisdiction.

- Plaintiffs filed a motion to dismiss the second Arizona declaratory judgment action on October 31, 2007, based on lack subject matter jurisdiction.

- Plaintiffs filed a motion to dismiss the Illinois declaratory judgment action on November 14, 2007 based on (1) lack of subject matter jurisdiction, and (2) the first-to-file rule.

- Plaintiffs filed a motion to dismiss the Delaware declaratory judgment action on November 15, 2007 based on (1) lack of subject matter jurisdiction, (2) the first-to-file, and (3) personal jurisdiction.

- It is my understanding that the third Arizona declaratory judgment action was just served last Wednesday, November 28, 2007. In response to this declaratory relief action, the Plaintiffs anticipate filing a motion to dismiss based on (1) subject matter jurisdiction, and (2) the first to file.

To date, no court has ruled on any of these motions. Attached as Exhibit 4 is a true and correct copy of one of Plaintiffs' motions to dismiss: Plaintiffs' motion to dismiss the Illinois declaratory judgment action filed on November 2007.

       9.      In preparing the complaint in this action, I researched the location of the various defendant entities in this action. In conducting this research, I looked at (a)

the various company's web pages, (b) corporate records, and (c) statements made by the entities in other lawsuits. Based on my research, I determined that:

- The <u>Chase</u> defendants are located in New Jersey and New York;
- The <u>Citi</u> defendants are located in New York, South Dakota, Missouri, and Texas;
- The <u>Countrywide</u> defendants are located in California;
- The <u>Discover</u> defendants are located in Illinois and Delaware;
- The <u>GMAC</u> defendants are located Pennsylvania and Missouri;
- <u>Liberty Life</u> is located in South Carolina;
- The <u>Response</u> defendants are located in Connecticut;
- The <u>State Farm</u> defendants are located in Illinois; and
- The <u>USAA</u> defendants are located in Texas and Nevada.

*See* Exhibit 1 at 4 through 8.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated December 2, 2007

Sean Luner

# Exhibit 1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | |
|---|---|
| PHOENIX LICENSING, L.L.C., an Arizona Limited Liability Company, and LPL LICENSING, L.L.C., a Delaware Limited Liability Company; | CASE NO. 2:07-cv-387 (TJW/CE) |
| Plaintiffs, | **Jury Trial Demanded** |
| vs. | |

CHASE MANHATTAN MORTGAGE
CORPORATION, a New Jersey corporation; JP
MORGAN CHASE BANK, N.A., a Delaware
corporation; CITIBANK., N.A., a national bank
association; CITIBANK USA, N. A., a limited
purpose credit card bank; CITIBANK (SOUTH
DAKOTA), N. A., a limited purpose credit card
bank; CITIMORTGAGE, INC., a New York
corporation; CITIGROUP, INC. a Delaware
corporation; CITI ASSURANCE SERVICES,
INC., a Maryland corporation; CITICORP
CREDIT SERVICES, INC., a Delaware
corporation, COUNTRYWIDE HOME LOANS,
INC., a New York corporation; COUNTRYWIDE
INSURANCE SERVICES, INC., a California
corporation; DISCOVER FINANCIAL
SERVICES,, a Delaware corporation; DISCOVER
BANK, a Delaware corporation; DFS SERVICES
L.L.C., a Delaware corporation; DISCOVER
PRODUCTS, INC, a Utah corporation; GMAC
Mortgage, L.L.C. (f/k/a GMAC Mortgage
Corporation), a Delaware corporation; GMAC
INSURANCE MARKETING, INC., a Missouri
corporation; GMAC BANK, a Utah industrial loan
corporation; LIBERTY LIFE INSURANCE
COMPANY, a South Carolina corporation;
RESPONSE WORLDWIDE INSURANCE
COMPANY, an Ohio corporation; DIRECT
RESPONSE CORPORATION, a Delaware
corporation; WARNER INSURANCE
COMPANY, a Illinois corporation; STATE
FARM MUTUAL AUTOMOBILE INSURANCE
COMPANY, a Illinois corporation; STATE

1

Exhibit 1

FARM BANK, F.S.B., a Federal Savings
Association; USAA Federal Savings Bank, a
FEDERAL SAVINGS BANK; USAA SAVINGS
BANK, a Nevada corporation; UNITED
SERVICES AUTOMOBILE ASSOCIATION, a
reciprocal inter insurance exchange.

Defendants.

### FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT

Phoenix Licensing, L.L.C. ("Phoenix") and LPL Licensing, L.L.C. ("LPL") sue

Chase Manhattan Mortgage Corporation, JP Morgan Chase Bank, N.A., Citibank, N.A., Citibank

USA, N.A., Citibank (South Dakota), N. A., Citimortgage, Inc., Citigroup, Inc., Citi Assurance

Services, Inc., Citicorp Credit Services, Inc., Countrywide Home Loans, Inc., Countrywide

Insurance Services, Inc., Discover Financial Services, Discover Bank, DFS Services, L.L.C.,

Discover Products, Inc., GMAC Mortgage, L.L.C. (f/k/a GMAC Mortgage Corporation), GMAC

Insurance Marketing, Inc., GMAC Bank, Liberty Life Insurance Company, Response Worldwide

Insurance Company, Direct Response Corporation, Warner Insurance Company, State Farm

Mutual Automobile Insurance Company, State Farm Bank, F.S.B., USAA Federal Savings Bank,

USAA Savings Bank, and United Services Automobile Association (collectively "Defendants")

and, on information and belief, allege as follows:

### Introduction

1.    Plaintiff Phoenix owns the invention described and claimed in United

States Patent Nos.:

        (a) 5,987,434 entitled "Apparatus and Method for Transacting Marketing and
                Sales of Financial Products" (the "'434 patent");

        (b) 6,076,072 entitled "Method and Apparatus For Preparing Client
                Communications Involving Financial Products and Services" (the "'072

patent"); and

(c) 6,999,938 entitled "Automated Reply Generation Direct Marketing System" (the "'938 patent");

(collectively the "Patents"). Pursuant to a license agreement dated December 1, 2006, Plaintiff LPL is the exclusive licensee of the Patents. Defendants (a) have used, and continue to use, Plaintiff Phoenix's patented technology in products and services that they make, use, import, sell, and offer to sell, without Plaintiffs' permission; and (b) have contributed to or induced, and continue to contribute to or induce, others to infringe the Patents. Plaintiffs seek damages for patent infringement and an injunction preventing Defendants from making, using, selling, or offering to sell, and from contributing to and inducing others to make, use, sell, or offer to sell, the technology claimed by the Patent without Plaintiffs' permission.

**Jurisdiction and Venue**

2.     This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 271 and 281, *et seq.* The Court has original jurisdiction over this patent infringement action under 28 U.S.C. § 1338(a).

3.     Within this judicial district each of the Defendants has committed acts and continues to commit acts that give rise to this action, including making sales of infringing products and offering for sale infringing products. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and § 1400.

**Plaintiffs Phoenix and LPL**

4.     Phoenix Licensing, L.L.C. is an Arizona limited liability company having a principal place of business in Scottsdale, Arizona.

5.     LPL Licensing, L.L.C. is a Delaware limited liability company having a principal place of business in Scottsdale, Arizona.

3

**Defendants**

*Chase*

6.      Upon information and belief, Chase Manhattan Mortgage Corporation is a New Jersey corporation having its principal place of business in Edison, New Jersey ("Chase Manhattan").

7.      Upon information and belief, JP Morgan Chase Bank, N. A., is a Delaware corporation having its principal place of business in New York, New York ("JP Morgan Chase").

*Citibank*

8.      Upon information and belief, Citibank N.A. is a national bank association having its principal place of business in New York, New York ("Citibank NA").

9.      Upon information and belief, Citibank USA, National Association (Citibank USA) is a national bank association having its principal place of business in Sioux Falls, South Dakota ("Citibank").

10.     Upon information and belief, Citibank (South Dakota), N.A., is a national bank association having its principal place of business in Sioux Falls, South Dakota ("Citibank SD").

11.     Upon information and belief, Citimortgage, Inc. is a New York corporation having its principal place of business in St. Louis, Missouri ("Citimortgage").

12.     Upon information and belief, Citigroup, Inc. is a Delaware corporation having its principal place of business in New York, New York ("Citigroup").

13.     Upon information and belief, Citi Assurance Services, Inc., is a Maryland corporation having its principal place of business in Fort Worth, Texas ("Citi Assurance").

14.     Upon information and belief, Citicorp Credit Services, Inc. is a Delaware

4

corporation having its principal place of business in Long Island City, New York ("Citicorp").

On October 17, 2007 Citicorp filed a complaint for Declaratory Judgment, alleging that the three

Patents are invalid and that Citicorp does not infringe any valid claims of the Patents (the

"Citicorp Complaint"). In the Citicorp Complaint, the only basis that Citicorp provides to

support its declaratory relief claims are the allegations in the present case:

> "On August 31, 2007, [Phoenix and LPL] filed Case No. 2-07cv-387 in the
>
> United States District Court fro the Eastern District of Texas, Marshall Division,
>
> accusing 22 companies in the financial products and services industry, including
>
> certain affiliates of [Citicorp] of patent infringement with respect to the patents-
>
> in-suit. In light of those allegations, [Citicorp] believes that a controversy also
>
> exists between it and [Phoenix and LPL] over whether [Citicorp's] business
>
> practices have infringed, and are continuing to infringe, the patents-in-suit and
>
> whether the patents-in-suit are valid. This controversy is continuing and ongoing,
>
> and is ripe for resolution by the Court."

Citicorp Complaint at 10-11. Plaintiffs have requested additional information from Citicorp but

Citicorp has refused to provide any additional information regarding the bases for its claims.

Accordingly, Plaintiffs' allegations against Citicorp in this Amended Compliant are solely based

on the Citicorp Complaint.

### *Countrywide*

15.     Upon information and belief, Countrywide Home Loans, Inc. is a New

York corporation having its principal place of business in Calabasas, California

("Countrywide").

16.     Upon information and belief, Countrywide Insurance Services, Inc. is a California corporation having its principal place of business in Calabasas, California ("Countrywide Insurance").

*Discover*

17.     Upon information and belief, Discover Financial Services is a Delaware corporation having its principal place of business in Riverwoods, Illinois ("Discover").

18.     Upon information and belief, Discover Bank is a Delaware corporation having its principal place of business in New Castle, Delaware ("Discover Bank").

19.     Upon information and belief, DFS Services L.L.C., (the successor in interest to Discover Financial Services, Inc.) is a Delaware corporation having its principal place of business in Riverwoods, Illinois ("DFS").

20.     Upon information and belief, Discover Products, Inc. ("Discover Products") is a wholly owned subsidiary of Discover Bank, and is a Utah corporation with its principal place of business in Riverwoods, Illinois.  On October 11, 2007 Discover Products filed a complaint for Declaratory Judgment, alleging that the three Patents are invalid and that Discover Products does not infringe any valid claims of the Patent ("Discover Products Complaint").  Plaintiff's allegations against Discover Products in this Amended Compliant are solely based on the Discover Products Complaint.

*GMAC*

21.     Upon information and belief, GMAC Mortgage, L.L.C. is a Delaware limited liability corporation having its principal place of business in Horsham, Pennsylvania ("GMAC Mortgage").

22.     Upon information and belief, GMAC Insurance Marketing, Inc. is a Missouri corporation having its principal place of business in Maryland Heights, Missouri ("GMAC Insurance").

23.     Upon information and belief, GMAC Bank is a Utah industrial loan corporation having its principal place of business in Horsham, Pennsylvania ("GMAC Bank.").

*Liberty Life*

24.     Upon information and belief, Liberty Life Insurance Company is a South Carolina corporation doing business as RBC Insurance Company having its principal place of business in Greenville, South Carolina ("Liberty Life").

*Response Worldwide*

25.     Upon information and belief, Response Worldwide Insurance Company is an Ohio corporation having its principal place of business in Meriden, Connecticut ("Response Worldwide").

26.     Upon information and belief, Direct Response Corporation, doing business as Response Group, is a Delaware corporation having its principal place of business in 500 Meriden, Connecticut ("Direct Response").

27.     Upon information and belief, Warner Insurance Company is an Illinois corporation having its principal place of business in Meriden, Connecticut ("Warner").

*State Farm*

28.     Upon information and belief, State Farm Mutual Automobile Insurance Company is an Illinois corporation having its principal place of business in Bloomington, Illinois ("State Farm").

29.    Upon information and belief, State Farm Bank, F.S.B, is a federal savings association chartered under the Home Owner's Loan Act (12 U.S.C. § 1461 et seq.), having its principal place of business in Bloomington, Illinois ("State Farm Bank").

*USAA Bank*

30.    Upon information and belief, USAA Federal Savings Bank is a federal savings bank having its principal place of business in San Antonio, Texas ("USAA Bank").

31.    Upon information and belief, USAA Savings Bank is a Nevada corporation having its principal place of business in Las Vegas, Nevada ("USAA Savings").

32.    Upon information and belief, USAA is a reciprocal inter insurance exchange organized and existing under the laws of Texas with its principal place of business in San Antonio, Texas ("USAA"). On October 17, 2007 USAA filed a complaint for Declaratory Judgment, alleging that the three Patents are invalid and that USAA does not infringe any valid claims of the Patent ("USAA Complaint"). Plaintiff's allegations against USAA in this Amended Compliant are solely based on the USAA Complaint.

### First Claim for Patent Infringement
### (infringement of the '434 patent)

33.    Plaintiffs incorporate by reference each of the allegations in paragraphs 1 through 28 above and further allege as follows:

34.    The United States Patent and Trademark Office issued the '434 patent on November 16, 1999. Attached as Exhibit A is what is believed to be a copy of the text of the '434 patent. Through assignment, Plaintiff Phoenix is the owner of all right, title, and interest in the '434 patent, including all rights to pursue and collect damages for past infringements of the patent.

8

35.     Defendants Chase Manhattan, Citibank, Citibank SD, Citimortgage, Citicorp, Discover, Discover Bank, Discover Products, DFS, GMAC Mortgage, Liberty Life, Response Worldwide, Direct Response, Warner, State Farm, State Farm Bank, USAA Bank, USAA Savings, and USAA have infringed, contributed to the infringement, and induced others to infringe the '434 patent and, unless enjoined, will continue to do so, by manufacturing, importing, using, selling, or offering for sale products and services that infringe the claims of the '434 patent and by contributing to or inducing others to infringe the claims of the '434 patent without a license or permission from Plaintiffs.

36.     Plaintiffs have been damaged by Defendants' infringement of the '434 patent and will suffer additional irreparable damage and impairment of the value of its patent rights unless Defendants are enjoined from continuing to infringe the '434 patent.

37.     The Defendants are and have been willfully infringing one or more claims of the '434 patent.

38.     Plaintiffs are entitled to recover damages from the Defendants to compensate them for the infringement.

### Second Claim for Patent Infringement
### (infringement of the '072 patent)

39.     Plaintiffs incorporate by reference each of the allegations in paragraphs 1 through 28 above and further allege as follows:

40.     The United States Patent and Trademark Office issued the '072 patent on June 13, 2000. Attached as Exhibit B is what is believed to be a copy of the text of the '072 patent. Through assignment, Plaintiff Phoenix the owner of all right, title, and interest in the

9

'072 patent, including all rights to pursue and collect damages for past infringements of the patent.

41.     Defendants Chase Manhattan, Citimortgage, Citigroup, Citicorp, Countrywide, Discover, Discover Bank, Discover Products, DFS, GMAC Mortgage, Liberty Life, and USAA have infringed, contributed to the infringement, and induced others to infringe the '072 patent and, unless enjoined, will continue to do so, by manufacturing, importing, using, selling, or offering for sale products and services that infringe the claims of the '072 patent and by contributing to or inducing others to infringe the claims of the '072 patent without a license or permission from Plaintiffs.

42.     Plaintiff has been damaged by Defendants' infringement of the '072 patent and will suffer additional irreparable damage and impairment of the value of its patent rights unless Defendants are enjoined from continuing to infringe the '072 patent.

43.     The Defendants are and have been willfully infringing one or more claims of the '072 patent.

44.     Plaintiffs are entitled to recover damages from the Defendants to compensate them for the infringement.

### Third Claim for Patent Infringement
### (infringement of the '938 patent)

45.     Plaintiffs incorporate by reference each of the allegations in paragraphs 1 through 28 above and further alleges as follows:

46.     The United States Patent and Trademark Office issued the '938 patent on February 14, 2006. Attached as Exhibit C is what is believed to be a copy of the text of the '938 patent. Through assignment, Plaintiff Phoenix is the owner of all right, title, and interest in the

'938 patent, including all rights to pursue and collect damages for past infringements of the patent.

47.    Defendants JP Morgan Chase, Citibank NA, Citibank SD, Citimortgage, Citi Assurance, Citicorp, Countrywide Insurance, Discover, Discover Bank, Discover Products, DFS, GMAC Insurance, GMAC Bank, GMAC Mortgage, Liberty Life, Response Worldwide, Direct Response, Warner, State Farm, State Farm Bank, USAA Bank, USAA Savings, and USAA have infringed, contributed to the infringement, and induced others to infringe the '938 patent and, unless enjoined, will continue to do so, by manufacturing, importing, using, selling, or offering for sale products and services that infringe the claims of the '938 patent and by contributing to or inducing others to infringe the claims of the '938 patent without a license or permission from Plaintiffs.

48.    Plaintiffs have been damaged by Defendants' infringement of the '938 patent and will suffer additional irreparable damage and impairment of the value of its patent rights unless Defendants are enjoined from continuing to infringe the '938 patent.

49.    The Defendants are and have been willfully infringing one or more claims of the '938 patent.

50.    Plaintiffs are entitled to recover damages from the Defendants to compensate them for the infringement.

51.    Plaintiffs demand trial by jury of all issues relating to all claims.

WHEREFORE, Plaintiffs prays for judgment as follows:

    A.     A decree preliminarily and permanently enjoining Defendants, their officers, directors, employees, agents, and all persons in active concert with them, from infringing, and contributing to or inducing others to infringe, the '434, '072, and '938 Patents;

    B.     Compensatory damages for Defendants' infringement of the '434, '072, and '938 Patents;

    C.     Treble the compensatory damages as consequence of Defendants' willful infringement;

    D.     Costs of suit and attorneys' fees on the basis that this patent infringement case is exceptional;

    E.     Pre-judgment interest; and

    F.     For such other relief as justice requires.

# Exhibit 2

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | |
|---|---|
| PHOENIX LICENSING, L.L.C., an Arizona Limited Liability Company, and LPL LICENSING, L.L.C., a Delaware Limited Liability Company; | CASE NO.: 2-07-CV-378 |
| Plaintiffs, | |
| v. | |
| CHASE MANHATTAN MORTAGAGE CORPORATION, a New Jersey corporation; JP MORGAN CHASE BANK, N.A., a Delaware Corporation; CITIBANK, N.A., a national bank association; CITIBANK USA, N.A., a limited purpose credit card bank; CITIBANK (SOUTH DAKOTA), N.A., a limited purpose credit card bank; CITIMORTGAGE, INC., a New York corporation; CITIGROUP, INC a Delaware corporation; CITI ASSURANCE SERVICES, INC., a Maryland corporation; COUNTRYWIDE HOME LOANS, INC., a New York corporation; COUNTRYWIDE INSURANCE SERVICES, INC., a California corporation; DISCOVER FINANCIAL SERVICES, INC., a Delaware corporation; DISCOVER BANK, a Delaware corporation, GMAC MORTGAGE, L.L.C. (f/k/a GMAC Mortgage Corporation), a Delaware corporation; GMAC INSURANCE MARKETING, INC., a Missouri Corporation; GMAC BANK, a Utah industrial loan corporation; LIBERTY LIFE INSURANCE COMPANY, a South Carolina corporation; RESPONSE WORLDWIDE INSURANCE COMPANY, an Ohio corporation; DIRECT RESPONSE CORPORATION, a Delaware corporation; WARNER INSURANCE COMPANY, a Illinois corporation; STATE FARM MUTUAL AUTOMOBILE INSURNACE COMPANY, a Illinois Corporation; STATE FARM BANK, F.S.B., a Federal Savings Association; USAA FEDERAL SAVINGS BANK, a Federal Savings Bank; USAA SAVINGS BANK, a Nevada corporation; | In Lieu of Answer to Complaint for Patent Infringement (U.S. Patent Nos. 5,987,434, 6,076,072, and 6,999,938) – Fed. R. Civ. P. 12 (b)(3) |
| Defendants. | |

SF:187979.3

LPL's Eastern District of Texas complaint makes no mention of *State Farm Mut. Auto. Co. v. LPL Licensing*,[2] a July 10, 2007, declaratory judgment action concerning the same three patents (the "Arizona Action"). This silence—which is contrary to Local Rule 42 (a)[3]—is all the more remarkable when one considers that the Arizona Action was at issue well before the Texas case was filed; Phoenix Licensing resides and has its principal place of business in the District of Arizona; sole inventor Richard Libman lives in the Phoenix metro area; every communication issued by LPL in its three years of "negotiation" emanated from Arizona; and State Farm has directly challenged the validity of all three LPL patents in the Arizona Action.

In its complaint, State Farm explains that it filed suit after enduring years of tendentious litigation threats. Discover can tell a similar story—and did, when Discover Products sued LPL in the Northern District of Illinois, about a week before LPL finally served Discover with its East Texas papers. As early as May 2004, LPL argued that "Discover Financial Services have infringed in a substantial manner, and continue to substantially infringe, the LPL Patent portfolio." Declaration of David S. Bloch ¶ 2, Exhibit A: 5/26/04 Letter. Indeed, all defendants to this action have faced similar harassment, resulting in the filing of now numerous declaratory judgment actions across the nation. At last count, there were three pending lawsuits in Arizona (two by different State Farm entities, a third by USAA) plus a case each in Delaware (Citicorp), the Northern District of Illinois (Discover), and the Eastern District of Texas. Bloch Declaration ¶¶ 3-7, Exhibits B-F.

---

[2] United States District Court for the District of Arizona Case No. 2:07-cv-01329-MHM (D. Ariz.). Bloch Declaration ¶ 3, Exhibit B.

[3] Local Rule 42 (a) states: "Duty to Notify Court of Collateral Proceedings and Re-filed Cases. Whenever a civil matter, commenced in or removed to the court, involves subject matter that either comprises all or a material part of the subject matter or operative facts of another action, whether civil or criminal, then pending before this or another court or administrative agency, or previously dismissed or decided by this court, counsel for the filing party shall identify the collateral proceedings and/or re-filed case(s) on the civil cover sheet filed in this court. The duty to notify the court and opposing counsel of any collateral proceeding continues throughout the time the action is before this court." The Civil Cover Sheet in the Texas Action (Docket # 1) does not mention the Arizona Action.

# Exhibit 3

1  Mark Deatherage (010208)
2  mmd@gknet.com
   GALLAGHER & KENNEDY, P.A.
3  2575 East Camelback Road
   Phoenix, Arizona  85016-9225
4  (602) 530-8000
5  (602) 530-8500 fax
   Attorneys for Defendants
6

7              IN THE UNITED STATES DISTRICT COURT
8              FOR THE DISTRICT OF ARIZONA
9  State Farm Mutual Automobile Insurance
   Company,                                    No. CV07-1329 PHX-MHM
10
                        Plaintiff,             **Motion to Dismiss for Lack of Subject**
11                                             **Matter Jurisdiction**
          vs.
12
   LPL Licensing, L.L.C.; and Phoenix
13 Licensing, L.L.C.,
14                      Defendants.
15

16         Defendants LPL Licensing, LLC ("LPL") and Phoenix Licensing LLC

17 ("Phoenix") hereby move to dismiss this action under Rule 12(b)(1) for lack of subject

18 matter jurisdiction.  This motion is based on the following memorandum of points and

19 authorities and the accompanying declarations and exhibits.

20              **Memorandum of Points and Authorities.**

21 **I.     Introduction.**

22         This is a declaratory judgment action brought against the exclusive

23 licensor of three patents (Defendant LPL Licensing, LLC) and the owner of the patents

24 (Defendant Phoenix Licensing, LLC) by plaintiff State Farm Mutual Automobile

25 Insurance Company ("State Farm Mutual").  Defendants now move to dismiss for lack

26 of subject matter jurisdiction on two grounds.

27         *First ground*: The exercise of declaratory judgment subject matter

28 jurisdiction is discretionary.  *MedImmune, Inc. v. Genentech, Inc.*, 127 S. Ct. 764, 776

*Left margin vertical text:* GALLAGHER & KENNEDY, P.A. / 2575 EAST CAMELBACK ROAD / PHOENIX, ARIZONA 85016-9225 / (602) 530-8000

1  (2007) (the Declaratory Judgment Act grants a district court "unique and substantial

2  discretion" in deciding whether to exercise subject matter jurisdiction) (quoting *Wilton*

3  *v. Seven Falls Co.*, 515 U.S. 277, 286 (1995)).  In determining whether to exercise

4  jurisdiction, district courts consider how closely the action fits with the core purposes of

5  the declaratory judgment act, as well as matters of practical judicial administration.

6        When a patent holder defers filing suit because an accused infringer

7  asserts that it wants to engage in settlement discussions rather than litigation, and then

8  the infringer files a declaratory judgment action to preempt the patentee's choice of

9  forum, such an action is far from the core purposes of declaratory judgment jurisdiction.

10  *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 814 (Fed. Cir. 1996).  In such a case, "it

11  would be inappropriate to reward -- and indeed abet -- conduct which is inconsistent

12  with the sound policy of promoting extrajudicial dispute resolution."  *EMC*, 89 F.3d at

13  814 (internal quotes omitted).  That is exactly the situation here.

14        State Farm Mutual expressly represented to LPL, in writing, that it "will

15  continue to be State Farm's intent to discuss this matter and LPL's allegations in good

16  faith."  Exh. 8.  Then, State Farm Mutual strung LPL along.  Tache decl. (exh. 14) ¶¶ 6-

17  23; Exhs. 2-11.  In response to LPL's most recent licensing offer, on June 25, 2007,

18  State Farm Mutual's lawyer wrote that "the State Farm decision makers . . . are away

19  from the office on vacation . . . . and I have every expectation that we will get to an

20  answer very quickly when we are all at work."  Exh. 11.  Two weeks later, without

21  warning, State Farm Mutual filed this declaratory judgment action to preempt LPL's

22  choice of forum.

23        Moreover, now apprised of State Farm Mutual's hostile intentions, LPL

24  and Phoenix filed a patent infringement action on August 31, 2007 against State Farm

25  Mutual in the Eastern District of Texas.  Exh. 12.  The action has been assigned to the

26  Hon. T. John Ward, and is styled Phoenix Licensing, LLC et al. v. Chase Manhattan

27  Mortgage Corp. et al., No. 2:07-cv-00387-TJW-CE (E.D. Tex.).  *Id.*  In that same

28  action, LPL and Phoenix also sued 23 other infringers.  Two of the defendants in the

2

1  Texas litigation have their principal places of business in Texas, and 19 are based in

2  cities closer to Texas than Arizona (even State Farm Mutual's lawyers are based in

3  Texas). Exh. 12 ¶¶ 6-28. The center of gravity of these patent infringement cases

4  resides with Judge Ward in the Eastern District of Texas. To avoid duplication of effort

5  and the risk of inconsistent verdicts, the Eastern District of Texas should handle all the

6  patent infringement disputes among all the parties.

7           *Second ground*: In addition, as to one of the three patents in this case,

8  patent No. 6,076,072 (the "'072 patent"), this Court has no jurisdiction because there is

9  no actual controversy. Neither LPL nor Phoenix asserted that State Farm Mutual

10 infringed that patent and, even today, they are not aware of any conduct by State Farm

11 Mutual that infringes that patent. Libman decl. (exh. 13) ¶ 12. Accordingly, there is no

12 actual controversy and no subject matter jurisdiction as to the '072 patent.

13 **II.      State Farm Mutual bears the burden of proving jurisdiction with evidence.**

14          Two important principles guide this Court's review of this motion.

15          First, the burden of proving subject matter jurisdiction rests solely on

16 State Farm Mutual. "The burden of establishing jurisdiction in the district court lies

17 with the party seeking to invoke the court's jurisdiction." *Cedars-Sinai Medical Ctr. v.*

18 *Watkins*, 11 F.3d 1573, 1584 (Fed. Cir. 1993).

19          Second, to meet its burden, State Farm Mutual may not rest on the

20 allegations in the complaint. "If the Rule 12(b)(1) motion denies or controverts the

21 pleader's allegations of jurisdiction, however, the movant is deemed to be challenging

22 the factual basis for the court's subject matter jurisdiction. In such a case, the

23 allegations in the complaint are not controlling, and only uncontroverted factual

24 allegations are accepted as true for purposes of the motion. All other facts underlying

25 the controverted jurisdictional allegations are in dispute and are subject to factfinding by

26 the district court." *Cedars-Sinai*, 11 F.3d at 1584 (internal citations omitted); *Jervis B.*

27 *Webb Co. v. Southern Systems, Inc.*, 742 F.2d 1388, 1399 (Fed. Cir. 1984) ("where, as

28

                                    3

1   here, the declaratory defendant (patentee) has denied the factual allegations that

2   allegedly support the existence of case or controversy, the declaratory plaintiff must

3   prove the existence of facts underlying such allegations"); *Bridgelux, Inc. v. Cree, Inc.*,

4   2007 U.S. Dist. LEXIS 14472, *10 (N.D. Cal. 2007).

5       State Farm Mutual cannot meet that burden here.

6   **III.    The Court should decline to exercise discretionary jurisdiction in this case.**

7       "The Declaratory Judgment Act states that courts 'may' grant relief; it

8   does not require courts to grant relief." *Sony Elecs., Inc. v. Guardian Media Techs.,*

9   *Ltd.*, 2007 U.S. App. LEXIS 18465 (Fed. Cir. Aug. 7, 2007). "This text has long been

10  understood 'to confer on federal courts unique and substantial discretion in deciding

11  whether to declare the rights of litigants.'" *MedImmune, Inc. v. Genentech, Inc.*, 127 S.

12  Ct. 764, 776 (2007) (emphasis added) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277,

13  286 (1995)).

14      "[T]he [Supreme] Court explained that 'the statute's textual commitment

15  to discretion, and the breadth of leeway we have always understood it to suggest,

16  distinguish the declaratory judgment context from other areas of the law.'" *EMC Corp.*

17  *v. Norand Corp.*, 89 F.3d 807, 813 (Fed. Cir. 1996) (quoting *Wilton v. Seven Falls Co.*,

18  515 U.S. 277, 286 (1995)). However, a district court does not enjoy unlimited

19  discretion regarding jurisdiction in declaratory judgment actions. *Wilton*, 515 U.S. at

20  289. For example, a court cannot decline declaratory judgment jurisdiction solely as "a

21  matter of whim or personal disinclination." *EMC*, 89 F.3d at 813 (citation omitted).

22  Nor can a court decline jurisdiction, without any other reasons, "merely because a

23  parallel patent infringement suit was subsequently filed in another district." *Id.*

24      In determining whether a case is appropriate for declaratory judgment

25  jurisdiction, district courts should consider:

26      (1) how closely this action fits with the core purposes of the Declaratory

27      Judgment Act, and

28      (2) considerations of practicality and judicial economy.

4

1 | *EMC*, 89 F.3d at 814.  Each of these factors is discussed in turn below.

2 |     **A.**    **This case is at the periphery, not the core, of declaratory judgment**
3 |         **jurisdiction.**

4 |         The Court should consider whether this is one of the "cases closer to the

5 | central objectives of declaratory proceedings."  *EMC Corp. v. Norand Corp.*, 89 F.3d

6 | 807, 814 (Fed. Cir. 1996); *MedImmune, Inc. v. Genentech, Inc.*, 127 S. Ct. 764, 776

7 | (2007) (the declaratory judgment act "vest[s] district courts with discretion" to consider

8 | "facts bearing on the usefulness of the declaratory judgment remedy").

9 |         In the patent context, at the core of declaratory judgment jurisdiction are

10 | cases where "'the patent owner attempts extra-judicial patent enforcement with scare-

11 | the-customer-and-run tactics that infect the competitive environment.'"  *EMC*, 89 F.3d

12 | at 814 (quoting *Arrowhead Industrial Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 735

13 | (Fed. Cir. 1988)).  In such a case, "a patent owner engaging in 'extra-judicial patent

14 | enforcement' tactics rendered its competitors 'helpless and immobile so long as the

15 | patent owner refused to grasp the nettle and sue.'"  *Sony Elecs., Inc. v. Guardian Media*

16 | *Techs.*, Ltd., 2007 U.S. App. LEXIS 18465, *34-*35 (Fed. Cir. Aug. 3, 2007) (quoting

17 | *Arrowhead*, 846 F.2d at 735); *see Capo, Inc. v. Dioptics Med. Prods.*, 387 F.3d 1352,

18 | 1356 (Fed. Cir. 2004) (declaratory judgment jurisdiction appropriate where patent

19 | holder's "threats were not aimed at negotiation, but at impeding a competitor's

20 | commercial activity").

21 |         At the opposite end of the spectrum are cases where the "declaratory

22 | judgment plaintiff 'took advantage of the fact that [patentee] had deferred the filing of

23 | expensive and probably protracted litigation because of its belief that settlement

24 | negotiations were under way.'"  *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 814 (Fed.

25 | Cir. 1996) (quoting *NSI Corp. v. Showco, Inc.*, 843 F. Supp. 642, 645-46(D. Or. 1994).

26 | In such a case, "'it would be inappropriate to reward -- and indeed abet -- conduct

27 | which is inconsistent with the sound policy of promoting extrajudicial dispute

28 | resolution, and conservation of judicial resources."  *EMC*, 89 F.3d at 814 (quoting

1  *Davox Corp. v. Digital Systems International, Inc.*, 846 F. Supp. 144, 148 (D. Mass.

2  1993)).  In such a case, allowing a declaratory judgment "'action to proceed would be to

3  discourage such good faith effort to negotiate.'"  *EMC*, 89 F.3d at 814 (quoting *Bausch*

4  *& Lomb Inc. v. Alcide Corp.*, 684 F. Supp. 1155, 1160 (W.D.N.Y. 1987)).  As a result,

5  "a court may take into account the pendency of serious negotiations to sell or license a

6  patent in determining to exercise jurisdiction over a declaratory judgment action."

7  *EMC*, 89 F.3d at 814; *see Sage Prods. v. Am. Nonwovens Corp.*, 2004 U.S. Dist. LEXIS

8  8511 *6 (N.D. Ill. 2004) ("This pursuit of an extrajudicial resolution of the issues

9  should be encouraged. . . . Thus, the court would decline to exercise jurisdiction even if

10  an actual controversy existed.")

11          Moreover, a patentee's good faith participation in settlement negotiations

12  may be a basis for dismissing a declaratory judgment action even where it is "clear that

13  [the patent holder] intended to resort to litigation if it were not satisfied with the results

14  of the parties' negotiations."  *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 812-13 (Fed.

15  Cir. 1996).  "There is no evidence that [patent holder] in any way delayed or intended to

16  avoid filing suit if an amicable resolution could not be achieved.  Exercising jurisdiction

17  over declaratory-relief actions under such circumstances would create a strong

18  disincentive for patentees to communicate with potential infringers before filing suit, for

19  fear of being sued first and thus forced to litigate in the defendant's forum of choice."

20  *Fresenius United States v. Transonic Sys.*, 207 F. Supp. 2d 1009, 1012-13 (N.D. Cal.

21  2001).

22          Where does the present case fall on the spectrum between a patent-holder

23  improperly using a patent to threaten a competitor's customers and a patent holder

24  delaying filing suit against an infringer who says that it is interested in good faith

25  settlement discussions?

26          *First*, there is no evidence that LPL was using its patents to threaten State

27  Farm Mutual's customers or was engaged in any similar conduct.  Libman decl. (exh.

28  13) ¶¶ 9-11.

6

1       *Second*, LPL engaged in settlement discussions, and refrained from suing

2   State Farm Mutual, only after receiving an express representation from State Farm as to

3   its intentions.  LPL asked State Farm to "confirm that it is your client's intention to

4   promptly engage in good faith and meaningful discussions regarding a license

5   agreement for at least the '434 and'938 patents." Tache decl. (exh. 14) ¶ 6; Exh. 8.  In

6   response, State Farm represented: "It has and will continue to be State Farm's intent to

7   discuss this matter and LPL's allegations in good faith."  *Id*.  Right up through (and

8   past) the date it filed suit, State Farm never withdrew that representation,

9       *Third*, LPL actively engaged in good faith settlement negotiations with

10  State Farm.  In particular, LPL:

11      • provided detailed information and analysis of infringement, validity, and

12          royalties to State Farm Mutual;

13      • promptly responded to State Farm Mutual's questions;

14      • flew two representatives to Texas to meet personally with representatives

15          of State Farm Mutual;

16      • discussed detailed licensing terms; and

17      • had used the same approach to settle successfully with four other major

18          financial and/or insurance entities.

19  Libman decl. ¶¶ 2-11; Tache decl. ¶¶ 2-23; Exhs. 1-11.

20      *Fourth*, the record shows no effort by LPL to delay or prolong the

21  discussions unreasonably.  LPL consistently and aggressively pushed the settlement

22  discussions forward with State Farm Mutual.  Libman decl. ¶¶ 2-11; Tache decl. ¶¶ 2-

23  23; Exhs. 1-11.  By contrast, the records shows that State Farm Mutual delayed and

24  stalled. *Id.*

25      *Fifth*, there is no evidence that, if the settlement discussions failed, LPL

26  intended to delay filing suit against State Farm Mutual.  State Farm Mutual admits that,

27  on June 19, 2007, LPL stated:

28
                                7

1　　　　If State Farm's answer is that State Farm is not interested in a license, then
2　　　　LPL will investigate its options.  There is simply too much money on the
　　　　　table for LPL to walk away. . . . I can tell you that LPL is talking to
3　　　　litigation counsel in Texas about its litigation options.

4　Complaint ¶ 13.  State Farm Mutual further admitted that, at the time State Farm Mutual

5　filed its lawsuit, "LPL is preparing to file a complaint against State Farm alleging that

6　State Farm infringes."  Complaint ¶ 13.  Because "[t]here is no evidence that [LPL] in

7　any way delayed or intended to avoid filing suit if an amicable resolution could not be

8　achieved," for the Court to "[e]xercis[e] jurisdiction over declaratory-relief actions

9　under such circumstances would create a strong disincentive for patentees to

10　communicate with potential infringers before filing suit, for fear of being sued first and

11　thus forced to litigate in the defendant's forum of choice."  *Fresenius United States v.*

12　*Transonic Sys.*, 207 F. Supp. 2d 1009, 1012-13 (N.D. Cal. 2001).

13　　　　*Sixth*, based on State Farm Mutual's admissions that it understood that

14　LPL was preparing to file suit "if State Farm's answer is that State Farm is not

15　interested in a license," Complaint ¶ 13 and that LPL had consulted "litigation counsel

16　in Texas," *id.*, and also on the fact that State Farm Mutual filed this suit without first

17　notifying LPL of its intentions, it is reasonable to conclude that State Farm Mutual filed

18　suit to preempt LPL's choice of forum in Texas.  It is proper "to consider that [the

19　declaratory relief plaintiff] intended to preempt [patentee's] infringement suit . . . as one

20　factor in the decision whether to dismiss the declaratory suit in favor of [patentee's]

21　subsequent infringement action."  *Serco Servs. Co., L.P. v. Kelley Co.*, 51 F.3d 1037,

22　1039-40 (Fed. Cir. 1995).

23　　　　*Seventh*, State Farm Mutual made statements that actively concealed its

24　true intentions.  Even up through the date State Farm Mutual filed suit, LPL believed it

25　was engaged in good faith negotiations and was anticipating a response from State Farm

26　regarding LPL's most recent proposal.  Just a few days before filing suit, State Farm's

27　representative wrote that "the State Farm decision makers . . . are away from the office

28　on vacation . . . and I have every expectation that we will get to an answer very quickly

8

1    when we are all at work." Exh. 11. Two weeks later, without warning, State Farm

2    Mutual filed this declaratory judgment action to preempt LPL's choice of forum. A

3    declaratory judgment plaintiff's "procedural fencing and inequitable if not outright

4    deceptive conduct do present sound reasons, in the court's view, not to retain

5    [jurisdiction]." *Lyons Indus. v. American Std.*, 993 F. Supp. 609, 615 (W.D. Mich.

6    1997).

7          In sum, LPL deferred filing suit based on State Farm Mutual's written

8    representation that it would engage in good faith settlement negotiations, LPL

9    demonstrated its good faith by devoting substantial time and money to that process,

10   State Farm Mutual understood that LPL was prepared to initiate suit in Texas if

11   settlement talks failed, and State Farm Mutual surreptitiously filed a preemptive suit

12   while settlement discussions were still under way. This is not a case at the core of

13   declaratory judgment jurisdiction; it lies at the outermost periphery. This factor weighs

14   strongly in favor of the Court declining to exercise jurisdiction.

15   **B.    Considerations of practicality and efficient judicial administration**
16   **weigh in favor of dismissal.**

17         For suits brought under the Declaratory Judgment Act, "the normal

18   principle that federal courts should adjudicate claims within their jurisdiction yields to

19   considerations of practicality and wise judicial administration." *Wilton v. Seven Falls*

20   *Co.*, 515 U.S. 277, 288 (1995). "Although courts generally favor the forum of the first

21   filed action, 'considerations of judicial and litigant economy, and the just and effective

22   disposition of disputes' may require otherwise." *Cingular Wireless LLC v. Freedom*

23   *Wireless, Inc.*, 2007 U.S. Dist. LEXIS 47957, 13-14 (D. Ariz. 2007 (quoting *Genetech,*

24   *Inc. v. Eli Lilly and Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993)). The first-filed action is

25   not preferred if "considerations of judicial and litigant economy, and the just and

26   effective disposition of disputes, require otherwise." *Serco Servs. Co., L.P. v. Kelley*

27   *Co.*, 51 F.3d 1037, 1039 (Fed. Cir. 1995) (internal quotes omitted); *see Genetech, Inc. v.*

28   *Eli Lilly and Co.*, 998 F.2d 931, 938 (Fed. Cir. 1993) (court should exercise discretion

9

1    to dismiss if exercising jurisdiction would be "inefficient").

2         The comprehensive Texas litigation is central to the analysis of the

3    efficient resolution of the dispute between LPL, Phoenix, and State Farm Mutual.

4    Because the Texas litigation includes claims for patent infringement by LPL and

5    Phoenix against State Farm Mutual on U.S. Patent No. 5,987,434 ("the '434 patent")

6    and U.S. Patent No. 6,999,938 ("the '938 patent"), it includes the exact same claims

7    between the exact same parties as in the present case.[1] As to these claims and parties,

8    the existence of two lawsuits will necessarily entail complete duplication of efforts by

9    the courts and the parties and the risk of inconsistent judgments.  But here, the

10   inefficient judicial administration created by this declaratory judgment action extends

11   beyond the claims against State Farm Mutual.

12        The Texas litigation also includes three other categories of claims that

13   give rise to inefficiencies and duplication:

14   • claims against State Farm <u>Bank</u> (a related, but different, entity than State

15     Farm Mutual) on the '434 and '938 patents;

16   • claims against 21 other defendants, on the '434 and '938 patents; and

17   • claims against 8 other defendants on the '072 patent.

18   The considerations for judicial administration for all of these are described below.

19        *the risk of inconsistent judgments*

20        As to the claims against State Farm Mutual on the '434 and '938 patents,

21   there is an obvious risk of judgments that are inconsistent at every level.  In addition,

22   there is the additional risk of an inconsistent judgment in the claims against two

23   _____

24   [1]    As explained below, although State Farm Mutual asserts a claim for
       declaratory relief as to the '072 patent as well, this Court has no subject matter
25   jurisdiction over such a claim because there is no actual controversy as to the '072
       patent.  Likewise, in the Texas Litigation, State Farm Mutual is not accused of
26   infringing the '072 patent.  Exh. 12.

27

28

1    affiliated companies -- State Farm Mutual in the Arizona case and State Farm Bank in

2    the Texas litigation.  Moreover, there is a risk of inconsistent claim constructions and

3    inconsistent findings of validity or invalidity on the '434 and '938 patents as between

4    the Arizona case and the case against 21 other defendants in the Texas litigation.

5           Finally, there is the risk of inconsistent claim constructions as between the

6    '072 patent and the '434 and '938 patents.  The Texas Court will be construing terms

7    for the '072 patent (a patent over which this Court does not have jurisdiction because, as

8    discussed below, there is no actual controversy with State Farm Mutual).  Because the

9    three patents are related, circumstances can arise where the same terms used in each

10   patent should be given the same construction.  *E.g., Elkay Mfg. Co. v. Ebco Mfg. Co*,

11   192 F.3d 973, 980 (Fed. Cir. 1999) ("When multiple patents derive from the same initial

12   application, the prosecution history regarding a claim limitation in any patent that has

13   issued applies with equal force to subsequently issued patents that contain the same

14   claim limitation.").  This gives rise to the risk of inconsistent constructions as between

15   this Court's construction of terms for the '434 and '938 patents, and the Texas Court's

16   construction of the '072 patent.

17          This factor weighs in favor of discretionary dismissal.  *Cingular Wireless*

18   *LLC v. Freedom Wireless, Inc.*, 2007 U.S. Dist. LEXIS 47957 *16 (D. Ariz. 2007)

19   ("The opportunity for inconsistent judgments between the . . . pending cases weighs on

20   this Court, the risk of which favors discretionary dismissal.")

21          *duplication of judicial resources*

22          In construing claim terms, a court will have to learn the nuances of the

23   patent specifications and the lengthy prosecution history.  This will require a complete

24   duplication of effort as between this Court and the Texas Court.  This is true for (i) the

25   duplicate claims in Texas involving State Farm Mutual, (ii) the claims in Texas against

26   State Farm Bank, (iii) the claims in Texas against the other Defendants on the '434 and

27   '938 patents, and (iv) the claims in Texas against the other Defendants on the '072

28   patents.

11

1    Similarly, when considering issues of invalidity based on prior art, both

2 Courts will have to duplicate efforts to understand the prior art, to identify the

3 differences between the invention and the prior art, and to evaluate the objective

4 indicators of non-obviousness. "The certainty of wasted resources weighs strongly in

5 favor of dismissal. *See Lonza Inc. v. Rohm and Haas, Inc.*, 951 F. Supp. 46, 50

6 (S.D.N.Y. 1997) ('[T]here is simply no reason why the patent issues in dispute should

7 be litigated in two different fora.')." *Cingular Wireless LLC v. Freedom Wireless, Inc.*,

8 2007 U.S. Dist. LEXIS 47957 *16 (D. Ariz. 2007).

9    *duplicate discovery and trial efforts*

10    In both the present case and the Texas case, there will be substantial

11 duplication of discovery. In particular, it is likely that duplicate depositions would be

12 taken of witnesses such as the inventor, the attorneys who prosecuted the patents, and

13 key prior art witnesses. Similarly, there would be duplication of testimony and exhibits

14 at trial. That would be true, again, as to all four categories of claims in Texas.

15    "Therefore, the other actions in Texas will require the presence of the

16 parties, counsel, witnesses and inventors regardless of this dispute's location, which

17 weighs in favor of discretionary dismissal." *Cingular Wireless*, 2007 U.S. Dist. LEXIS

18 47957.

19    *ability of the other forum to handle this case*

20    Another factor is whether the other forum, in this instance the Eastern

21 District of Texas, has the ability to administer the disputes. The litigation in Texas

22 involves 23 defendants and three patents. Moreover, each of the patents contains

23 multiple claims. The '434 patent has 56 separate claims. The '072 patent has 134

24 separate claims. The '938 patent has 312 separate claims. And, a successful

25 reexamination of the '434 patent has just been completed by the Patent and Trademark

26 Office in which 104 additional claims were added for a total of 160 claims in that

27 patent.

28

1        Relevant here is "the Eastern District of Texas' adoption of special rules

2    for patent infringement actions, which streamline discovery, claim construction and

3    other pre-trial matters. While any United States District Court, including this one, can

4    afford all parties the timeliness, fairness, justice and competence required to resolve

5    their patent disputes, the Court is persuaded that the Eastern District of Texas' special

6    rules will most efficiently promote sound judicial administration." *Cingular Wireless*

7    *LLC v. Freedom Wireless, Inc.*, 2007 U.S. Dist. LEXIS 47957, n.3 (D. Ariz. 2007).

8        *convenience for parties*

9        Another factor is the convenience of the forum for the parties. Arizona is

10   a convenient forum for the patent holder. Texas is the most convenient forum for

11   several of the defendants in the Texas litigation. For example, USAA Federal Savings

12   Bank has its offices in San Antonio, and Citi Assurance Services, Inc. has its offices in

13   Fort Worth. Exh. 12 at ¶¶ 13, 28. State Farm Mutual and State Farm Bank use counsel

14   based in Texas. Tache decl. (exh. 14) ¶ 14; Exh. 2. Many of the defendants have their

15   principal business operations on the East Coast, for example in New York (*e.g.* J.P.

16   Morgan Chase), or South Carolina (e.g. Liberty Life). Exh. 12 at ¶¶ 6-28. Overall

17   Texas is centrally located and provides as convenient a forum as any for these claims.

18   This factor slightly favors Texas. *See also Cingular Wireless LLC v. Freedom Wireless,*

19   *Inc.*, 2007 U.S. Dist. LEXIS 47957 *17 (D. Ariz. 2007) (considering that although the

20   patent holder "maintains its principal place of business in Phoenix, Arizona" at least one

21   accused infringer had "its principal place of business in Plano, Texas.").

22       In sum, every significant factor for practical and efficient judicial

23   administration weighs in favor of declining to exercise jurisdiction in this case.

24   **IV.    There is no "actual controversy" as to the '072 patent.**

25       **A.    An "actual controversy" requires a dispute that is concrete and based**

26             **upon an assertion of actual infringement.**

27       The Declaratory Judgment Act provides, in relevant part, that "[i]n a case

28   of <u>actual controversy</u> within its jurisdiction . . . any court of the United States, upon the

13

1  filing of an appropriate pleading, may declare the rights and other legal relations of any

2  interested party seeking such declaration." 28 U.S.C. § 2201(a) (emphasis added).

3      The "actual controversy" requirement of the Declaratory Judgment Act is

4  satisfied only if "there is a substantial controversy, between parties having adverse legal

5  interests, of sufficient immediacy and reality." *SanDisk Corp. v. STMicroelectronics,*

6  *Inc.*, 480 F.3d 1372, 1378 (Fed. Cir. 2007) (emphasis added) (quoting *MedImmune, Inc.*

7  *v. Genentech, Inc.*, 127 S. Ct. 764, 771 (2007) (internal quote omitted)). In its recent

8  *MedImmune* case, "[t]he Supreme Court emphasized that Article III requires that the

9  dispute at issue be 'definite and concrete, touching the legal relations of parties having

10  adverse legal interests'; and that it be 'real and substantial' and 'admi[t] of specific

11  relief through a decree of a conclusive character, as distinguished from an opinion

12  advising what the law would be upon a hypothetical state of facts.'" *SanDisk Corp.*,

13  480 F.3d at 1378 (emphasis added) (quoting *MedImmune*, 127 S. Ct. at 771 (internal

14  quotes omitted)).

15      What does that mean in the context of a patent?

16      "[D]eclaratory judgment jurisdiction generally will not arise merely on the

17  basis that a party learns of the existence of a patent owned by another or even perceives

18  such a patent to pose a risk of infringement, without some affirmative act by the

19  patentee." *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1380-81 (Fed.

20  Cir. 2007). By contrast, jurisdiction exists "where a patentee asserts rights under a

21  patent based on certain identified ongoing or planned activity of another party." *Id.*,

22  480 F.3d at 1381 (emphasis added). A case or controversy exists where the patent

23  holder "has explicitly identified the patents it believes that [the accused infringer]

24  infringes, the relevant claims of those patents, and the relevant . . . products that it

25  alleges infringe those patents." *Sony Elecs., Inc. v. Guardian Media Techs., Ltd.*, 2007

26  U.S. App. LEXIS 18465, 37-38 (Fed. Cir. 2007) (emphasis added).

27

28

14

**B.    There is no actual controversy with State Farm Mutual over the '072 patent.**

For the '434 patent and the '938 patent, LPL provided claim charts showing how specific State Farm Mutual marketing campaigns infringed the patents. This created a case or controversy between LPL and State Farm Mutual as to those two patents. By contrast, LPL did not accuse State Farm Mutual of infringing the '072 patent, and never identified an example of a marketing campaign or any other conduct that infringed the '072 patent. The subject of potential infringement of the '072 patent came up only once during the two-years of discussions between LPL and State Farm -- at the very beginning. On June 24, 2005, LPL sent a letter to State Farm Bank accusing it of infringing the '434 patent in its credit card marketing. Exh. 1 at 2. LPL attached two examples of infringement of the '434 patent. Exh. 1 at attachments 1 and 2. In that same letter, LPL said, "We <u>suspect</u> State Farm Bank and its affiliate companies in the State Farm Group <u>may</u> also be infringing claims of the '072 Patent." *Id.* at 2 (emphasis added).

This suspicion created no actual controversy. On its face, this statement does not identify a dispute "of sufficient immediacy and reality" or that is "definite and concrete." *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1378 (Fed. Cir. 2007) (quoting *MedImmune, Inc. v. Genentech, Inc.*, 127 S. Ct. 764, 771 (2007) (internal quote omitted)). LPL had not "explicitly identified . . . the relevant . . . products that it alleges infringe." *Sony Elecs., Inc. v. Guardian Media Techs., Ltd.*, 2007 U.S. App. LEXIS 18465, 37-38 (Fed. Cir. 2007).

Moreover, when considered in context, the totality of the circumstances makes clear that there was no case or controversy as to the '072 patent on the day that State Farm Mutual filed suit. For two years after June 24, 2005, LPL and representatives of State Farm exchanged dozens of communications concerning the infringement of LPL patents, and never once mentioned the '072 patent. Tache decl. (exh. 14); Exhs. 2-11. For example, on July 7, 2006, LPL sent to State Farm's lawyer

15

1  information about specific claims of the '938 patent. Exh. 7. On September 27, 2006,

2  LPL provided State Farm's lawyer, with "detailed information regarding infringement

3  of the '938 patent and the '434 patent." Tache decl (exh. 14) at ¶ 5. On October 23,

4  2006, LPL asked State Farm to confirm that they were engaged in "meaningful

5  discussions regarding a license agreement for at least the '434 and '938 patent." Exh. 8.

6  On April 24, 2007, LPL attended an in person meeting with representatives of State

7  Farm in Austin, Texas. Tache decl (exh. 14) ¶¶ 14-17. At that meeting, LPL presented

8  detailed claim charts regarding infringement of the '434 and '938 patent. *Id.*

9         Although there were dozens of communication on the subject of

10  infringement, LPL never accused State Farm Mutual of infringing the '072 patent.

11  Moreover, State Farm represented that it did not yet do any on-statement marketing

12  (marketing on a billing statement or other communication of the sort covered by the

13  '072 patent) and did not plan to do so for the foreseeable future. Tache decl. (exh. 14)

14  ¶¶ 11.

15         In addition, not only was there no actual controversy as to the '072 patent

16  on the date State Farm Mutual filed suit, even as of today no case or controversy exists.

17  "[A]n actual controversy must be extant at all stages of review, not merely at the time

18  the complaint is filed." *Spectronics Corp. v. H.B. Fuller Co.*, 940 F.2d 631, 635 (Fed.

19  Cir. 1991) (quoting *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975)). The burden is on

20  State Farm Mutual "to establish that jurisdiction over its declaratory judgment action

21  existed at, and has continued since, the time the complaint was filed." *Id.* Even as of

22  today, LPL is not aware of any conduct of State Farm Mutual that infringes the '072

23  patent. Libman decl. (exh. 13) ¶ 12.

24         As to the '072 patent, State Farm Mutual asks the Court to "advis[e] what

25  the law would be upon a hypothetical state of facts." *SanDisk Corp.*, 480 F.3d at 1378

26  (internal quotes omitted). There is no case regarding the '072 that is "definite and

27  concrete" or "real and substantial." *SanDisk Corp.*, 480 F.3d at 1378.

28

1    **C.    That there is jurisdiction over two patents does not give the Court**
2         **jurisdiction over the third.**

3         The existence of subject matter jurisdiction over the '434 patent and the
4    '938 patent does not give rise to jurisdiction to declare a judgment as to the '072 patent.
5    "By statutory and common law, each patent establishes an independent and distinct
6    property right. Each patent asserted raises an independent and distinct cause of action."
7    *Kearns v. GMC*, 94 F.3d 1553, 1555 (Fed. Cir. 1996) (internal citations omitted). If an
8    actual controversy exists over one patent this would not support declaratory judgment
9    jurisdiction over a related patent (or even over unasserted claims of the same patent).
10   *See Spectronics Corp. v. H.B. Fuller Co.*, 940 F.2d 631, 635-36 (Fed. Cir. 1991) ("no
11   actual controversy existed to support declaratory judgment with respect to certain patent
12   claims, where patent holder abandoned allegation of infringement of those claims prior
13   to trial and there was no threat of future suit").

14        Because there is no actual controversy between State Farm Mutual and
15   LPL or Phoenix as to the '072 patent, there is no subject matter jurisdiction as to that
16   patent.

17   **V.    Conclusion.**

18        For the foregoing reasons, the Court should dismiss the action for lack of
19   subject matter jurisdiction.

20
21   Dated: September 4, 2007              Respectfully submitted,
22
23                                        **GALLAGHER & KENNEDY, P.A.**
24
                                          By:___s/Mark Deatherage_____
25                                            Mark Deatherage
26                                            2575 East Camelback Road
                                              Phoenix, Arizona 85016-9225
27                                            Attorneys for Defendants
28

17

# Exhibit 4

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| Discover Products, Inc. | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:07-cv-05776 |
| | ) | |
| vs. | ) | Judge James B. Moran |
| | ) | |
| LPL Licensing, L.L.C., and | ) | |
| Phoenix Licensing, L.L.C., | ) | **ORAL ARGUMENT REQUESTED** |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANTS' MOTION TO DISMISS

Defendants LPL Licensing, L.L.C. and Phoenix Licensing, L.L.C. (hereafter "Defendants" or "LPL") hereby move the Court to dismiss Plaintiff's Complaint for dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. Proc. 12(b)(1) and pursuant to the first- to-file rule.

Defendants' motion to dismiss is based on two independent grounds: First, this case should be dismissed under the first-to-file rule because Discover Products' claims were filed after the Texas Action and allowing these claims to continue would waste time, effort, and money. Second, this Court should exercise its discretion to decline to hear Discover Products' declaratory judgment claims because this case falls outside the purposes of the Declaratory Judgment Act and dismissal will allow the most efficient resolution of all the disputes between parties in one court: the Eastern District of Texas.

In support of its Motion, Defendants hereby submit their Memorandum in Support of Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and the Declaration of Sean A. Luner.

Dated: November 14, 2007             Respectfully submitted,

Timothy J. Haller
Kara L. Szpondowski
Niro, Scavone, Haller & Niro
181 W. Madison, Suite 4600
Chicago, IL 60602
*Counsel for Defendants, Phoenix Licensing LLC*

## <u>CERTIFICATE OF SERVICE</u>

    The undersigned attorney of record hereby certifies that a copy of the foregoing **Defendants' Motion to Dismiss** was filed with the Clerk of the Court using CM/ECF system, on November 14, 2007:

Donald Joseph Mizerk
Winston & Strawn LLP
35 West Wacker Drive
Chicago, IL 60601-9703
(312) 558-5600 (phone)
(312) 558-5700 (fax)
Email: dmizerk@winston.com
*Counsel for Plaintiff*

3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| Discover Products, Inc.           ) <br><br> Plaintiff,      ) <br><br> vs.            ) <br><br> LPL Licensing, L.L.C., and <br> Phoenix Licensing, L.L.C.,    ) <br><br> Defendants.    ) <br>           ) | Case No. 1:07-cv-05776 <br><br> Judge James B. Moran <br><br> **ORAL ARGUMENT REQUESTED** |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS

### I.    INTRODUCTION.

Discover Products, Inc. ("Discover Products") is using this declaratory relief lawsuit as part of a coordinated plan to artificially create a multiplicity of lawsuits and misuse the multi-district litigation procedure to work a change of venue that it could not obtain under the proper procedures.  Discover Products' abuse of the judicial system should be rejected and this case should be dismissed based on two independent grounds.

In this action, Discover Products seeks a declaratory judgment relating to three patents[1] owned by defendant LPL Licensing, L.L.C. ("LPL") and exclusively licensed to defendant Phoenix Licensing, L.L.C ("Phoenix").  The defendants in this action, LPL and Phoenix, previously brought claims for patent infringement in the Eastern District of Texas against 23 entities, including Discover Products' parent company, Discover Bank, and Discover Bank's parent, Discover Financial Services[2] (the "Texas Action").[3]

---

[1]    United States Patent Nos. 5,987,434, 6,076,072, and 6,999,938 (the "Patents").  *See* Exh. 4 at 2.

[2]    "Discover Products is a wholly owned subsidiary of Discover Bank.  Discover Bank is a wholly-owned subsidiary of Discover Financial Services."  (Exh. 4 at 1, Discover Products' Complaint).

[3]    *Phoenix Licensing, L.L.C., et al. v. Chase Manhattan Mortgage, et al.*, CA No. 2:07-cv-11387-TJW-CE (Eastern District of Texas).

The defendants in the Texas Action (including Discover Bank and Discover Financial Services) knew that Texas was an appropriate forum for resolving this patent dispute and, that as a result, bringing a motion to transfer the Texas Action to another forum would likely fail. As a result, certain defendants in the Texas Action responded by artificially un-consolidating the Texas action into various forums, so that they could then move the Panel on Multi-District Litigation to re-consolidate the actions, but in a forum *other* than Texas. Discover Bank had its wholly owned subsidiary, Discover Products, file this lawsuit in the Northern District of Illinois, while three other Texas defendants had subsidiaries file similar declaratory relief actions in Delaware and Arizona. (*See* Luner Decl. ¶ 5). A few days later, certain defendants in the Texas Action moved the Panel on Multi-District Litigation to consolidate the declaratory relief actions and the Texas Action in any place but Texas. (*See* Luner Decl. ¶5). These tactics do nothing but waste judicial resources.

This motion to dismiss Discover Products' complaint is based on two independent grounds:

First, this case should be dismissed under the first-to-file rule because Discover Products' claims were filed after the Texas Action and allowing these claims to continue would waste time, effort, and money.

Second, this Court should exercise its discretion to decline to hear Discover Products' declaratory judgment claims because this case falls outside the purposes of the Declaratory Judgment Act and dismissal will allow the most efficient resolution of all the disputes between parties in one court: the Eastern District of Texas.

Each independent basis for dismissing this case is addressed in turn.

## II.    DISCOVER PRODUCTS BEARS THE BURDEN OF PROVING JURISDICTION WITH EVIDENCE.

Two important principles guide this Court's review of this motion.

First, the burden of proving subject matter jurisdiction rests solely on Discover Products. "The burden of establishing jurisdiction in the district court lies with the party seeking to invoke the court's jurisdiction." *Cedars-Sinai Medical Ctr. v. Watkins*, 11 F.3d 1573, 1584 (Fed. Cir. 1993).

Second, to meet its burden, Discover Products may not rest on the allegations in the Complaint. "If the Rule 12(b)(1) motion denies or controverts the pleader's allegations of jurisdiction, however, the movant is deemed to be challenging the factual basis for the court's subject matter jurisdiction. In such a case, the allegations in the complaint are not controlling, and only uncontroverted factual allegations are accepted as true for purposes of the motion. All other facts underlying the controverted jurisdictional allegations are in dispute and are subject to factfinding by the district court." *Cedars-Sinai*, 11 F.3d at 1584 (internal citations omitted); *Jervis B. Webb Co. v. Southern Systems, Inc.*, 742 F.2d 1388, 1399 (Fed. Cir. 1984) ("where, as here, the declaratory defendant (patentee) has denied the factual allegations that allegedly support the existence of case or controversy, the declaratory plaintiff must prove the existence of facts underlying such allegations").

Discover Products cannot meet that burden here.

## III.    DISCOVER PRODUCTS' COMPLAINT SHOULD BE DISMISSED UNDER THE FIRST-TO-FILE RULE.

Under the first-to-file rule, a district court should dismiss a second-filed lawsuit that is duplicative of an action involving similar parties and similar issues previously filed in another district. *Pacesetter Systems, Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94-95 (9th Cir. 1982) ("There is a generally recognized doctrine of federal comity which permits a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district.")

Federal courts disfavor duplicative litigation. *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) ("the general principle is to avoid duplicative litigation."). The Supreme Court has "made quite clear that to permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money." *Ferens v. John Deere Co.*, 494 U.S. 516, 531 (1990) (citation omitted). "The concern manifestly is to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result." *West Gulf Maritime Assoc. v. ILA Deep Sea Local 24*, 751 F.2d 721, 728 (5th Cir. 1985).

3

To avoid duplicative litigation, a district court should dismiss a second-filed lawsuit that is duplicative of an action involving similar parties and similar issues already filed in another district. *Pacesetter*, 678 F.2d at 94-95 (affirming dismissal of second-filed declaratory judgment action brought by alleged infringer in favor of first-filed action brought by patent holder); *see Hart Schaffner & Marx v. Charming Shoppes, Inc.*, 1984 U.S. Dist. LEXIS 16909, *6 (N.D. Ill. May 7, 1984) (Exh. 5) (dismissing second-filed action because proceeding with a second-filed action while another federal court was considering a challenge to personal jurisdiction in a first-filed action would be "intrud[ing] into the sphere of another federal court's authority"); *Great N. R. Co. v. National Railroad Adjustment Board, First Div.*, 422 F.2d 1187, 1193 (7th Cir. 1970) ("the comity doctrine is one based on notions of sound judicial administration and requires that when two identical actions are filed in courts of concurrent jurisdiction, the one which first acquired jurisdiction should be the one to try the lawsuit. The purposes of the rule are to avoid unnecessarily burdening courts and to avoid possible embarrassment from conflicting results.").

An action for patent infringement and a declaratory judgment action for non-infringement involving the same patents and similar parties fall squarely within the first-to-file rule. *Genentech, Inc. v. Eli Lilly Co.*, 998 F.2d 931, 937-38 (Fed. Cir. 1993). This is because a declaratory judgment claim of non-infringement will necessarily be litigated in an action for infringement and a declaratory judgment claim of invalidity, can, should be (and, in the Texas Action has been) asserted as a counterclaim in the action for infringement.

Courts look to three factors, each based in common sense, when applying the first-to-file rule:

> (1) chronology of the actions;
>
> (2) the similarity of the parties; and
>
> (3) the similarity of the issues.

*See Pacesetter*, 678 F.2d at 94-95; *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106 (2nd Cir. 2006). All three factors demonstrate that the first-to-file rule applies here.

<u>Chronology</u>: The Texas Action was filed first on August 31, 2007, more than a month before Discover Products filed its duplicative declaratory judgment claim in the Northern District of Illinois on October 11, 2007. (*See* Exhs. 1 and 4).

<u>Similarities of the Parties</u>: <u>First</u>, the defendants in this action, LPL and Phoenix, are identical to the Plaintiffs in the Texas Action. <u>Second</u>, Discover Products, the plaintiff in this

action is substantially the same as the other Discover entities in the original Texas Action. The original complaint in the Texas Action included both Discover Products' parent, and its parent's parent. (Exh. 1). The complaint in this action confirms the similarity between the parties, blurring any distinction between the plaintiff in this case, Discover Products, and its parent company, Discover Bank. (*See, e.g.*, Exh. 4 at 4) ("With respect to the patents-in-suit, Discover Bank [Defendant in the Texas Action] and Discover Products [Plaintiff in this action"] are similarly situated.") Accordingly, "the parties in both actions are similar enough to apply the first to file rule. Again, strict identity is not needed, only substantial similarity." *Arris Int'l, Inc. v. Hybrid Patents, Inc. (In re Com21, Inc.)*, 357 B.R. 802, 807 (Bankr. D. Cal. 2006). Third, because (a) LPL and Phoenix amended the complaint in the Texas Action to include Discover Products (Exh. 2), and the first to file rule applies to the date of the original complaint, the parties are not only substantially the same, they are identical. (*See* Exhs. 2, 4); *Guthy-Renker Fitness, LLC v. Icon Health & Fitness, Inc.*, 179 F.R.D. 264, 270 (C.D. Cal. 1998) ("In making this determination, the court should employ the date on which the original, rather than the amended, complaint was filed."); *Arris Int'l*, 357 B.R. at 807 ("It makes no difference that Arris had not yet been joined as a party in the Texas litigation when it initiated this adversary proceeding.").

The issues are identical. The Texas Action involves the infringement and validity of the three Patents. This litigation involves the infringement by the Discover entities and validity of the exact same three Patents. (*See, e.g.*, Exh. 1 at 4) ("With respect to the patents-in-suit, Discover Bank [Defendant in the Texas Action] and Discover Products [Plaintiff in this action"] are similarly situated.") Accordingly, the issues in the litigation are not only similar – they are identical.

All three factors demonstrate that this action should be dismissed based on the first-to-file rule. Permitting this case to go forward would serve no useful purpose. Given this overlap of identical issues and similarity of parties in the Texas Action and the action here, applying the first-to-file rule will conserve judicial resources by avoiding duplicative litigation while maintaining this action would likely waste judicial resources, risk inconsistent rulings involving the same patents and products, and impose an unreasonable and unnecessary burden on the parties to litigate the same issues in multiple forums. For example, litigating two separate actions would result in:

- duplicative discovery: (a) producing the same documents relating to the validity and infringement in both actions, (b) two depositions of the invalidity witnesses, (c) two depositions of the inventor; and

- two claim construction hearings on the same claim terms which could result in inconsistent constructions.

*See* Section IV(B) below, describing in detail how the practicality and efficiency require this case to be dismissed.[4]

Discover Products may assert that an unrelated entity (State Farm) actually filed the first action involving the Patents in the District of Arizona before LPL and Phoenix initiated the Texas Action (the "State Farm Action").[5] Luner decl. ¶ 4. The State Farm Action, however, has no bearing on this motion. First, as to this lawsuit and the Texas Action, the Texas Action was filed first. This chronology is not affected by the State Farm Action. Second, as to the Discover entities, the Texas Action was the first filed action. The Discover entities were not part of the earlier State Farm Action. Third, LPL and Phoenix filed a motion to dismiss the State Farm Action for lack of jurisdiction which, if granted, would make the Texas Action the first filed lawsuit among all of the actions. (Exh. 3.) At best, Discover Products could make an ineffective argument in the Texas Action that the Texas Action should be dismissed in light of the Arizona Action. Such an argument, however, is not a basis for this Court to maintain this action.

---

[4]     In addition to applying the first-to-file rule, this case should also be dismissed because declaratory relief actions should be dismissed in favor of coercive actions. "Where a declaratory action and a coercive action involving the same parties and issues present, as here, the specter of redundant litigation requiring transfer or dismissal of one of them, the Seventh Circuit applies a general rule in favor of the coercive action even if, as here, the coercive action was filed later." *Buztronics, Inc. v. Theory3, Inc.*, 2005 U.S. Dist. LEXIS 8661 (D. Ind. May 9, 2005) (Exh. 8); *Tempco Elec. Heater Corp. v. Omega Engineering, Inc.*, 819 F.2d 746, 749-50 (7th Cir. 1987) (affirming dismissal of first-filed declaratory judgment action in favor of later-filed coercive action). The Texas Action is the coercive action, alleging that the Patents are valid and infringed. The present action is a declaratory relief action claiming the reverse, that the same Patents are invalid and not infringed. Accordingly, even if the Discover entities had filed this declaratory relief action first before the coercive Texas Action, is should still be dismissed in favor of the coercive action.

[5]     *State Farm Mutual Automobile Insurance Company v. LPL Licensing, L.L.C., et al.*, CA No. 2:07-cv-01329-MHM (District of Arizona).

**IV.    THIS COURT SHOULD EXERCISE ITS DISCRETION TO DECLINE JURISDICTION OVER A DECLARATORY RELIEF ACTION THAT IS NOT WITHIN THE CORE PURPOSE OF THE DECLARATORY JUDGE ACT.**

Under the Declaratory Judgment Act, a district court has discretion whether to hear a claim for declaratory relief. *See* 28 U.S.C. § 2201(a) ("[A]ny court . . . may declare the rights and other legal relations of any interested party seeking such declaration" (emphasis added)). "The Declaratory Judgment Act states that courts 'may' grant relief; it does not require courts to grant relief." *Sony Elecs., Inc. v. Guardian Media Techs., Ltd.*, 497 F.3d 1271, 1287 (Fed. Cir. 2007). "[E]ven if a case satisfies the actual controversy requirement, there is no absolute right to a declaratory judgment, for the statute specifically entrusts courts with discretion to hear declaratory suits or not depending on the circumstances." *Serco Servs. Co., L.P. v. Kelley Co.*, 51 F.3d 1037, 1039 (Fed. Cir. 1995). "This text has long been understood 'to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants.'" *MedImmune, Inc. v. Genentech, Inc.*, 127 S. Ct. 764, 776 (2007) (*quoting Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995)). "[T]he [Supreme] Court explained that 'the statute's textual commitment to discretion, and the breadth of leeway we have always understood it to suggest, distinguish the declaratory judgment context from other areas of the law.'" *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 813 (Fed. Cir. 1996) (*quoting Wilton*, 515 U.S. at 286).

In determining whether a case is appropriate for declaratory judgment jurisdiction, district courts should consider:

> (1) how closely this action fits with the core purposes of the Declaratory Judgment Act, and
>
> (2) considerations of practicality and judicial economy.

*EMC*, 89 F.3d at 814.

Here, the "purposes of the Declaratory Judgment Act and the principles of sound judicial administration" both weigh heavily against this Court accepting subject matter jurisdiction. *Id.* at 813-14. Each factor is discussed in turn below.

**A.    Discover Products declaratory judgment complaint should be dismissed because it is outside the purpose of the Declaratory Judgment Act.**

This case should be dismissed because it is outside the purpose of the Declaratory Judgment Act.

In deciding whether to use its discretion to hear this matter, the Court should consider whether this is one of the "cases closer to the central objectives of declaratory proceedings." *EMC,* 89 F.3d at 814; *MedImmune,* 127 S. Ct. at 776 (the declaratory judgment act "vest[s] district courts with discretion" to consider "facts bearing on the usefulness of the declaratory judgment remedy").

The Core:   In the patent context, at the core of declaratory judgment jurisdiction is a case where "'the patent owner attempts extra-judicial patent enforcement with scare-the-customer-and-run tactics that infect the competitive environment.'" *EMC,* 89 F.3d at 814 (*quoting Arrowhead Industrial Water, Inc. v. Ecolochem, Inc.,* 846 F.2d 731, 735 (Fed. Cir. 1988)). In such a case, "a patent owner engaging in 'extra-judicial patent enforcement' tactics rendered its competitors 'helpless and immobile so long as the patent owner refused to grasp the nettle and sue.'" *Sony,* 497 F.3d at 1285 (*quoting Arrowhead,* 846 F.2d at 735); *see Capo, Inc. v. Dioptics Med. Prods.,* 387 F.3d 1352, 1356 (Fed. Cir. 2004) (declaratory judgment jurisdiction appropriate where patent holder's "threats were not aimed at negotiation, but at impeding a competitor's commercial activity").

The periphery:   At the opposite end of the spectrum are cases where the declaratory judgment plaintiff files suit while the parties are still engaged in settlement discussions. *EMC,* 89 F.3d at 814 (stating that the plaintiff's conduct was "inconsistent" with the purposes of the Declaratory Judgment Act where plaintiff "took advantage of the fact that [patentee] had deferred . . . litigation because of its belief that settlement negotiations were under way.") (*quoting NSI Corp. v. Showco., Inc.,* 843 F. Supp. 642, 645-46 (D. Or. 1994)).

Off the chart:   Beyond any relationship with the purpose of the Declaratory Relief Act are cases where a patent owner has already sued a defendant or related entity, thereby eliminating any uncertainty as to whether the patent owner will bring a lawsuit, and the accused party responds with a separate declaratory relief action:  "the Declaratory Judgment Act was intended to fix the problem that arises when the other side does not sue." *Sony,* 497 F.3d at 1284 (emphasis added); *First Fishery Dev. Service, Inc. v. Lane Labs USA, Inc.,* 1997 WL 579165, *2 (S.D. Cal. July 21 1997) (Exh. 6). ("Uncertainty that warrants declaratory relief generally relates to whether the Plaintiff might be sued."). If, on the other hand, a lawsuit has already been filed, "'it would be inappropriate to reward – and indeed abet – conduct which is inconsistent with the sound policy . . . conservation of judicial resources.'" *EMC,* 89 F.3d at 814 (*quoting Davox*

*Corp. v. Digital Systems International, Inc.*, 846 F. Supp. 144, 148 (D. Mass. 1993)). Where the patent holder has already brought suit against an alleged infringer, a later filed declaratory judgment action serves no useful purpose and should be dismissed. *Id*; *First Fishery*, 1997 WL 579165 at *3-4.

Where does the present case fall on the spectrum? This case is off the chart:

| Center of declaratory judgment jurisdiction. | Suing based on uncertainty as to whether the patent holder will sue while refusing to file suit. *EMC*, 89 F.3d at 814. |
|---|---|
| Peripheral of declaratory relief. | Taking advantage of the fact that the patentee deferred litigation to pursue settlement negotiations. *EMC*, 89 F.3d at 814. |
| Off the chart. | Filing a lawsuit after the patent owner has already filed a lawsuit. *Sony*, 497 F.3d at 1284. Attempting to (a) un-consolidate an action by filing multiple declaratory relief actions, and (b) re-consolidate the action it in more favorable jurisdiction. |

The present circumstances are not at the core of the Declaratory Judgment Act. Phoenix and LPL have not been threatening Discover Products' customers with the Patents, but refusing to "grasp the nettle and sue." Discover Products does not face the type of uncertainty that the Declaratory Judgment Act contemplates. Nor is this a case at the periphery. Discover Products did not merely elect to file suit during settlement discussions. Rather, Discover Products decided it needed declaratory relief only after LPL and Phoenix filed suit against the other Discover entities. This case has no relationship to the underlying purpose of the Declaratory Judgment Act.

Moreover, forum shopping, when a declaratory relief plaintiff files a first action to secure its choice forum, is way outside the core of declaratory judgment jurisdiction. Because "[f]orum shopping is a concern . . . as between different federal courts . . . [c]ourts have discretion under the Declaratory Judgment Act, to prevent such 'procedural fencing.'" *First Fishery*, 1997 WL 579165 at *3. As a result, courts have frequently dismissed a duplicate declaratory judgment action that is brought as a means for forum shopping. *See, e.g., id.* at *4 ("This Court will not countenance such preemptive forum shopping. Accordingly, the action will be dismissed."). "The wholesome purpose of declaratory acts would be aborted by its use as an instrument of

procedural fencing either to secure delay or to choose a forum." *American Automobile Insurance*, 103 F.2d at 617." *Tempco Elec. Heater Corp. v. Omega Eng'g*, 819 F.2d 746, 750 (7th Cir. 1987). "It was not intended by the act to enable a party to obtain a change of tribunal and thus accomplish in a particular case what could not be accomplished under the removal act, and such would be the result in the instant case." *American Auto. Ins. Co. v. Freundt*, 103 F.2d 613, 617 (7th Cir. 1939). Yet Discover Products is attempting to use the Declaratory Relief Act to transfer the Texas Action to another jurisdiction. Discover Products (and other defendants in the Texas Action) are attempting to inappropriately use the Declaratory Judgment Act as an instrument of "procedural fencing" to secure a different choice of forum that they may not be able to obtain using appropriate methods by attempting to:

- un-consolidate the Texas Action by filing a declaratory relief action, thereby artificially creating duplicative litigation; and

- arguing that their self-created duplicative litigation is inefficient and requesting the MDL panel to consolidated the litigation in any jurisdiction other than Texas.

(Luner Decl. ¶ 6) There was no multiplicity of actions until Discover Products and other certain entities artificially create such actions by filing three declaratory judgment actions in various jurisdiction and then request to consolidate them in an attempt to misuse the multi-district procedure to work a change of venue that could not be obtained under proper procedures. Discover Products cannot provide this court with any valid justification for filing this declaratory relief action rather than addressing its issues in the Texas Action. Its actions are needlessly duplicating litigation, and forcing the parties and this Court to waste substantial time and resources litigating procedural issues instead of moving forward to resolve the parties' patent claims on the merits.

Moreover, filing a declaratory relief action in reaction to another lawsuit is clearly outside the purpose of the Declaratory Relief Act. *See, e.g., Continental Casualty Co. v. Robsac Indus.*, 947 F.2d 1367, 1371 (9th Cir. 1991) ("if a declaratory judgment suit is defensive or reactive, that would justify a court's decision not to exercise jurisdiction."); *see also Government Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998) ("federal courts should generally decline to entertain reactive declaratory actions").

Declaratory relief is intended to serve a unique function in patent disputes, eliminating multiple litigation and protecting competitors from infringement actions that are threatened but not pursued. In contrast to those policies,

> Pacesetter's declaratory judgment action multiplies litigation. It does not shield
> Pacesetter from an unfair threat of an infringement action, but attempts to remove
> ongoing litigation from the forum chosen by the plaintiff.

*Pacesetter Systems, Inc. v. Medtronic, Inc.*, 678 F.2d 93, 97 (9th Cir. 1982) (citations
omitted) (emphasis added). In this case, Discover Products was not even the first-to-file
but rather filed in reaction to the Texas Action, thereby creating "multiple litigation."

Discover Products' declaratory relief action is not in the core of the Declaratory Relief
Act – it is not even at the outermost periphery – is it off the chart and should be rejected. This
factor weighs strongly in favor of the Court declining to exercise jurisdiction.

**B.      Considerations of practicality and efficient judicial administration weigh in
favor of dismissal.**

For suits brought under the Declaratory Judgment Act, "the normal principle that federal
courts should adjudicate claims within their jurisdiction yields to considerations of practicality
and wise judicial administration." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995). The
comprehensive Texas Action is central to the analysis of the efficient resolution of the dispute
between LPL, Phoenix, and Discover Products. Because the Texas Action includes claims for
patent infringement by LPL and Phoenix against Discover Financial Services, Discover Bank,
and Discover Products on the exact same three Patents, it includes the exact same claims
between the exact same parties as in the present case. As to these claims and parties, the
existence of two lawsuits will necessarily entail complete duplication of efforts by the courts and
the parties and the risk of inconsistent judgments. And, the inefficient judicial administration
created by this declaratory judgment action extends beyond the claims against Discover
Products. The Texas Action also includes other claims that give rise to inefficiencies and
duplication: claims against other defendants on the Patents. The considerations for judicial
administration for all of these are described below.

The risk of inconsistent judgments. As to the claims against Discover Products, Discover
Bank, and Discover Financial Services on the Patents, there is an obvious risk of judgments that
are inconsistent at every level. Moreover, there is a risk of inconsistent claim constructions and
inconsistent findings of validity or invalidity on the Patents as between this case and the case
against the other defendants in the Texas Action. Finally, there is the risk of inconsistent claim

constructions. This factor weighs in favor of discretionary dismissal. *Cingular Wireless LLC v. Freedom Wireless, Inc.*, 2007 U.S. Dist. LEXIS 47957, at \*16 (D. Ariz. June 26, 2007) (Exh. 7) ("The opportunity for inconsistent judgments between the . . . pending cases weighs on this Court, the risk of which favors discretionary dismissal.")

    <u>Duplication of judicial resources</u>. In construing claim terms, a court will have to learn the nuances of the patent specifications and the lengthy prosecution history. This will require a complete duplication of effort as between this Court and the Texas Court. Similarly, when considering issues of invalidity based on prior art, both Courts will have to duplicate efforts to understand the prior art, to identify the differences between the invention and the prior art, and to evaluate the objective indicators of non-obviousness. "The certainty of wasted resources weighs strongly in favor of dismissal. *See Lonza Inc. v. Rohm and Haas, Inc.*, 951 F. Supp. 46, 50 (S.D.N.Y. 1997) ('[T]here is simply no reason why the patent issues in dispute should be litigated in two different fora.');" *Cingular Wireless*, 2007 U.S. Dist. LEXIS 47957, at \*16.

    <u>Duplicative discovery and trial efforts</u>. In both the present case and the Texas Action, there will be substantial duplication of discovery. In particular, it is likely that duplicative depositions would be taken of witnesses such as the inventor, the attorneys who prosecuted the patents, and key prior art witnesses. Similarly, there would be duplication of testimony and exhibits at trial. That would be true, again, as to all four categories of claims in Texas. "Therefore, the other actions in Texas will require the presence of the parties, counsel, witnesses and inventors regardless of this dispute's location, which weighs in favor of discretionary dismissal." *Cingular Wireless*, 2007 U.S. Dist. LEXIS 47957, at \*14.

    <u>Ability of the other forum to handle this case</u>. Another factor is whether the other forum, in this instance the Eastern District of Texas, has the ability to administer the disputes. The litigation in Texas involves 23 defendants and three patents. Moreover, each of the patents contains multiple claims. The '434 patent has 56 separate claims. The '072 patent has 134 separate claims. The '938 patent has 312 separate claims. And, a successful reexamination of the '434 patent has just been completed by the Patent and Trademark Office, in which 104 additional claims were added for a total of 160 claims in that patent. Relevant here is "the Eastern District of Texas' adoption of special rules for patent infringement actions, which streamline discovery, claim construction and other pre-trial matters. While any United States District Court, including this one, can afford all parties the timeliness, fairness, justice and

competence required to resolve their patent disputes, the Court is persuaded that the Eastern District of Texas' special rules will most efficiently promote sound judicial administration." *Cingular Wireless*, 2007 U.S. Dist. LEXIS 47957, at n.3.

> Convenience for parties. Another factor is the convenience of the forum for the parties. Arizona and Texas are convenient forums for the patent holder. And many of the defendants have their principal business operations on the East Coast, for example in New York (*e.g.*, J.P. Morgan Chase), or South Carolina (*e.g.*, Liberty Life). Overall, Texas is centrally located and provides as convenient a forum as any for these claims. This factor slightly favors Texas. *See also Cingular Wireless*, 2007 U.S. Dist. LEXIS 47957, at *17 (considering that although the patent holder "maintains its principal place of business in Phoenix, Arizona," at least one accused infringer had "its principal place of business in Plano, Texas.").

*   *   *

In sum, every significant factor for practical and efficient judicial administration weighs in favor of declining to exercise jurisdiction in this case.

## VI. CONCLUSION

For the foregoing reasons, the Court should dismiss the action for lack of subject matter jurisdiction and pursuant to the first-to-file rule.

Dated: November 14, 2007

Respectfully submitted,

*Kara Szpondowski*

Timothy J. Haller
Kara L. Szpondowski
Niro, Scavone, Haller & Niro
181 W. Madison, Suite 4600
Chicago, IL 60602
*Counsel for Defendants, Phoenix Licensing LLC and LPL Licensing LLC.*

## BEFORE THE JUDICIAL PANEL
## ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: Phoenix Licensing, L.L.C., Patent Litigation | MDL Docket No. <u>1910</u> |

### LPL LICENSING, L.L.C. AND PHOENIX LICENSING, L.L.C.'S
### <u>REASONS WHY ORAL ARGUMENT SHOULD BE HEARD</u>

Respondents Licensing, L.L.C. and Phoenix Licensing, L.L.C. ("Plaintiffs") respectfully requests oral argument on the Motion to Consolidate and submit that oral argument should be heard because:

1.    The Motion raises a substantial question regarding the use of Section 1407 as a device to work a change of venue.  Movants' attempt to transfer an action by (a) un-consolidating the action by filing declaratory judgment actions as predicates for a motion to transfer, and then (b) attempting re-consolidate them in any forum other than Plaintiffs' selected forum raises important questions of the application of Section 1407 to patent disputes.

2.    Oral argument will serve to focus the questions before the Panel and permit discussion of (a) the various declaratory relief actions, (b) the basis for the pending motions to dismiss the various declaratory relief actions, (c) the patents, and (d) technology issues as they relate to transfer in more depth than can be accomplished in the parties' briefs.


Dated: December 2, 2007                Respectfully submitted,



Sean A. Luner
Cal State Bar No. 165443
Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
Telephone: (310) 656–7066
Facsimile: (310) 656–7069
Email:  sean@dovellaw.com
ATTORNEY FOR LPL LICENSING, L.L.C.
AND PHOENIX LICENSING, L.L.C.

**BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: Phoenix Licensing, L.L.C., Patent Litigation | MDL Docket No. <u>1910</u> |

**<u>PROOF OF SERVICE</u>**

I hereby certify that copies of LPL Licensing, L.L.C. and Phoenix Licensing, L.L.C's (1) Response to Citi Parties' Motion to Consolidate and Transfer Under 28 U.S.C. § 1407; (2) Reasons Why Oral Argument Should be Heard; (3) this Proof of Service were served by first-class mail on December 3, 2007 to the following:

> Clerk, District of Arizona (Phoenix)
> Sandra Day O'Connor US Court
> 401 W. Washington Street, Suite 130, SPC 1
> Phoenix, AZ 85003-2118
>
> Clerk, District of Delaware (Wilmington)
> 844 N. King Street, LB 18
> Wilmington, DE 19801
>
> Clerk, Northern District of Illinois (Chicago)
> Everett McKinley Dirksen Building
> 219 S. Dearborn Street
> Chicago, IL 60604
>
> Clerk, Eastern District of Texas (Marshall)
> 100 E. Houston Street, Room 125
> Marshall, TX 75670

R. William Beard, Jr.
BAKER & BOTTS LLP
1500 San Jacinto Center
98 San Jacinto Blvd.
Austin, TX 78701-4287
**Counsel for Plaintiff:**
**(1) State Farm Mutual Automobile Insurance Company;** *State Farm Mutual Automobile Insurance Company v. LPL Licensing, et al.;* District of Arizona (Phoenix), No. 2:07-cv-01329-MHM
**(2) State Farm Bank, F.S.B.;** *State Farm Bank, F.S.B. v. LPL Licensing, L L.C. et al.* ; District of Arizona (Phoenix), No. 2:07-cv-01895-HRH

David S. Bloch
WINSTON & STRAWN LLP
101 California Street
39th Floor
San Francisco, CA 94111
**Counsel for Plaintiff: Discover Products, Inc.;** *Discover Products, Inc. v. Phoenix Licensing, L. L. C., et al.* ; Northern District of Illinois (Chicago), No. 1 :07-CV-05776
**Counsel for Defendants: Discover Financial Services, Inc. and Discover Bank;** *Phoenix Licensing, L.L.C., et al. v. Chase Manhattan Mortgage, et al.;* Eastern District of Texas (Marshall), No. 2:07-cv- 00387-TJW-CE

Edwin R. DeYoung
LOCKE LORD BISSELL & LIDDELL LLP
2200 Ross Avenue
Suite 2200
Dallas, TX 75201
**Counsel for Plaintiff: Citicorp Credit Services, Inc.:** *Citicorp Credit Services, Inc. v. Phoenix Licensing, L.L.C., et al.;* District of Delaware (Wilmington), No. 1:07-cv-00649

William R. Hansen
LATHROP & GAGE LC
230 Park Avenue
Suite 1847
New York, NY 10169
**Counsel for Defendants: Response Worldwide Ins. Co., Direct Response Corp., and Warner Ins. Co.:** *Phoenix Licensing, L. L. C., et al. v. Chase Manhattan Mortgage, et al.;* Eastern District of Texas (Marshall), No. 2:07-cv-00387-TJW-CE

K. Gregory Haynes
WYATT TARRANT & COMBS LLP
PNC Plaza, Suite 2800
500 W. Jefferson Street
Louisville, KY 40202-2898
**Counsel for Defendant: Liberty Life Insurance Co.:** *Phoenix Licensing, L. L. C., et al. v. Chase Manhattan Mortgage, et al.;* Eastern District of Texas (Marshall), No. 2:07-cv-00387-TJW-CE

Rachel Krevans
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
**Counsel for Defendants: USAA Federal Savings Bank and USAA Bank:** *Phoenix Licensing, L.L. C., et al. v. Chase Manhattan Mortgage, et al.;* Eastern District of Texas (Marshall), No. 2:07-cv-00387-TJW-CE

William C. Rooklidge
HOWREY LLP
2020 Main Street
Suite 1000
**Counsel for Defendants: Countrywide Home Loans, Inc. and Countrywide Insurance Services, Inc.:** *Phoenix Licensing, L. L. C., et al. v. Chase Manhattan Mortgage, et al. ;* Eastern District of Texas (Marshall), No. 2:07-cv-00387-TJW-CE

Chase Manhattan Mortgage Corporation
C/O CT Corporation System
350 N. St. Paul St.
Dallas, TX 75201
**Defendant:** *Phoenix Licensing, L.L.C., et al. v. Chase Manhattan Mortgage, et al.;* Eastern District of Texas (Marshall), No. 2:07-cv-00387-TJW-CE

GMAC Mortgage, L.L.C.
C/O Corporation Service Company
701 Brazos St., Suite 1050
Austin, TX 78701
**Defendant:** *Phoenix Licensing, L.L.C., et al. v. Chase Manhattan Mortgage, et al.;* Eastern District of Texas (Marshall), No. 2:07-cv-00387-TJW-CE

GMAC Insurance Marketing, Inc.
C/O CT Corporation System
350 N. St. Paul St.
Dallas, TX 75201
**Defendant:** *Phoenix Licensing, L.L.C., et al. v. Chase Manhattan Mortgage, et*

*al.;* Eastern District of Texas (Marshall), No. 2:07-cv-00387-TJW-CE

GMAC Bank
C/O Corporation Service Company
701 Brazos St., Suite 1050
Austin, TX 78701
**Defendant**: *Phoenix Licensing, L.L.C., et al.* v. *Chase Manhattan Mortgage, et al.* ; Eastern District of Texas (Marshall), No. 2:07-cv-00387-TJW-CE

JP Morgan Chase Bank
C/O CT Corporation System
350 North St. Paul Street
Dallas, TX 75201
**Defendant**: *Phoenix Licensing, L.L.C., et al. v. Chase Manhattan Mortgage, et al.;* Eastern District of Texas (Marshall), No. 2:07-cv-00387-TJW-CE

Dated: December 3, 2007                    Respectfully submitted,


Sean A. Luner
Cal State Bar No. 165443
Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
Telephone: (310) 656–7066
Facsimile: (310) 656–7069
Email:  sean@dovellaw.com
ATTORNEY FOR LPL
LICENSING, L.L.C. AND PHOENIX
LICENSING, L.L.C.