IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CITICORP CREDIT SERVICES, INC.,

Plaintiff,

v.

LPL LICENSING, LLC, and PHOENIX LICENSING, L.L.C.,

Defendants.

C.A. No. 07-649-JJF (LPS)

**REPLY BRIEF IN SUPPORT OF CONSOLIDATED MOTIONS TO DISMISS DEFENDANTS LPL LICENSING, L.L.C. AND PHOENIX LICENSING, L.L.C.**

January 4, 2008

BAYARD

Richard D. Kirk (rk0922)
222 Delaware Avenue, Suite 900
Wilmington, Delaware 19899-5130
rkirk@bayardfirm.com
(302) 655-5000
Attorneys for Defendants,
LPL LICENSING, L.L.C. and
PHOENIX LICENSING, L.L.C.

OF COUNSEL:

Gregory Dovel
Sean Luner
Dovel & Luner, LLP
201 Santa Monica, Suite 600
Santa Monica California 90401
(310) 656-7066

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .......... ii

I. INTRODUCTION. .......... 1

II. THE FIRST-FILED RULE APPLIES AND THIS ACTION SHOULD BE DISMISSED. .......... 2

A. The first-filed rule applies even though Citicorp was not originally a party in the Texas Action. .......... 2

B. That the Arizona Action was filed first does not mean that this third action should proceed. .......... 6

III. THIS CASE SHOULD BE DISMISSED BECAUSE CITICORP CANNOT ESTABLISH THE REQUISITE "CASE OR CONTROVERSY." .......... 7

IV. CITICORP'S DECLARATORY JUDGMENT COMPLAINT SHOULD BE DISMISSED BECAUSE IT IS OUTSIDE THE PURPOSE OF THE DECLARATORY JUDGMENT ACT AND WILL NOT CONSERVE JUDICIAL RESOURCES. .......... 11

V. CITICORP'S BASIS FOR JURISDICTION OVER PHOENIX FAILS. .......... 14

VI. CITICORP'S JUSTIFICATION FOR FILING THIS ACTION IS BOTH IRRELEVANT AND WRONG. .......... 19

VII. CONCLUSION. .......... 20

# TABLE OF AUTHORITIES

Page

**Cases**

*Abajian v. Kennedy*,
1992 Del. Ch. LEXIS 6, Del. Ch., C.A. No. 11425, Allen, C. (Jan. 17, 1992) ........................ 17

*Abbott Labs. v. Johnson & Johnson, Inc.*,
2007 U.S. Dist. LEXIS 87288 (D. Del. 2007) ........................................................................ 4

*Advanta Corp. v. Visa U.S.A.*,
1997 U.S. Dist. LEXIS 2007 (E.D. Pa. 1997) ........................................................... 2, 3, 4, 6

*Alcoa Inc. v. Alcan Inc.*,
2007 U.S. Dist. LEXIS 51565 (D. Del. 2007) ...................................................................... 14

*Arrowhead Industrial Water, Inc. v. Ecolochem, Inc.*,
846 F.2d 731 (Fed. Cir. 1988)................................................................................................ 12

*Benitec Austl., Ltd. v. Nucleonics, Inc.*,
495 F.3d 1340 (Fed. Cir. 2007)................................................................................................ 9

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985)......................................................................................................... 17, 18

*Corixa Corp. v. Idec Pharms. Corp.*,
2002 U.S. Dist. LEXIS 2980 (D. Del. 2002) ........................................................................... 3

*Davox Corp. v. Digital Systems International, Inc.*,
846 F. Supp. 144 (D. Mass. 1993) ......................................................................................... 13

*E.E.O.C. v. University of Pennsylvania*,
850 F.2d 969 (3d Cir. 1988)........................................................................................... 2, 4, 5

*EchoStar Satellite LLC v. Finisar Corp.*,
515 F. Supp. 2d 447 (D. Del. 2007)..................................................................................... 9-10

*EMC Corp. v. Norand Corp.*,
89 F.3d 807 (Fed. Cir. 1996)....................................................................................... 11, 12, 13

*First Fishery Dev. Service, Inc. v. Lane Labs USA, Inc.*,
1997 WL 579165 (S.D. Cal. 1997) ........................................................................................ 13

*Guthy-Renker Fitness, LLC v. Icon Health & Fitness, Inc.*,
179 F.R.D. 264 (C.D. Cal. 1998) ............................................................................................. 5

*Hanson v. Denckla*,
357 U.S. 235 (1958) ..... 18

*Intel Corp. v. Silicon Storage Tech.*,
20 F. Supp. 2d 690 (D. Del. 1998) ..... 14, 16

*Kehr Packages v. Fidelcor, Inc.*,
926 F.2d 1406 (3d Cir. 1991) ..... 7

*Marten v. Godwin*,
499 F.3d 290 (3d Cir. 2007) ..... 14

*MedImmune, Inc. v. Centocor, Inc.*,
409 F.3d 1376 (Fed. Cir. 2005) ..... 10

*MedImmune, Inc. v. Genentech*, Inc.,
127 S. Ct. 764 (U.S. 2007) ..... 10

*Newspan, Inc. v. Hearthstone Funding Corp.*,
1994 Del. Ch. LEXIS 52, Del. Ch., C.A. No. 13304, 1994 WL 198721,
Allen, C. (May 10, 1994) ..... 17

*Pacesetter Systems v. Medtronic, Inc.*,
678 F. 2d 93 (9th Cir. 1982) ..... 13

*Physician Endorsed LLC v. Clark*,
374 F. Supp. 2d 395 (D. Del. 2005) ..... 16

*SanDisk Corp. v. STMicroelectrnoics NV*,
480 F.3d 1372 (Fed. Cir. 2007) ..... 7, 8, 9, 10

*Schering Corp. v. Amgen Inc.*,
969 F. Supp. 258 (D. Del. 1997) ..... 3, 5

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004) ..... 16

*Sony Elecs., Inc. v. Guardian Media Techs., Ltd.*,
497 F.3d 1271 (Fed. Cir. 2007) ..... 13

*Time Warner Cable, Inc. v. United States Video Tech. Corp.*,
2007 U.S. Dist. LEXIS 80582 (D. Del. 2007) ..... 3, 5, 6

*Tracinda Corp. v. DaimlerChrysler AG (In re DaimlerChrysler AG Sec. Litig.)*,
197 F. Supp. 2d 86 (D. Del. 2002) ..... 14, 16, 17

*Trintec Indus. v. Pedre Promotional Prods.*,
395 F.3d 1275 (Fed. Cir. 2005) ..... 19

*URS Corp. v. Lebanese Co. for the Dev. & Reconstruction of Beirut Cent. Dist. SAL*,
512 F. Supp. 2d 199 (D. Del. 2007) .......... 17, 18

*Wilton v. Seven Falls Co.*,
515 U.S. 277 (1995) .......... 12

**Statutes**

10 Del. C. § 3104(c)(1-6) .......... 16

**Rules**

FED. R. CIV. P. 12(b)(2) .......... 14, 18

## I. Introduction.

In their opening brief (D.I. 10, hereafter "Op. Br."), Phoenix and LPL established four independent bases for dismissing this action:

(1) this case should be dismissed under the first-filed rule (Op. Br. at 4-8);

(2) Citicorp's complaint should be dismissed for lack of subject matter jurisdiction because Citicorp has not established the requisite case or controversy (Op. Br. at 8-11);

(3) the Court should decline jurisdiction over this declaratory relief action that is not within the core purposes of the Declaratory Judgment Act and will not conserve juridical resources (Op. Br. at 11-19); and

(4) Citicorp's claim against Phoenix should be dismissed for lack of personal jurisdiction (Op. Br. 19-25).

In its answering brief in opposition (D.I. 17, hereafter "Ans. Br."), Citicorp does not provide any valid response to any of these four independent bases. Although it is undisputed that Citicorp has the burden of presenting evidence to defeat this motion (*see* Op. Br. at 3-4), Citicorp fails to do so. For example,

(1) first-to-file rule: Citicorp presents no evidence that this lawsuit, which involves the exact same parties and patents as the Texas Action, involves different subject matter than the Texas Action;

(2) case or controversy requirement: Citicorp presents no evidence of the required "certain identified ongoing or planed activity" that allegedly forms the basis for this dispute;

(3) Court's discretion: Citicorp presents no evidence that maintaining this action, as well as the duplicative Texas Action, will conserve judicial resources; and

(4) personal jurisdiction: Citicorp presents only invalid theories—no evidence.

Accordingly, this motion should be granted based on each of these four independent grounds.

## II. The first-filed rule applies and this action should be dismissed.

As explained in the opening brief, under the first-to-file rule, a district court should dismiss a second-filed lawsuit that is duplicative of an action involving similar parties and similar issues previously filed in another district. *E.E.O.C. v. University of Pennsylvania*, 850 F.2d 969, 971 (3d Cir. 1988). "The Third Circuit has held that invocation of the first-filed rule is the norm, not the exception and courts must be presented with exceptional circumstances before exercising their discretion to depart from the rule." *Advanta Corp. v. Visa U.S.A.*, 1997 U.S. Dist. LEXIS 2007, at *4-5 (E.D. Pa. 1997) (citing *E.E.O.C.*, 850 F.2d at 979) (emphasis added). In its opposition, Citicorp did not present any such "exceptional circumstances."

Citicorp does not and cannot dispute that:

- if the first-to-file rule applies, this case should be dismissed;
- the Texas Action was filed before this action;
- this case and the Texas Action involve the exact same subject matter—the validity, enforceability, and infringement of the exact same three patents; and
- the exact same claims between LPL, Phoenix, and Citicorp are currently being litigated in the Texas Action and in this action.

Citicorp argues, however, that the first-to-file rule does not apply to this case for two reasons. Both fail and are addressed in turn.

### A. The first-filed rule applies even though Citicorp was not originally a party in the Texas Action.

Citicorp's primary argument is that the first-to-file rule does not apply because Citicorp was not a party to the original first-filed action. Although Citicorp's parent, Citigroup, and five other Citicorp affiliates were part of the first-filed Texas Action, Citicorp argues that "Contrary to Phoenix/LPL's contentions, the fact that the Texas Action was filed against other defendants before CCSI file this action does not make the Texas Action the first-filed action with respect to CCSI." Ans. Br. at 5 (emphasis added). In making this argument, Citicorp ignores both the law and the facts.

The law: in determining whether the first-to-file rule applies, the law is clear—contrary to Citicorp's assertion, identity of the same parties in both actions is not required:

- *Advanta*, 1997 U.S. Dist. LEXIS 2007, at *6 ("the first-filed rule is not limited in application to litigation involving only the same claims and the same parties") (emphasis added);
- *Time Warner Cable, Inc. v. United States Video Tech. Corp.*, 2007 U.S. Dist. LEXIS 80582, at *17 (D. Del. 2007) ("The Third Circuit applies the first-filed rule to litigation that involves the same subject matter, not necessarily the same parties.") (emphasis added);
- *Id.* at *19 ("Third Circuit precedent which holds that first-filed rule applies if the subsequently filed action involves different parties.") (emphasis added); and
- *Id.* at *16 ("This court has held that the first-filed action is determined by 'which court first obtains possession of the subject of the dispute, not the parties of the dispute.'") (quoting *Schering Corp. v. Amgen Inc.*, 969 F. Supp. 258, 267 (D. Del. 1997) (emphasis added).

Citicorp's argument that the exact same parties must be involved in both suits ignores the purposes of the first-to-file rule: to discourage duplicative lawsuits, to promote judicial efficiency, and to avoid inconsistent results:

- not requiring the same parties to be in both lawsuits "ensures that the first-filed rule 'achieve[s] resolution in a single lawsuit of all disputes from common matters.'" *Time Warner*, 2007 U.S. Dist. LEXIS 80582, at *16 (quoting *Corixa Corp. v. Idec Pharms. Corp.*, 2002 U.S. Dist. LEXIS 2980, at *4 (D. Del. 2002)) (emphasis added);
- "[Citicorp's] interpretation of the first-filed rule would 'encourage rather than discourage duplicative suits,' which would defeat the purpose of the rule." *Id.* at *19 (quoting *Advanta*, 1997 U.S. Dist. LEXIS 2007, at *6-7) (emphasis added);
- "[Citicorp] cannot avoid application of the first-filed rule simply by asserting that it was not initially a party to the earlier filed action. The first-filed rule turns on which court first obtains possession of the subject of the dispute, not the parties of the dispute.

> Otherwise, the first-filed rule would encourage rather than discourage duplicative suits by parties in [Citicorp's] position that are aware of pending judicial actions or face related administrative proceedings. *Advanta*, 1997 U.S. Dist. LEXIS 2007, at *6-7.

Accordingly, the analysis depends on whether the "subject matter" is the same, not the parties. *E.E.O.C.*, 850 F.2d at 971 (holding first-filed rule applies to court "the court which first has possession of the subject must decide it").

The facts: The first-filed Texas Action indisputably involves the same "subject matter" as this lawsuit such that litigating both lawsuits would encourage and not discourage duplicate litigation, be a waste of resources, and potentially produce inconsistent results.

First, the two lawsuits involve the exact same subject matter—the same three patents.[1] As a result, maintaining this action would waste judicial resources, risk inconsistent rulings involving the same patents, and impose an unreasonable and unnecessary burden on the parties to litigate the same issues in multiple forums. For example, maintaining these two actions would result in:

- duplicative discovery: (a) the same documents relating to the validity and infringement would be produced in both actions, (b) two depositions of the invalidity witnesses, (c) two depositions of the inventor; and
- two claim construction hearings on the same claim terms which could result in inconsistent constructions.

Second, the defendants in this action, LPL and Phoenix, are identical to the plaintiffs in the Texas Action.

Third, contrary to Citicorp's suggestion, the first-filed action was not just brought against "other defendants." Ans. Br. at 5. Rather, the first-filed action was brought against Citicorp's own parent and five affiliate companies: (1) Citibank NA, (2) Citibank USA, (3) Citibank (South Dakota), NA, (4) Citimortgage, Inc., (5) Citigroup, Inc., and (6) Citi Assurance

1 Citicorp cites *Abbott Labs. v. Johnson & Johnson, Inc.*, 2007 U.S. Dist. LEXIS 87288, at *11-12 (D. Del. 2007), to suggest that the subject matter is different in this case than in the Texas Action. In *Abbott*, however, the two cases involved different subject matter—different patents. The two cases at issue here involve the exact same three patents.

Services, Inc. *See* Exh. 2; Exh. 6.[2] Citicorp "provides credit card administrative support and marketing services for Citibank (South Dakota), NA," an initial defendant in the Texas Action. Exh. A. at ¶3. Citicorp does not and cannot demonstrate that its alleged infringement is in any way different, let alone significantly different, than its parent's and affiliates' infringement.

Fourth, Citicorp completely ignores the principle that the fist-to-file rule applies as of the date of the original complaint. *Guthy-Renker Fitness, LLC v. Icon Health & Fitness, Inc.*, 179 F.R.D. 264, 270 (C.D. Cal. 1998) ("In making this determination, the court should employ the date on which the original, rather than the amended, complaint was filed."); *Arris,* 357 B.R. at 807 ("It makes no difference that Arris had not yet been joined as a party in the Texas litigation when it initiated this adversary proceeding."); *Schering Corp. v. Amgen Inc.*, 969 F. Supp. 258, *267 (D. Del. 1997) (the "point of inquiry is the original complaint, not the amended complaint.") (citing *E.E.O.C. v. University of Pennsylvania*, 850 F.2d 969, 970 (3d Cir. 1988) ("In all cases of federal concurrent jurisdiction, the court which first has possession of the subject must decide it."). Citicorp completely ignores this principle. Because (a) the Texas Action was amended to include Citicorp (Exh. 2), and (b) the first-to-file rule applies to the date of the original complaint, the parties in the two actions are identical. Even under Citicorp's inappropriately narrow application of the first-to-file rule, which requires strict identity of the parties, the rule still applies.

LPL and Phoenix's "patent infringement suit in the Texas litigation is the first-filed action because the Eastern District of Texas first obtained the subject matter in dispute." *Time Warner*, 2007 U.S. Dist. LEXIS 80582, at *17. Accordingly, this action should be dismissed.

---

2 In fact, the single two-page declaration submitted by Citicorp in response to this motion was by not even submitted by a Citicorp employee but rather from Citicorp's parent, Citigroup (who was a party to the initial Texas Action), and addresses communications with Citigroup, not Citicorp. Exh. A ¶ 1, 4.

**B. That the Arizona Action was filed first does not mean that this third action should proceed.**

Citicorp argues that this case should not be dismissed because "the Arizona Action would be the first-filed action." Ans. Br. at 4. Citicorp, however, cannot provide any legal or rational basis to support its argument that its third-filed lawsuit should not be dismissed. As explained in LPL's opening brief, this argument has no merit:

- First, as to this lawsuit and the Texas Action, the Texas Action was filed first. This chronology is not affected by the State Farm Action.
- Second, as to the Citi entities, the Texas Action was the first filed action. The Citi entities were not part of the earlier State Farm Action.
- Third, LPL and Phoenix filed a motion to dismiss the State Farm Action for lack of jurisdiction which, if granted, would make the Texas Action the first filed lawsuit among all of the actions. Exh. 3.

As explained in the opening brief, at best, Citicorp could make the argument in the Texas Action that the Texas Action should be dismissed in light of the State Farm Action based on forum shopping or some other basis. Such an argument, however, is not a basis for this Court to maintain this duplicative third-filed action.

* * *

"The first-filed rule reduces multiple conflicting decisions which may require separate appeals, and ensures that litigants receive a single determination of their controversy." *Time Warner*, 2007 U.S. Dist. LEXIS 80582, at *16. There are "no exceptional circumstances present here to warrant a departure from that rule." *Advanta,* 1997 U.S. Dist. LEXIS 2007, at *7. "[I]t would create economic waste to duplicate this litigation in the District of Delaware." *Time Warner*, 2007 U.S. Dist. LEXIS 80582, at *21-22. Permitting this case to go forward would serve no useful purpose. Given the complete overlap of identical issues and parties in the Texas Action and the action here, applying the first-to-file rule will conserve judicial resources by avoiding duplicative litigation, avoid inconsistent results, and discourage multiple litigation. Accordingly, this case should be dismissed under the first-to-file rule.

**III. This case should be dismissed because Citicorp cannot establish the requisite "case or controversy."**

In its opposition, Citicorp acknowledges that in the context of a patent dispute, to establish the requisite "actual controversy," Citicorp, at a minimum, must specify "certain identified ongoing or planned activity" that forms the basis of the dispute. Ans. Br. at 9 (quoting *SanDisk Corp. v. STMicroelectrnoics NV*, 480 F.3d 1372, 1381 (Fed. Cir. 2007)) ("[W]here a patentee asserts rights under a patent based on certain identified ongoing or planned activity of another party, and where that party contends it has the right to engage in the accused activity without license, and Article III case or controversy will arise.") (emphasis added). Although Citicorp acknowledges that it has the burden of identifying such specific activity (*see* Op. Br. at 3-4; *Kehr Packages v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)), Citicorp failed to identify any specific "ongoing or planned activity." Instead, Citicorp states that "[t]he parties' difference of opinion on whether CCSI may engage in certain marketing activities without a license from LPL/Phoenix constitutes a justiciable controversy." Ans. Br. at 9 (emphasis added). But Citicorp does not identify what "certain marketing activities" are allegedly at issue. Citicorp's failure to identify such activities is sufficient in itself to dismiss the complaint.

In an effort to obscure its failure to identify the "certain identified ongoing or planned activity" necessary to establish an "actual controversy," Citicorp makes four arguments. Each fails and is addressed in turn.

First, Citicorp states that "Attorneys for LPL communicated with attorneys for Citigroup prior to the filing of any lawsuit." Ans. Br. at 8 (emphasis added) (citing a declaration submitted by a Citigroup attorney). "Communicating" with attorneys for Citigroup, however, does not satisfy the requisite "case or controversy" requirement:

(1) stating that attorneys "communicated" is not a substitute for presenting evidence of the "certain ongoing or planned activity" necessary to establish an "actual controversy."

(2) had Citicorp actually identified specific Citigroup activities (not just "communicated"), Citicorp still does not and cannot explain why specific

Citigroup activities (not Citicorp activities) establish a case and controversy between LPL, Phoenix, and Citicorp. Either (i) Citigroup and Citicorp activities are the same, in which case, even under Citicorp's analysis of the first-filed rule, this case should be dismissed because the same infringing activities were at issue in the initial Texas Action, or (ii) Citigroup and Citicorp activities are unrelated, in which case, identifying Citigroup activities is just as irrelevant as identifying the specific activities of other unrelated defendants, and there is no actual controversy as to Citicorp.[3]

Second, Citicorp states that the "case or controversy" requirement is satisfied because "[t]he LPL attorneys communicated an extremely broad view of LPL's patent claims and contended, among other things, that marketing materials of the type prepared by CCSI were covered by their patents." Ans. Br. at 9. Taking a broad view of the patents without identifying any allegedly infringing "certain identified ongoing or planned activity" does not establish the requisite case or controversy. *SanDisk*, 480 F.3d at 1381. Under Citicorp's novel case or controversy standard, if a patentee takes a "broad view" of its patents, a "case or controversy" exists between the patentee and any party, whether or not any specific activities are identified and whether or not there is even any correspondence between the patent holder and the potential declaratory relief plaintiff. Citicorp does not and cannot provide any support for such a broad case or controversy standard. And stating that there were communications involving marketing materials "of the type prepared by CCSI" does not substitute for specifying the requisite "certain identified ongoing or planned activity."

Third, Citicorp states that "LPL/Phoenix's filing of the Texas Action alleging infringement against over 20 companies in the banking and insurance industry confirmed CCSI's

---

3 Citicorp is caught between the proverbial rock and hard place. If Citicorp argues that Citigroup's and Citicorp's infringing activities are the same then Citicorp's argument that the first-filed case did not involve Citicorp's infringement crumbles. But if Citigroup and Citicorp engage in different "activities," identifying Citigroup's activities cannot establish a case or controversy as to Citicorp. Accordingly, this motion must either be granted under the first-to-file rule (even under Citicorp's inappropriately narrow application of the rule), or this motion must be granted because there is no case or controversy as to Citicorp.

belief that LPL held a broad view of their patents and that LPL/Phoenix would eventually sue CCSI for alleged patent infringement." Ans. Br. at 9. There are three critical flaws with Citicorp's argument:

(1) How does the filing of the Texas Action confirm any belief that LPL held a broad view of the patents? The Complaint does not articulate a narrow or broad view of any claims but rather simply states that the defendants "have infringed, contributed to the infringement, and induced other to infringe" the patents (Exh. 1 at ¶ 7). The complaint "confirms" neither a broad nor narrow view of the patents.

(2) How does filing a lawsuit against 20 companies suggest that LPL/Phoenix "would eventually sue CCSI for alleged patent infringement?" If anything, that LPL/Phoenix sued Citicorp's parent and five related Citicorp entities <u>but not Citicorp</u> suggests that LPL/Phoenix would not be suing Citicorp. What possible reason would LPL/Phoenix have to sue Citicorp's parents and five Citicorp related entities but <u>not</u> Citicorp if LPL/Phoenix intended to bring a lawsuit against Citicorp?

(3) Most importantly, filing the Texas Action against other entities is not a substitute for Citicorp's requirement to "certain identified ongoing or planed activity." *SanDisk*, 480 F.3d at 1381.

<u>Fourth</u>, Citicorp argues that "Defendants cannot say that a case or controversy does not exist when they have amended their complaint in the Texas Action after this suit was filed to assert against CCSI the very claims this action seeks to put to rest." Ans. Br. at 4. The allegations in the amended Texas Action, however, do not save Citicorp's argument. The case or controversy requirement must be established at the time Citicorp's complaint was filed. As explained in the opening brief, adding Citicorp to the Texas Action after Citicorp filed this action does not retroactively create standing: "The burden is on the party claiming declaratory judgment jurisdiction to establish that such jurisdiction existed at the time the claim for declaratory relief was filed and that it has continued since." *Benitec Austl., Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1344 (Fed. Cir. 2007); *EchoStar Satellite LLC v. Finisar Corp.*, 515 F.

Supp. 2d 447, at *9 (D. Del. 2007) ("the presence or absence of a case or controversy is based on facts at the time the Complaint was filed"); *MedImmune, Inc. v. Centocor, Inc.*, 409 F.3d 1376, 1381 (Fed. Cir. 2005) ("the presence or absence of a case or controversy is based on facts at the time the complaint was filed"). Accordingly, Citicorp cannot use the amended complaint in the Texas Action to establish a case or controversy in this case. Moreover, as expressly stated in the amended complaint in the Texas Action:

> In the Citicorp Complaint, the only basis that Citicorp provides to support its declaratory relief claims are the allegations in the present case:
>
> > "On August 31, 2007, [Phoenix and LPL] filed Case No. 2-07cv-387 in the United States District Court fro the Eastern District of Texas, Marshall Division, accusing 22 companies in the financial products and services industry, including certain affiliates of [Citicorp] of patent infringement with respect to the patents-in-suit. In light of those allegations, [Citicorp] believes that a controversy also exists between it and [Phoenix and LPL] over whether [Citicorp's business practices have infringed, and are continuing to infringe, the patents-in-suit and whether the patents-in-suit are valid. This controversy is continuing and ongoing, and is ripe for resolution by the Court."
>
> Citicorp Complaint at 10-11. Plaintiffs have requested additional information from Citicorp but Citicorp has refused to provide any additional information regarding the bases for its claims. Accordingly, Plaintiff' allegations against Citicorp in this Amended Complaint are solely based on the Citicorp Complaint.

Affidavit of Sean Luner, D.I. 17, Exh. 2 at ¶ 14. In the Texas Action, LPL and Phoenix do not state that a case or controversy exists. Rather, LPL and Phoenix allege that <u>if</u> a case or controversy exists between Citicorp and the Plaintiffs, it should be litigated in Texas Action.

* * *

Because Citicorp fails to specify "certain identified ongoing or planed activity of another party" that forms the basis of this alleged, dispute, Citicorp cannot satisfy the case or controversy requirement. *SanDisk*, 480 F.3d at 1381. To satisfy this requirement, the "actual controversy" must be "<u>definite and concrete</u>, touching the legal relations of parties having adverse legal interests." *SanDisk*, 480 F.3d at 1378 (quoting *MedImmune, Inc. v. Genentech,* Inc., 127 S. Ct. 764, 771 (U.S. 2007)) (emphasis added). Citicorp's attempts to substitute

"definite and concrete" evidence with vague statements about communications between LPL and Citicorp's parent company does not create an actual controversy as to Citicorp's unidentified business practices. Citicorp's declaratory judgment claims seek resolution of a hypothetical, not actual, controversy and must be dismissed.

## IV. Citicorp's declaratory judgment complaint should be dismissed because it is outside the purpose of the Declaratory Judgment Act and will not conserve judicial resources.

In the opening brief, LPL and Phoenix demonstrate that, under the Declaratory Judgment Act, a district court has discretion whether to hear a claim for declaratory relief and that, in determining whether a case is appropriate for declaratory judgment jurisdiction, district courts should consider:

> (1) how closely this action fits with the core purposes of the Declaratory Judgment Act, and
>
> (2) considerations of practicality and judicial economy.

*EMC Corp. v. Norand Corp.*, 89 F.3d 807, 813-14 (Fed. Cir. 1996). LPL and Phoenix demonstrated that the "purposes of the Declaratory Judgment Act and the principles of sound judicial administration" both weigh heavily against this Court accepting subject matter jurisdiction. *Id.* at 813-14. In its opposition, Citicorp does not and cannot demonstrate that this analysis is improper. Instead, Citicorp argues that this declaratory relief action, filed after LPL and Phoenix had already brought a patent infringement action against Citicorp's parent and five affiliates over the same three patents in another jurisdiction, fits squarely within the core of the Declaratory Relief Act. Citicorp's argument fails.

First, Citicorp fails to even address the second critical question: whether the Court should exercise its discretion to hear this case based on "principles of sound judicial administration." *Id.* Citicorp ignores this question because Citicorp could not possibly make any rational argument that, based on "principles of sound judicial administration," it makes sense to litigate one case in Texas in which three patents are asserted against Citicorp, Citicorp's parent, and five affiliates and a second case here against Citicorp involving the exact same three patents.

These two separate lawsuits will necessarily entail complete duplication of efforts by the courts and the parties and risk inconsistent judgments. As set forth in detail in the opening brief, "principles of sound judicial administration" demonstrate that this case should be dismissed:

- to avoid the risk of inconsistent judgments;
- to avoid duplication of judicial resources;
- to avoid duplicative discovery and trial efforts; and
- because the other forum is well suited to handle this case.

Op. Br. at 16-19. For suits brought under the Declaratory Judgment Act, "the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995). Citicorp's utter failure to address this critical factor is a sufficient basis alone to dismiss this action.

Second, as to how closely this action fits with the core purposes of the Declaratory Judgment Act, as set forth in the opening brief, a case is at the core of the Act if a patent owner is using a patent to intimidate a competitor's customers "with scare-the-customer-and-run tactics that infect the competitive environment," while refusing to file suit. *EMC*, 89 F.3d at 814 (quoting *Arrowhead Industrial Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 735 (Fed. Cir. 1988)). At the opposite end of the spectrum are cases where the "declaratory judgment plaintiff took advantage of the fact that [patentee] had deferred the filing of expensive and probably protracted litigation because of its belief that settlement negotiations were under way," by filing a declaratory judgment suit to preempt the patent holder's choice of forum. *Id.* (internal quotation marks omitted). Citicorp does not dispute that the foregoing constitutes the controlling legal standard.

What are the facts? Citicorp does not and cannot provide any evidence that LPL ever engaged in any form of intimidation of customers or similar extra-judicial enforcement activities such that its case would fall within the core of the Declaratory Relief Act. Citicorp does not face the type of uncertainty that the Declaratory Judgment Act contemplates. Instead, Citicorp asserts that its declaratory relief action falls within the core of the declaratory relief act

because "[r]ather than wait for LPL/Phoenix to take action, CCSI chose to file this declaratory judgment action to settle the matter." Ans. Br. at 10. This argument ignores the fact that LPL/Phoenix was already taking action. Not only was LPL taking action, it was taking action against Citicorp's parent and five other Citicorp affiliates based on the same infringement at issue in this case. Citicorp did not attempt to "preempt the patent holder's choice of forum," which is outside purpose of the Declaratory Relief Act. Citicorp's actions were even farther outside the purposes of the Declaratory Relief Action. Citicorp filed this declaratory relief action after the patent holder had already chosen its forum. Citicorp decided it needed declaratory relief only after LPL and Phoenix filed suit against the other Citicorp entities for the same infringements.

This case has no relationship to the underlying purpose of the Declaratory Judgment Act: "the Declaratory Judgment Act was intended to fix the problem that arises when the other side does not sue." *Sony Elecs., Inc. v. Guardian Media Techs., Ltd.*, 497 F.3d 1271, 1284 (Fed. Cir. 2007) (emphasis added); *First Fishery Dev. Service, Inc. v. Lane Labs USA, Inc.*, 1997 WL 579165, *2 (S.D. Cal. 1997) ("Uncertainty that warrants declaratory relief generally relates to whether the Plaintiff might be sued."). If a lawsuit has already been filed, "'it would be inappropriate to reward—and indeed abet—conduct which is inconsistent with the sound policy . . . conservation of judicial resources.'" *EMC*, 89 F.3d at 814 (quoting *Davox Corp. v. Digital Systems International, Inc.*, 846 F. Supp. 144, 148 (D. Mass. 1993)). Where the patent holder has already brought suit against an alleged infringer, a later filed declaratory judgment action serves no useful purpose and should be dismissed. *Id.*; *First Fishery*, 1997 WL 579165, at *3-4.

> Declaratory relief is intended to serve a unique function in patent disputes, eliminating multiple litigation and protecting competitors from infringement actions that are threatened but not pursued. In contrast to those policies, Pacesetter's declaratory judgment action multiplies litigation. It does not shield Pacesetter from an unfair threat of an infringement action, but attempts to remove ongoing litigation from the forum chosen by the plaintiff.

*Pacesetter Systems v. Medtronic, Inc.*, 678 F. 2d 93, 97 (9th Cir. 1982) (citations omitted) (emphasis added).

* * *

This declaratory relief action should be dismissed because:

(1) filing a declaratory relief action after a first action was already pending involving the exact same subject matter falls way outside the core purposes of the Declaratory Judgment Act, and

(2) considerations of practicality and judicial economy dictate that two pending actions involving the exacts same parties and issues should not be litigated simultaneously in two different jurisdictions.

## V. Citicorp's basis for jurisdiction over Phoenix fails.

As set forth in LPL and Phoenix's motion, under Rule 12(b)(2) of the Federal Rules of Civil Procedure, a court must dismiss a suit if the court lacks jurisdiction over the person. Rule 12(b)(2). With respect to such a motion, the party bringing an action (Citicorp) has the burden of establishing a prima facie basis for personal jurisdiction. *Marten v. Godwin*, 499 F.3d 290, 295 (3d Cir. 2007); *Tracinda Corp. v. DaimlerChrysler AG (In re DaimlerChrysler AG Sec. Litig.)*, 197 F. Supp. 2d 86, 94 (D. Del. 2002) ("On a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant"). To meet this burden, a plaintiff must produce admissible evidence, which, if believed, would be sufficient to establish the existence of personal jurisdiction. *Alcoa Inc. v. Alcan Inc.*, 2007 U.S. Dist. LEXIS 51565 (D. Del. 2007) ("plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence").

As set forth in the opening brief, determining whether there is personal jurisdiction involves a "two steps of jurisdictional analysis" which includes evaluating whether the jurisdiction satisfies (1) the state's long-arm statute (in this case, Delaware's long arm statute), and (2) constitutional due process (based on general or specific jurisdiction). *Intel Corp. v. Silicon Storage Tech.*, 20 F. Supp. 2d 690, 694 (D. Del. 1998). Again, Citicorp does not and cannot dispute this law. Ans. Br. at 11.

In its opening brief, Phoenix provided evidence that it has no contacts with Delaware, let alone the requisite minimum contacts sufficient to (1) satisfy Delaware's long arm statue, or (2) establish general or specific jurisdiction. Op. Br. at 21-22; Libman decl. ¶¶ 3-4. In response to this motion, Citicorp presents no evidence. None. Instead, Citicorp presents three "theories" which it does not and cannot tie to either the Delaware long-arm statue, general jurisdiction, or specific jurisdiction:

> Phoenix has several contacts with Delaware related to the subject of this lawsuit that are known to CCSI: (1) it has accused several Delaware corporations, including CCSI, of infringing the Patents; (2) it has apparently entered into a long-term exclusive licensing agreement with LPL, which is a Delaware LLC; and (3) it made LPL its agent for purposes of licensing the Patents. Because these contacts are related to the subject matter of the case at bar, the contacts are sufficient to subject Phoenix to specific jurisdiction in Delaware.

Ans. Br. at 11. Even if Citicorp provided evidence to establish each of these theories, they would neither satisfy Delaware's long arm statute nor the constitutionally required specific or general jurisdiction.[4]

First, none of these three theories fall within the six categories which establish jurisdiction over a person under Delaware's long-arm statute. The Delaware long-arm statute states that a court may exercise personal jurisdiction over any nonresident who:

> (1) Transacts any business or performs any character of work or service in the State;
> (2) Contracts to supply services or things in this State;
> (3) Causes tortuous injury in the State by an act or omission in this State;
> (4) Causes tortuous injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State;
> (5) Has an interest in, uses or possesses real property in the State; or

4 In its opposition, "CCSI requests that the Court allow CCSI to take limited discovery on the issue of Phoenix's personal jurisdiction before deciding it." Ans. Br. at 4. Citicorp's request should be rejected for two reasons. First, because this case should be dismissed based on the three other grounds set forth above, there is no need to waste the parties time and resources on such discovery. Second, because Citicorp cannot even articulate any valid theory to establish personal jurisdiction, it does not make sense to conduct discovery on its theories, which even if proven to be true, still would not establish jurisdiction.

> (6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation or agreement located, executed or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

10 Del. C. § 3104(c)(1-6); *Intel*, 20 F. Supp. at 695. Neither (1) accusing a company that was incorporated in Delaware of infringing a patent, nor (2) entering into an agreement with a company that was incorporated in Delaware, nor (3) entering into an agency agreement with a company that was incorporated in Delaware is basis for establishing jurisdiction under this statue. In its motion, Citicorp does not even attempt to fit its theories into any of the statutory categories. Accordingly, Citicorp cannot even satisfy this first requirement to establish personal jurisdiction over Phoenix. *Physician Endorsed LLC v. Clark*, 374 F. Supp. 2d 395, 398 (D. Del. 2005) ("the Court concludes that section 3104(c)(1) of the Delaware Long-Arm statute is inapplicable in these circumstances because Physician Endorsed has offered no evidence that Mr. Clark transacts any business in Delaware or performs any type of work or service in the state.") This is sufficient to dismiss this case as to Phoenix.

Second, Citicorp cannot establish general jurisdiction. General jurisdiction attaches when a defendant maintains "continuous and systematic" contacts with the forum state even when the cause of action has no relation to those contacts. "The continuous and systematic business contacts required for the exercise of general jurisdiction are difficult to establish." *Tracinda*, 197 F. Supp. at 98. "This is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). Neither (1) accusing a company that was incorporated in Delaware of infringing a patent, nor (2) entering into an agreement with a company that was incorporated in Delaware, nor (3) entering into an agency agreement with a company that was incorporated in Delaware are the requisite "continuous and systematic" contacts in Delaware necessary to establish general jurisdiction. In its motion, Citicorp does not even attempt to characterize its theories as "continuous and systematic business contacts" within the forum state. Accordingly, Citicorp does not and cannot allege facts sufficient to establish general jurisdiction.

Third, Citicorp also cannot establish specific jurisdiction. Specific jurisdiction attaches when (1) a non-resident purposefully directs its activities towards forum residents; (2) the action arises out of or results from the defendant's forum contacts; and (3) the forum's exercise of jurisdiction would not be unreasonable. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477-478 (1985). "Specific jurisdiction exists when the defendant has purposefully directed his activities toward the forum, and the litigation arises out of or is related to the defendant's contacts with the forum." *Tracinda*, 197 F. Supp. 2d at 93 (D. Del. 2002) (internal citations omitted). Specifically, Citicorp does not and cannot allege that Phoenix purposefully directed its activities toward Delaware and that this declaratory relief action arises out of or is related to Phoenix's contacts with Delaware. Instead, Citicorp alleges that Phoenix had business certain dealings with companies that were not even Delaware residents but who, themselves would be subject to jurisdiction in Delaware because they were incorporated in Delaware. But business dealings (contracts, agency agreements, etc.) with a company that is subject to general jurisdiction in Delaware does not establish jurisdiction in Delaware. *See URS Corp. v. Lebanese Co. for the Dev. & Reconstruction of Beirut Cent. Dist. SAL*, 512 F. Supp. 2d 199, 217 (D. Del. 2007) ("the only Delaware contact alleged is that Radian is organized in Delaware and that SOLIDERE signed a contract with Radian. . . . This sole contact is insufficient to give rise to either general or specific jurisdiction."); *see Abajian v. Kennedy*, 1992 Del. Ch. LEXIS 6, *31, Del. Ch., C.A. No. 11425, Allen, C. (Jan. 17, 1992) ("It is well established law that merely contracting with an entity that is incorporated within [Delaware] does not provide [the] necessary connections . . . to support a finding of jurisdiction"); *Newspan, Inc. v. Hearthstone Funding Corp.*, 1994 Del. Ch. LEXIS 52, *24, Del. Ch., C.A. No. 13304, 1994 WL 198721, at *6, Allen, C. (May 10, 1994) ("Plainly, I would have thought, a contract between a Delaware corporation and a nonresident . . . to transact business outside Delaware, which has been negotiated without

any contacts in this state, cannot alone serve as a basis for personal jurisdiction over the nonresident for actions arising out of that contract.").[5]

To establish jurisdiction, "[t]he defendant must engage in some affirmative act 'by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Burger King*, 471 U.S. at 475-76 (citing *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). Neither (1) accusing a company who is incorporated in Delaware of infringing a patent, nor (2) entering into an agreement with a company that was incorporated in Delaware, nor (3) entering into an agency agreement with a company that was incorporated in Delaware (none of which took place anywhere near Delaware) constitutes a purposeful availment of the privilege of conducting activities within Delaware. None of these contacts, which all took place outside of Delaware, establish the requisite "substantial connection" with Delaware to establish jurisdiction in Delaware. *Id.*

* * *

"Rule 12(b)(2) directs the court to dismiss a case when the court lacks personal jurisdiction over the defendant. FED. R. CIV. P. 12(b)(2). Once a jurisdictional defense has been raised, the plaintiff bears the burden of establishing with reasonable particularity that sufficient minimum contacts have occurred between the defendant and the forum to support jurisdiction. The plaintiff must produce sworn affidavits or other competent evidence." *URS Corp. v. Lebanese Co. for the Dev. & Reconstruction of Beirut Cent. Dist. SAL*, 512 F. Supp. 2d 199, 216 (D. Del. 2007) (internal quotations omitted). In response to this motion, Citicorp presented no evidence. Instead, Citicorp presented three theories, which, even if proven true, would not establish jurisdiction. Accordingly, this case must be dismissed as to Phoenix.

---

5 According to Citicorp's analysis, if a California resident, who has never had contacts outside of California leases an apartment from a company that was incorporated in Delaware, the California resident is subject to personal jurisdiction in Delaware. There is obviously no legal support for such an analysis.

**VI. Citicorp's justification for filing this action is both irrelevant and wrong.**

In its opposition, Citicorp attempts to justify its filing of this duplicative action, stating that Citicorp "might have been able to intervene in the Texas Action rather than filing this action" but "that would not have made sense because: (1) neither CCSI nor LPL/Phoenix has any offices or employees in Texas; (2) none of the events that are the subject to the parties dispute occurred in Texas; and (3) CCSI objects to personal jurisdiction and venue in Marshall." Ans. Br. at 3. There are two problems with Citicorp's attempt to justify this action.

First, Citicorp's justifications, whether valid or not, are irrelevant. None of these justifications has any effect on the fact that:

(1) this case should be dismissed under the first-filed rule;

(2) Citicorp's complaint should be dismissed for lack of subject matter jurisdiction because Citicorp not established the requisite case or controversy;

(3) the Court should decline jurisdiction over this declaratory relief action that is not within the core purposes of the declaratory judgment act; and

(4) Citicorp's claims against Phoenix should be dismissed for lack of personal jurisdiction.

Second, Citicorp's justifications for not joining the Texas Action are either wrong or make no sense:

(1) While it is true that "neither CCSI nor LPL/Phoenix has any offices or employees in Texas," neither Citicorp nor LPL nor Phoenix has any offices or employees in Delaware. Exh. A, at ¶ 2; Libman decl. ¶¶ 3-4. Accordingly, not having offices and employees in Texas is not a basis for Citicorp to file its duplicative declaratory relief action in Delaware, where it also does not have any offices and employees.

(2) While Citicorp asserts that "none of the events that are the subject to the parties dispute occurred in Texas," Citicorp does not suggest that any events took place in Delaware. According, this is not a basis for Citicorp to file its duplicative declaratory relief action in Delaware.

(3) While Citicorp suggests it objected to personal jurisdiction in Texas, Citicorp does not provide any evidence that it is not subject to personal jurisdiction in Texas. First, objecting to jurisdiction does not establish a lack of jurisdiction. Second, Citicorp's jurisdictional "analysis" (Ans. Br. at 7) completely sidesteps the key jurisdictional question—whether any allegedly infringing acts of Citicorp took place in the district. *Trintec Indus. v. Pedre Promotional Prods.*, 395 F.3d 1275, 1280 (Fed. Cir. 2005). While Citicorp states that it is a Delaware company and has its office in New York, Citicorp does not even suggest that (a) it does not conduct business in East Texas, and (b) none of the alleged infringement took place in East Texas. While Citicorp's declaration states that Citicorp prepares Citi's "mailing to potential credit card customers," the declaration does not state that such mailings are not sent to residents in East Texas. Exh. A, ¶ 3. Because Citicorp would have include these facts in its brief and declaration if they were favorable for Citicorp, that these critical facts are absent from Citicorp's brief and declaration strongly suggest that Citicorp (a) conducts business in East Texas, (b) markets credit cards to residents in East Texas, and (c) some alleged infringement took place in East Texas.

## VII. Conclusion.

For the reasons and based upon the authorities cited herein and in their opening brief, Phoenix and LPL request the Court to dismiss the action.

January 4, 2008

BAYARD

/s/ Richard D. Kirk (rk0922)
Richard D. Kirk (rk0922)
222 Delaware Avenue, Suite 900
Wilmington, Delaware 19899-5130
rkirk@bayardfirm.com
Attorneys for Defendants,
LPL LICENSING, L.L.C. and
PHOENIX LICENSING, L.L.C.

OF COUNSEL:
Gregory Dovel
Sean Luner
Dovel & Luner LLP
201 Santa Monica, Suite 600
Santa Monica California 90401
(310) 656-7066